# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

REGINA DANIELS,          )
                            )
          Plaintiff,      )
                            )
v.                        )     Case No. 09-2304-JAR
                            )
UNITED PARCEL SERVICE, INC.,  )
                            )
          Defendant.    )

## MEMORANDUM AND ORDER

This matter comes before the Court upon Plaintiff's Motion to Compel Discovery and for Related Sanctions (Doc. 64). The motion is fully briefed, and the Court is prepared to rule. For the reasons stated below, Plaintiff's motion is granted in part and denied in part.

## I.      Procedural Requirement to Confer

Before considering the merits of Plaintiff's motion to compel, this Court must first determine whether Plaintiff has complied with the requirements of the Federal Rules of Civil Procedure and this district's local rules regarding the movant's duty to confer with opposing counsel prior to filing a motion to compel. Fed. R. Civ. P. 37(a)(1) provides that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." D. Kan. R. 37.2 expands on the movant's duty to confer, stating "[a] 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."

In this case, the parties have exchanged correspondence aimed at attempting to resolve the instant discovery dispute without judicial intervention. The Court, however, is not convinced the

parties have satisfied the conference requirements embodied in Fed. R. Civ. P. 37(a)(1) and D. Kan. R. 37.2. Both parties rely on broad legal propositions to support their positions without discussing in detail how these principles should be applied to the discovery sought in this case. For example, Plaintiff asserts in her correspondence that the scope of discovery in employment discrimination cases is "particularly broad" and that much of the discovery it seeks is "incredibly relevant" or "highly relevant" without further explanation. In its response, Defendant asserts blanket objections, such as the discovery sought is "clearly overly broad and unduly burdensome" without any attempt to explain why. These types of conclusory assertions without more are not particularly helpful in resolving discovery disputes. Nevertheless, in the interest of moving this case forward, the Court will address the merits of Plaintiff's motion.

## II.    Background

Plaintiff Regina Daniels was employed by Defendant United Parcel Service ("UPS") at its Kansas City, Kansas ("James Street") facility from 1984 until she retired in August 2009. From 1999 until she retired, Plaintiff worked as a dispatch specialist in the feeder department at the James Street facility.[1] Plaintiff submitted letters of interest for promotion to a full-time supervisor position in 2005 and 2006.[2]

In this lawsuit, Plaintiff alleges she was unlawfully denied consideration for various promotions based upon her gender and age. She also claims she was unlawfully discriminated against with respect to her pay based upon her gender. Plaintiff further alleges Defendant retaliated against her after she complained about the alleged age and gender discrimination. Plaintiff also

---

[1] Aff. of Brad Williams ("Williams Aff.") (Doc. 70-4) ¶ 2.

[2] *Id.* ¶ 4.

alleges breach of implied contract and promissory estoppel based upon Defendant's purported retaliatory conduct.

On April 24, 2010, Plaintiff served Defendant with her Third Request for Production, Third Set of Interrogatories, and First Request for Admissions (collectively, "Discovery Requests"). On May 21, 2010, Defendant served its responses and objections to Plaintiff's discovery requests. Defendant objects to various Discovery Requests as vague, ambiguous, harassing, overly broad, unduly burdensome, and irrelevant. The majority of the disputed discovery requests are related to Plaintiff's claim that she was unlawfully denied promotions based upon her age and gender. In the instant motion, Plaintiff moves for an order overruling Defendant's objections and compelling Defendant to supplement its responses.

## III.    Standard

Fed. R. Civ. P. 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense. . . ."[3] Relevant information need not be admissible at trial so long as it is reasonably calculated to lead to the discovery of admissible evidence.[4] Relevance is broadly construed at the discovery stage of litigation, and a "request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[5] Therefore, discovery should ordinarily be allowed "'unless it is clear that the information sought can have no possible bearing'" on a claim or defense of a party.[6]

---

[3] Fed. R. Civ. P. 26(b)(1).

[4] *Id.*

[5] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001) (quoting *Scott v. Leavenworth Unified Sch. Dist. No 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)).

[6] *Id.*

There is no presumption in the Federal Rules of Civil Procedure that a discovery request is relevant.[7] Initially, the proponent of a discovery request must show the relevance of the requested information to the claims or defenses in the case.[8] In many instances, relevance is apparent on the face of the request because relevance is liberally construed in discovery.[9] When relevancy is not readily apparent, the proponent has the burden of showing the relevancy of the discovery request.[10]

If the requesting party meets its initial burden of articulating relevance, the burden shifts to the party resisting discovery to establish lack of relevance by demonstrating that the requested discovery either (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery.[11]

When a party files a motion to compel and asks the court to overrule certain objections, the objecting party must specifically show in its response to the motion to compel how each request for production or interrogatory is objectionable.[12] By failing to address the objections in response to a motion to compel, a party fails to meet its burden to support its objections.[13] "Objections initially

---

[7] *Thompson v. Jiffy Lube Intern., Inc.*, No. 05-1203-WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007).

[8] *Id.*

[9] *Id.*

[10] *Id.*; *Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 309 (D. Kan. 1996).

[11] *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2004).

[12] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670–71 (D. Kan. 2004).

[13] *Id.* at 671.

raised but not relied upon in response to the motion to compel will be deemed abandoned."[14]

## IV.     Analysis

### A.     Objections Based on Plaintiff's Promotion Claim Being Time Barred

In her Complaint, Plaintiff asserts she has "repeatedly applied for open positions and promotions at UPS and her related applications have consistently been denied" due to her age and/or gender.[15]  As a result, she contends Defendant violated the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964 (Title VII), and related Kansas law.

Defendant has submitted undisputed evidence that since 1999, Plaintiff has applied for promotion to only one position – full-time supervisor – in 2005 and 2006.[16]  Plaintiff did not file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or the Kansas Human Rights Commission ("KHRC") until November 2008 – nearly two years after she was denied promotion.[17]  Defendant contends Plaintiff's promotion claims are time barred because Plaintiff was required to file a charge of discrimination with the EEOC within 300 days, and with the KHRC within 180 days, of the discriminatory act.  Because Plaintiff's promotion claims are purportedly time barred, Defendant objects that any discovery regarding this claim is irrelevant.

Plaintiff argues recent legislation (i.e., the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5) and related case law undercut Defendant's position that Plaintiff's promotion

---

[14] *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 380 n.15 (D. Kan. 2005) (citing *Sonnino*, 220 F.R.D. at 641); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

[15] Compl. (Doc. 1) ¶ 36.

[16] Williams Aff. (Doc. 70-4) ¶ 4.

[17] Def.'s Opp'n to Pl.'s Mot. to Compel Discovery and for Related Sanctions, Ex. E (Doc. 70-5).

5

claims are time-barred. Even if Plaintiff's promotion claims are time barred (a matter the Court need not resolve at this time), Plaintiff is not necessarily prevented from discovering information regarding these claims. It is well established that discovery is particularly broad in employment discrimination cases and conduct prior to the damage period might be relevant to show a pattern and practice of discrimination.[18] Additionally, one of the key issues in a discrimination or retaliation case is the motive or intent of the employer with respect to its treatment of the individual at issue.[19] Evidence of prior acts of discrimination might be relevant to establishing Defendant's motive or intent.[20] Accordingly, the Court overrules Defendant's objection based upon Plaintiff's claims being purportedly time-barred.

## B.    Unduly Burdensome Objections

Defendant also asserts undue burden objections to a variety of discovery requests. As the party asserting the objection, Defendant has "'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery

---

[18] *See Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 655 (D. Kan. 2004) ("With regard to temporal scope, discovery of information both before and after the liability period within a Title VII lawsuit may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period."); *Gaul v. ZEP Mfg. Co.*, No. Civ. A. 03-2439, 2004 WL 231298, at *4 (E.D. Pa. Feb. 5, 2004) (stating that "plaintiff may still present evidence of discriminatory acts outside of the filing period if admissible under the Federal Rules of Evidence") (internal quotations omitted).

[19] *See, e.g.*, *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1298 (10th Cir. 1998).

[20] *See Plotke v. White*, 405 F.3d 1092, 1106–07 (10th Cir. 2005) (stating that plaintiffs "are not precluded from introducing 'quite probative evidence of earlier acts of discrimination to support a claim of current discriminatory intent,' even if prior events are beyond the limitations period.") (quoting *Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1012–13 (10th Cir. 2002)); *White v. Honeywell, Inc.*, 141 F.3d 1260, 1276 (8th Cir. 1998) (holding that evidence of prior acts of discrimination is relevant to an employer's motive in Title VII employment discrimination case).

is unduly burdensome.'"[21] Defendant has the burden to show "'not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery.'"[22] This imposes an obligation on Defendant "'to provide sufficient detail in terms of time, money and procedure required to produce the requested documents.'"[23] Any objections that discovery is unduly burdensome must contain a factual basis for the claim,[24] and the objecting party usually must provide an "affidavit or other evidentiary proof of the time or expense involved" in responding to the discovery request.[25]

With the exception of Request for Production Nos. 3 and 6, Defendant has not attempted to demonstrate how responding to the discovery requests at issue would be unduly burdensome in terms of time, expense, or procedure. The Court cannot speculate on the nature of Defendant's purported burden in responding to those other requests. Accordingly, the Court overrules all undue burden objections except those lodged in response to Request for Production Nos. 3 and 6.[26] The Court will address those specific requests in more detail below.

---

[21] *G.D. v. Monarch Plastic Surgery, P.A.*, No. 06-2184-CM, 2007 WL 201150, at *2 (D. Kan. Jan. 22, 2007) (quoting *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002)).

[22] *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 3171768, at *2 (D. Kan. Oct. 29, 2007) (quoting *Cardenas v. Doral Juvenile Group, Inc.*, 232 F.R.D. 377, 380 (D. Kan. 2005)).

[23] *G.D.*, 2007 WL 201150, at *2 (quoting *Horizon Holdings, L.L.C.*, 209 F.R.D. at 213).

[24] *Barnes v. Akal Sec., Inc.*, No. 04-1350-WEB, 2005 WL 3359717, at *2. (D. Kan. Dec. 9, 2005).

[25] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 653 (D. Kan. 2004).

[26] *See id.* (overruling undue burden objection where party asserting objection provided no detailed explanation, affidavit, or other proof showing that responding to discovery request would cause undue burden).

C.    Specific Discovery Requests

1.    Requests for Production

a.    Request for Production No. 1

Request for Production No. 1 seeks, "All documents, materials, correspondence, communications, and/or information, in whatever form or format, identified in response to and/or upon which you specifically rely to support any of your answers to Plaintiff's Third Interrogatories."

Defendant argues Request for Production No. 1 is "overly broad, unduly burdensome, vague and compound," and further indicates it did not identify any documents in responding to Plaintiff's Third Interrogatories. The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity.[27] Defendant does not elaborate or explain how Request for Production No. 1 is vague. The Court, however, has reviewed the request and finds the phrase "specifically relied upon" in the context of this request to be ambiguous.

The word "specific" is defined as "Of, relating to, or designating a particular or defined thing; *explicit*."[28] Thus, one interpretation is that Request for Production No. 1 seeks only those documents identified by Defendant or upon which Defendant *explicitly* relied in answering Plaintiff's Third Interrogatories. Under this interpretation, there are no responsive documents because Defendant did not identify or explicitly rely upon any documents in responding to Plaintiff's interrogatories.

However, the phrase "specifically rely upon" would appear redundant under the above interpretation because the request already seeks any documents identified by Defendant in answering

---

[27] *See McBride v. Medicalodges, Inc.*, No. 06-2535-JWL, 2008 WL 1958350, at *1 (D. Kan. May 2, 2008).

[28] *See Black's Law Dictionary* 1406 (7th ed. 1999) (emphasis added).

the interrogatories. It is difficult to see how Defendant could explicitly rely upon a document in responding to Plaintiff's interrogatories but not identify it. In the instant motion, Plaintiff appears to clarify that she is seeking any documents or materials *relied* upon by Defendant to support Defendant's answers regardless of whether such documents or other materials were specifically mentioned in Defendant's responses. Although Request for Production No. 1 could have been phrased more clearly, the Court will adopt Plaintiff's interpretation.

Defendant also objects that Request for Production No. 1 is compound, but does not elaborate further or explain the basis of this objection. Accordingly, this objection is overruled.

Defendant further objects that Request for Production No. 1 is overly broad. Unless a request is overly broad on its face, the party resisting discovery has the burden to support its over breadth objection.[29] A document request may be overly broad on its face "'if it is couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within its scope.'"[30] This is a relatively straightforward request, and Defendant should not have difficulty identifying the documents it relied upon in answering Plaintiff's Third Interrogatories. Accordingly, the Court does not find this request to be facially over broad.

Because the request is not facially over broad, Defendant has the burden to support its objection. Here, Defendant has not described how it is prevented from answering the discovery request at issue or from demonstrating it is "not able to readily identify the documents requested."[31]

---

[29] *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661 (D. Kan. 2004).

[30] *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2009 WL 959493, at *5 (D. Kan. Apr. 3, 2009) (quoting *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 658 (D. Kan. 2006)).

[31] *See id.* at *6 (citations omitted).

Therefore, the Court overrules Defendant's over breadth objection.

Accordingly, Defendant is ordered to produce all documents responsive to Request for Production No. 1 within fourteen (14) days of this Order or indicate it has no responsive documents.

b.      Request for Production No. 3

Request for Production No. 3 states, "With respect to the 'applicant pool' referred to by UPS counsel during the deposition of Maurice 'Mic' Haynes on March 29, 2010, any and all such applicant pools for the period of 2002 through 2008."  Neither party has attached a copy of Mr. Haynes' deposition transcript, leaving the Court without the ability to determine the context in which the question referenced in Request for Production No. 3 was asked or the specific language used.

Defendant contends Request for Production No. 3 is vague and ambiguous but does not set forth the basis for these objections or provide any specific detail in support of them.  As a result, Defendant has not met its burden to support these objections.  Further, Defendant appears to understand what information Plaintiff is seeking in this request because Defendant has offered to produce information about the applicant pools for promotion to full-time supervisor in 2005 and 2006.  Accordingly, the Court overrules Defendant's vague and ambiguous objections.

Request for Production No. 3 seeks the "applicant pool" for every position Defendant filled over a seven year period.     Defendant contends Request for Production No. 3 is overly broad because Plaintiff applied for promotion only to full-time supervisor in 2005 and 2006.[32]  Defendant argues this request should be limited in geographic scope to the James Street facility where Plaintiff was employed and to the applicant pools for full time supervisor positions.

---

[32] *See* Williams Aff. (Doc. 70-4) ¶ 4.

A disparate treatment claim focuses on the employer's motivation for the adverse employment action at issue.[33]   In non-class action employment discrimination cases, the standard for determining the geographic scope of discovery focuses on the "'source of the complained discrimination – the employing unit or work unit.'"[34]  Discovery is typically limited to the particular plaintiff's employing unit unless there is *evidence* that the challenged employment practices and procedures were applicable to all of the employing units.[35]   If employment decisions are made locally, a court may properly limit discovery to the plaintiff's local work unit.[36]

An individual plaintiff alleging disparate treatment is not generally entitled to company-wide discovery.[37]   Corporate-wide discovery will be denied unless the plaintiff demonstrates that the requested information is "particularly cogent" to the matter or where the plaintiff shows "more particularized need for, and the likely relevance of, broader information."[38]   If a plaintiff can

---

[33] *Byers v. Illinois State Police*, No. 99 C 8105, 2002 WL 1264004, at *6 (N.D. Ill. June 3, 2002).

[34] *Collins v. Wal-Mart Stores, Inc.*, No. 06-2466-CM, 2008 WL 1924935, at *3 (D. Kan. Apr. 30, 2008) (quoting *Azimi v. United Parcel Serv., Inc.*, No. 06-2114-KHV, 2007 WL 2010937, at *2 (July 9, 2007)).

[35] *Id*. (emphasis added); *Joslin Dry Goods Co. v. EEOC*, 483 F.2d 178, 183–84 (10th Cir. 1973) (affirming district court's order limiting discovery to single store where plaintiff was employed rather than permitting discovery of all country-wide stores because there was no evidence the hiring or firing practices and procedures were applicable to all of the stores); *Epling v. UCB Films, Inc.*, No. 98-4226-RDR, 2001 WL 584355, at *4 (D. Kan. Apr. 2, 2001) (stating that the Tenth Circuit has recognized that discovery may appropriately be limited to employment units, departments and sections in which employees similarly situated to plaintiff are employed).

[36] *Haselhorst v. Wal-Mart Stores, Inc.*, 163 F.R.D. 10, 11 (D. Kan. 1995) (stating that when employment decisions are made locally, discovery may be properly limited to the employing unit); *see also Byers*, 2002 WL 1264004, at *6.

[37] *Byers*, 2002 WL 1264004, at *6.

[38] *Collins*, 2008 WL 1924935, at *3 (citations and quotations omitted); *see also Mackey v. IBP, Inc.*, 167 F.R.D. 186, 196 (D. Kan. 1996).

establish the employment decision was made by someone outside of her work unit, then she is entitled to broader discovery.[39]

To determine the appropriate employing unit of a plaintiff alleging employment discrimination, courts look to the level of the supervisor or supervisors who were primarily responsible for the employment decision regarding the plaintiff and other similarly situated employees.[40] The rationale is that "'the motive and intent of the supervisors who made the employment decisions relating to the plaintiff and other employees is relevant to determining whether the employment decision was discriminatory.'"[41]

In *Epling v. UCB Films, Inc.*, plaintiffs alleged defendant refused to hire them for coating operator positions at a cellophane manufacturing plant.[42] In resolving a discovery dispute, the magistrate judge determined the appropriate geographic scope of discovery was the coating department at defendant's plant, not the entire plant.[43] Thus, plaintiffs were not permitted to obtain

---

[39] *Byers*, 2002 WL 1264004, at *6; *see also Collins*, 2008 WL 1924935, at *3 (extending discovery beyond local store where plaintiffs worked because decision to terminate their employment was made by individuals who made employment decisions across larger market); *Azimi*, 2007 WL 2010937, at *3 (extending discovery beyond Lenexa facility where plaintiff was employed because decision to terminate plaintiff's employment was made by individuals who had supervisory roles across the Kansas district); *Kitchen v. Dial Page, Inc.*, No. 3:94-cv-215, 1995 WL 224547, at *3–*4 (E.D. Tenn. Feb. 27, 1995) (holding that plaintiff was entitled to broader discovery where decision to terminate plaintiff was made jointly by district manager and human resources manager at defendant's home office); *Finch v. Hercules Inc.*, 149 F.R.D. 60, 64 (D. Del. 1993) (permitting discovery outside of local employment unit because decision to terminate employment was made by Policy Compliance Committee).

[40] *Collins*, 2008 WL 1924935, at *3.

[41] *Id*. (quoting *Azimi*, 2007 WL 2010937, at *2).

[42] *Epling v. UCB Films, Inc.,* No. 98-4226-RDR, 2001 WL 584355, at *1 (D. Kan. Apr. 2, 2001).

[43] *Id*. at *8.

12

documents concerning all positions at defendant's plant.[44]

Plaintiffs contended the magistrate judge erred in limiting discovery to plaintiffs' prospective employing unit and argued discovery should be expanded to defendant's entire plant because all hiring decisions were purportedly made by the human resource manager under the direct supervision of a vice president.[45]  The district court affirmed the magistrate judge's order because plaintiffs provided no evidence supporting their allegations that the adverse employment actions were made outside of the coating department.[46]

Here, Plaintiff was employed by UPS as a feeder dispatch specialist at the Kansas City, Kansas ("James Street") facility from 1999 to 2009,[47] and during this time, apparently reported to the James Street feeder manager.[48]  In the instant motion, Plaintiff has not identified the individual or individuals who decided not to promote her or offered any evidence that the adverse employment actions were made outside of the feeder department at the James Street facility.  From the limited information provided by the parties, it appears Plaintiff sent a letter of interest to the Human Resources Department, but would then be contacted by her immediate supervisor or manager for any next steps in the process.[49]  This suggests that the decision whether or not to promote her was made

---

[44] *Id.* at *9.

[45] *Id.*

[46] *Id.*

[47] Williams Aff. (Doc. 70-4) ¶ 2.

[48] In the parties' proposed final pretrial order submitted to the Court, the parties stipulated that Plaintiff reported to the James Street feeder manager.  Plaintiff's supervisor in 2004 and 2005 was Mic Haynes.  Joe Dooley was the feeder manager from March 2006 through March 2007.

[49] Docs. 70-1 and 70-2.

by her immediate supervisor and would support limiting the geographic scope to Plaintiff's employing unit.

Plaintiff asserts she is entitled to broader discovery because she has alleged a corporate-wide practice of discrimination. The Court, however, does not believe a mere allegation, without any supporting facts, warrants expanding discovery outside of Plaintiff's employing unit.[50] Plaintiff has had sufficient time to discover who made the decision whether or not to promote her and develop facts contradicting Defendant's version of events. Plaintiff has not demonstrated a "more particularized need for, and the likely relevance of, broader information."[51] Accordingly, the Court will limit the geographic scope of discovery to the feeder department at the James Street facility.

Defendant offers undisputed evidence that Plaintiff applied for promotion only to a full-time supervisor in 2005 and 2006.[52] Thus, Defendant argues discovery should be limited to information about full-time supervisor positions and not extend to any other positions. The Court, however, finds limiting discovery as Defendant urges to be too narrow. When the motive or intent of a defendant employer is at issue, information concerning its conduct towards individuals other than the plaintiff is relevant.[53] Hiring decisions about positions for which Plaintiff did not apply might

---

[50] *See Collins v. Wal-Mart Stores, Inc.*, No. 06-2466-CM, 2008 WL 1924935, at *3 (D. Kan. Apr. 30, 2008) (stating that discovery is typically limited to the particular plaintiff's employing unit unless there is *evidence* that the challenged employment practices and procedures were applicable to all of the employing units) (emphasis added).

[51] *See Haselhorst v. Wal-Mart Stores, Inc.*, 163 F.R.D. 10, 11 (D. Kan. 1995) (holding that plaintiff's discovery requests were overly broad because plaintiff "failed to present any evidence justifying discovery beyond plaintiff's employing unit").

[52] Williams Aff. (Doc. 70-4) ¶ 4.

[53] *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652–53 (D. Kan. 2004); *Barnes v. Akal Sec., Inc.*, No. 04-1350-WEB, 2005 WL 359717, at *3 (D. Kan. Dec. 9, 2005).

still be relevant if made by the same decision maker who determined whether or not to promote Plaintiff.[54] For example, Plaintiff might be seeking information about applicant pools to demonstrate that Defendant employs women at rates far below their numbers in the applicant pool.[55] This type of analysis could be relevant for other positions if the same decision maker or decision makers were involved in those hiring decisions. The Court will limit the scope of this request to information about applicant pools for full-time supervisor positions and any other positions filled within the feeder department at the James Street facility.

Defendant also contends the temporal scope of 2002 through 2008 is overly broad because Plaintiff sought promotion only in 2005 and 2006. In employment discrimination cases, discovery of information both before and after the liability period may be relevant, and courts commonly extend the scope of discovery to "a reasonable number of years both prior to and following such period."[56]

Defendant indicates it does not have any responsive information prior to 2005, and the Court has not been provided with any information to suggest otherwise. As a result, the temporal scope of this request is essentially 2005 through 2008. Keeping in mind that the scope of discovery is particularly broad in employment cases, the Court finds that extending discovery for two years after

---

[54] *See Epling*, 2001 WL 584355, at *4 (noting that the magistrate judge extended discovery to all positions within the coating department, not just the coating operator positions for which plaintiffs applied).

[55] *See D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43, 53 (D.D.C. 2008) (recognizing this type of analysis as relevant in establishing an inference of discrimination).

[56]*Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652 (D. Kan. 2006) (internal citations omitted).

the alleged discriminatory conduct is reasonable and not overly broad.[57]

Defendant also objects that Request for Production No. 3 is unduly burdensome. In support of this, Defendant attaches the affidavit of Brad Williams, the Employee Relations Manager for Defendant's Kansas District.[58] In his affidavit, Mr. Williams estimates it will take hundreds of hours and tens of thousands of dollars to identify all of the jobs filled during this time period and locate information concerning the applicant pools for every one of those positions.[59] However, Mr. Williams does not describe in any detail how he arrived at these estimates or the process by which the documentation would be gathered. As a result, Defendant has not met its obligation "'to provide sufficient detail in terms of time, money *and procedure* required to produce the requested documents.'"[60]

Further, Mr. Williams does not provide sufficient detail to enable the Court to determine an estimate of the time and expense involved in identifying the responsive documents as limited by this Order. Because the Court has no evidence that producing the documents responsive to Request for

---

[57] *See Stoldt v. Centurion Indus., Inc.*, No. 03-2634-CM, 2005 WL 375667, at *2 (D. Kan. Feb. 3, 2005) (finding that discovery extending to three years before and two years after the alleged discriminatory conduct was not facially over broad and emphasizing that discovery requests covering similar time periods have been upheld in employment discrimination cases as reasonable); *Owens*, 221 F.R.D. at 655 (permitting discovery for a period of two and a half years prior to alleged discriminatory conduct); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 212–13 (D. Kan. 2002) (three years prior to and two years after alleged discriminatory conduct not overly broad); *Garrett v. Sprint PCS*, No. 00-2583-KHV, 2002 WL 181364, at *2–*3 (D. Kan. Jan. 31, 2002) (extending discovery for a three year period prior to time of discriminatory conduct was reasonable and not overly broad).

[58] Williams Aff. (Doc. 70-4).

[59] *Id.* ¶¶ 7–8.

[60] *See G.D. v. Monarch Plastic Surgery*, P.A., No. 06-2184-CM, 2007 WL 201150, at *2 (D. Kan. Jan. 22, 2007) (quoting *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002)) (emphasis added).

Production No. 3, as limited by this Order, would be unduly burdensome, it overrules Defendant's undue burden objection.

Accordingly, Defendant is ordered to produce all documents sought in Request for Production No. 3, as limited by this Order, within fourteen (14) days of this Order.

c.      Request for Production No. 4

Request for Production No. 4 states, "With respect to the 'specific people who were promoted to specialist from 2000 to 2005' referred to by UPS counsel during the deposition of Maurice 'Mic' Haynes on March 29, 2010, any and all data and information setting forth the specific people who were promoted to specialist from 2000 to 2005." Defendant objects by claiming the request is overly broad and seeks irrelevant information.

As discussed above, neither party has provided the Court with the relevant excerpts from the deposition transcript of Mr. Haynes. Without more, the Court cannot determine the context in which the question referenced in Request for Production No. 4 was asked. Plaintiff indicates she is "clearly allowed to review materials and documentation Defendant's counsel has addressed and referred to in the deposition noted in this case." Plaintiff, however, has not explained how the information she seeks is relevant to her claims in this case. Defendant argues the documents are not relevant because Plaintiff was promoted to specialist in 1999 and is not claiming she was denied promotion to a specialist position in the instant suit.

As discussed with respect to Request for Production No. 3, hiring decisions about positions for which Plaintiff did not apply might still be relevant if made by the same decision maker who determined whether or not to promote Plaintiff. The Court has ordered the production information about the applicant pools for full-time supervisor positions and any other positions, including

specialists, within the James Street feeder department. Information about who actually was selected from these applicant pools is also relevant. Accordingly, the Court finds the documents sought in Request for Production No. 4 to be relevant and not overly broad.

Defendant indicates it does not have any responsive documents for the period prior to 2005, and the Court has no reason to believe otherwise. As a result, the Court will limit Request for Production No. 4 to calendar year 2005. Accordingly, Defendant shall produce all data and information sought in Request for Production No. 4 for the year 2005 within fourteen (14) days of this Order.

### d.    Request for Production No. 5

Request for Production No. 5 states, "With respect to the 'people who were promoted to full-time supervisor in feeders from 2000 to 2005' referred to by UPS counsel during the deposition of Maurice 'Mic' Haynes on March 29, 2010, any and all data and information setting forth the specific people who were promoted to full-time supervisor in feeders from 2000 to 2005."

Plaintiff applied for promotion to full-time supervisor only in 2005 and 2006. Because this request seeks data about individuals promoted to full-time supervisor in years Plaintiff did not apply for promotion, Defendant objects this request is overly broad and seeks irrelevant information.

As discussed above, courts commonly extend discovery a reasonable number of years prior to the alleged discriminatory conduct. The Court does not need to determine the appropriate temporal scope of this request, however, because Defendant indicates it does not have information about promotions to full-time supervisors prior to 2005 – the first year in which Plaintiff applied for promotion. Therefore, Defendant's relevance and over breadth objections are essentially moot.

Although Defendant does not object to producing the responsive data and information for

2005, Defendant does not appear to have done so yet or offered any explanation for its failure to do so. Accordingly, Defendant shall produce all responsive information and data for 2005 within fourteen (14) days of this Order.

e.    Request for Production No. 6

Request for Production No. 6 seeks "All applicant pools for the UPS Kansas City, Kansas (James Street) facility for the period 2004-2009." Defendant objects this request is overly broad, unduly burdensome, vague, ambiguous, harassing, and seeks a vast amount of information that is irrelevant.

Defendant has not explained how Request for Production No. 6 is vague, ambiguous, or harassing. Accordingly, the Court overrules these objections.[61]

 As drafted, Request for Production No. 6 seeks information about every job filled at Defendant's James Street facility over a six year period. Defendant argues Request No. 6 is overly broad and seeks irrelevant information because Plaintiff applied for promotion only to a full-time supervisor in 2005 and 2006. As explained with respect to Request for Production No. 3, the Court will limit this request to information about applicant pools for full-time supervisor positions and any other positions filled within the feeder department at the James Street facility.

As limited by the Court, Request for Production No. 6 is duplicative of Request for Production No. 3 except for its temporal scope. Request for Production No. 6 seeks information from 2004 to 2009 whereas Request for Production No. 3 seeks information from 2002 through 2008. Defendant has already indicated it does not have information about applicant pools prior to

---

[61] *See McBride v. Medicalodges, Inc.*, No. 06-2535-JWL, 2008 WL 1958350, at *1 (D. Kan. May 2, 2008) ("The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity.").

2005. Thus, the temporal scope of this request is essentially 2005 through 2009. In analyzing Request for Production No. 3, the Court determined the temporal scope of 2005 through 2008 was reasonable and not overly broad. This time period did not represent an outer limit of discovery. The Court finds that extending discovery until August 2009 – the date of Plaintiff's retirement from UPS – is reasonable and not overly broad.

For the same reasons discussed above with respect to Request for Production No. 3, the Court overrules Defendant's undue burden objection.

f.     Request for Production No. 7

Request for Production No. 7 seeks, "Any UPS employee phone directories or listings for the period of 2004 through 2009 which set forth or list the Kansas District managers, center managers, supervisors, and OMS employees and the position and location of these employees."

Defendant indicates it does not have such directories or listings for the period 2004–2009, and the Court has no reason to believe otherwise. Accordingly, the Court denies Plaintiff's motion to compel with respect to Request for Production No. 7.

Defendant, however, indicates it has compiled a current listing of all James Street and Lenexa employees and their jobs titles and will produce it under the protective order in this case. To the extent it has not yet done so, Defendant shall produce the listing regarding the James Street facility within fourteen (14) days of this Order.

g.     Request for Production No. 8

Request for Production No. 8 states:

> With respect to the UPS Kansas City, Kansas (James Street) and Lenexa, Kansas EEO-1 reports UPS has provided or produced to Plaintiff in this lawsuit, all data and information identifying the name, gender, race or ethnicity, and position or job of the employees

20

and that provided the basis for or was relied on by UPS as to the number of those employees included within the job category of "Officials and Managers" and those racial or ethnic categories therein.

Defendant argues this request is overly broad and seeks irrelevant information because it seeks information about Defendant's Lenexa, Kansas facility. As the Court previously indicated in this Order, the appropriate geographic scope of discovery in this case is Defendant's James Street facility. Accordingly, Defendant is not required to produce information about its Lenexa facility. The Court also finds the request to be facially overly broad to the extent it seeks information about the racial and ethnic categories of any officials and managers. This case does not involve any claims of racial discrimination, and Plaintiff has not demonstrated how this information is relevant.

Defendant has offered to produce the requested information, other than race/ethnic background, for the James Street "Officials and Managers" category of the EEO-1 reports for 2006–2009. As indicated above, the Court agrees this request should be limited to the James Street facility and should not encompass information about race/ethnic background. Additionally, Defendant's proposed temporal scope of 2006 through 2009 mirrors the time period for which Defendant produced the EEO-1 reports referenced in the request.

Accordingly, Defendant shall produce the requested information, except for race/ethnic background, for the James Street "Officials and Managers" category of the EEO-1 reports for 2006–2009 within fourteen (14) days of this Order.

h.      Request for Production No. 11

Request for Production No. 11 seeks "All charges/complaints of discrimination and retaliation filed with the EEOC and/or the KHRC and referred to by Defendant in its Supplemental Answers to Plaintiff's First Interrogatories No. 9 and 10."

21

Although it purportedly believes this information is not relevant, Defendant has agreed to produce the requested information subject to the Protective Order in this case. Thus, the motion to compel appears to be moot with respect to Request for Production No. 11. To the extent it has not already done so, Defendant shall produce the documents sought in Request for Production No. 11 within fourteen (14) days of this Order.

        2.     <u>Interrogatories</u>

        a.     Interrogatory No. 1

Interrogatory No. 1 asks Defendant to "[i]dentify and state the name, age, and sex or gender of the center manager, MIP, and OMS employees at the UPS Kansas City, Kansas (James Street) facility on January 1, 2005 and July 1, 2008."

OMS apparently refers to a dispatch specialist position. Plaintiff was employed as a dispatch specialist from 1999 to 2009.[62] Because Plaintiff is not alleging denial of promotion to an OMS position, Defendant objects that this interrogatory is overly broad and seeks irrelevant information. The Court, however, finds information about the gender and age of OMS employees to be facially relevant. Plaintiff might use this information to compare the gender and age of employees in non-management positions to those in management positions. Although Defendant contends a dispatch specialist (or OMS) is an entry level management position, the Court cannot locate any support for this assertion in the evidence submitted by Defendant.[63] Even assuming a dispatch specialist is an entry level management position, Plaintiff still might seek to demonstrate

---

[62] Williams Aff. (Doc. 70-4) ¶ 2.

[63] Defendant cites to page 24 of Plaintiff's deposition to support this proposition, but there is no page 24 included in the deposition excerpts attached to Defendant's opposition. *See* Doc. 70-3.

a disparity exists between entry level management positions and upper level management positions within the feeder department.

Defendant has attached evidence indicating that "MIP" is management stock incentive program, not a position or job title at UPS.[64] According to Defendant, a large number of manager and supervisor positions are eligible to participate in the MIP program, including center manager, division manager, feeder manager, Hub manager, District Manager, Labor Manager, and District Human Resources Manager, among others.[65] Because Plaintiff applied for promotion only to a full-time supervisor position in 2005 and 2006, Defendant argues Interrogatory No. 1 is overly broad and seeks irrelevant information.

In the instant motion, Plaintiff does not indicate what positions she intends to include within the term "MIP" or otherwise define the term. Rather, Plaintiff argues Defendant's objection is unfounded because Defendant's employees have used the term "MIP" supervisor throughout discovery.[66] This, however, does not assist the Court in determining how this request should be interpreted. Without knowing what positions Plaintiff believes are included within this term, the Court cannot determine whether the request is overly broad.

Defendant has submitted undisputed evidence, by way of affidavit, that the only position for which Plaintiff applied for promotion was a full-time supervisor.[67] Plaintiff submitted a letter of

---

[64] Williams Aff. (Doc. 70-4) ¶ 5.

[65] *Id.*

[66] Defense counsel also used the phrase "full-time MIP supervisor positions" when deposing Plaintiff. *See* Doc. 70-3 at 224:4–7.

[67] Williams Aff. (Doc. 70-4) ¶ 4.

interest and a letter of interest cover sheet.[68]  The cover sheet appears to be a UPS form and lists

three levels of management  –  "PT management," "FT specialist," or "FT supervisor."[69]  Plaintiff

checked off that she was applying for a "FT supervisor position."  In her letter of interest, Plaintiff,

however, uses the phrase "Full time *MIP* Supervisor."[70]  This suggests to the Court that Plaintiff

intends the phrase "MIP" or "MIP supervisor" to be synonymous with "full-time supervisor."

Accordingly, the Court will interpret the phrase "MIP" or "MIP supervisor" to mean full-time

supervisor.

Plaintiff also seeks information about center managers.  When discussing Request for

Production No. 3, the Court analyzed how the geographic scope of discovery is determined in a non-

class action employment discrimination case.  The Court believes information about center managers

would be relevant only if the same decision makers who determined whether or not to promote

Plaintiff were also involved in making employment decisions concerning center managers.  Plaintiff,

however, has not demonstrated this.  Thus, the Court will define the scope of this Interrogatory to

include OMS positions and full-time supervisor positions at the James Street facility.

Defendant indicates it does not have the requested information for January 1, 2005, and the

Court has no reason to believe otherwise.  Accordingly, Defendant shall answer Interrogatory No.

1 for OMS positions and full-time supervisor positions at the James Street facility as of July 1, 2008

within fourteen (14) days of this Order.

> b.      Interrogatory No. 2

---

[68] *See* Doc. 70-1.

[69] *Id*. at 3.

[70] *Id*. at 2 (emphasis added).

24

Interrogatory No. 2 asks Defendant to "[i]dentify and state the name and age of any female employees at the UPS Kansas City, Kansas (James Street) facility who have been interviewed for MIP positions between 2004 through the present." Similar to Interrogatory No. 1, the Court will limit this interrogatory to information about full-time supervisor positions at the James Street facility.

Defendant also argues Plaintiff has not explained why information about _female_ employees who were interviewed for these positions is relevant to Plaintiff's claims. The Court finds Interrogatory No. 1 be facially relevant. This information could demonstrate that female employees were rarely selected to be interviewed for management positions or were selected at rates far below their numbers in the applicant pool. Accordingly, the Court overrules Defendant's relevancy objection.

Defendant also objects the temporal scope of this request as overly broad. Although courts commonly extend discovery for a reasonable number of years after the alleged adverse employment decision, the Court finds extending discovery for a period of four years after Plaintiff last applied for promotion is overly broad. Defendant also indicates it does not have information for 2004. Accordingly, the Court will limit this interrogatory from 2005 through August 2009 – the date when Plaintiff retired. Defendant shall answer Interrogatory No. 2 for full-time supervisor positions at the James Street facility from 2005 through August 2009 within fourteen (14) days of this Order.

c.      Interrogatory No. 3

Interrogatory No. 3 states, "With respect to the UPS Kansas City, Kansas (James Street) and Lenexa, Kansas EEO-1 reports UPS has provided or produced to Plaintiff in this lawsuit, identify and state the name, age, and job or position of the employees included within the job category of

'Official and Managers' and those racial or ethnic categories therein."

As previously discussed in this Order, discovery of the Lenexa, Kansas facility and discovery about the race/ethnic background is overly broad and irrelevant. Defendant indicates it is "willing" to provide the information requested (other than race/ethnic background) for the James Street "Officials and Managers" category of the EEO-1 reports for 2006–2009. Defendant, apparently, has not yet provided this information. The Court finds this information to be relevant and not overly broad. Accordingly, Defendant shall answer Interrogatory No. 3 (other than race/ethnic background) for the James Street "Officials and Managers" category of the EEO-1 reports for 2006–2009 within fourteen (14) days of this Order.

3. Requests for Admission

Fed. R. Civ. P. 36 governs requests for admission. Pursuant to Fed. R. Civ. P. 36(a)(1), a party may serve upon any other party a written request to admit or deny the truth of "(A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." The purpose of Rule 36 is to reduce trial time by facilitating proof with respect to issues that cannot be eliminated from the case and narrowing the issues by eliminating those that must be proved at trial.[71]

"Each request for admission should be phrased simply and directly, so that it can be admitted or denied without explanation."[72] In addition, "[a] requesting party should not state 'half a fact,' or 'half-truths' which require the answering party to qualify responses."[73]

---

[71] Fed. R. Civ. P. 36 advisory committee notes (1970 amendment).

[72] *Downs v. Brasted*, No. 92-1611-MLB, 1993 WL 273370, at *1 (D. Kan. June 28, 1993).

[73] *Doebele v. Sprint Corp.*, No. 00-2053-KHV, 2001 WL 1718259, at *2 (June 5, 2001).

The purpose of a request for admission "is not to discover additional information concerning the subject of the request, but to force the opposing party to formally admit the truth of certain facts, thus allowing the requesting party to avoid potential problems of proof."[74] Essentially, requests for admission "expedite trials by establishing as true certain material facts of a case without the necessity of formal proof at trial."[75]

The responding party may admit, deny, or state in detail why the answering party cannot truthfully admit or deny the request.[76] Fed. R. Civ. P. 36 further provides:

> [W]hen good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.[77]

An answering party may also object to a request for admission as long as the grounds for objection are stated.[78] However, the responding party should answer the request as far as possible with appropriate qualification or explanation, rather than objecting to the request in its entirety.[79]

Pursuant to Fed. R. Civ. P. 36(a)(6), the requesting party may move to determine the sufficiency of an answer or objection. A response must "fairly meet the substance of the requested

---

[74] *Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625744, at *1 (D. Kan. Oct. 5, 1995) (citations omitted).

[75] *Keen v. Detroit Diesel Allison*, 569 F.2d 547, 554 (10th Cir. 1978).

[76] Fed. R. Civ. P. 36(a)(4).

[77] *Id.*

[78] Fed. R. Civ. P. 36(a)(5).

[79] *Audiotext Commc'ns Network, Inc.*, 1995 WL 625744, at *3.

admission" for the court to consider it sufficient.[80]  "On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served."[81]

a.      Request for Admission No. 3

Request for Admission No. 3 states, "During the period 2004-2009, Ms. Daniels' base salary with UPS was less than that of those individuals in full-time supervisory MIP positions at or within the UPS Kansas City, Kansas (James Street) feeder department."  Defendant objects the request is vague, overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Defendant argues the request is vague because, as discussed above, "MIP" is not a position or job title at UPS.   Thus, Defendant states it is unclear whether this request is limited to full-time supervisors or whether it seeks an admission relating to a broader category of managers.  Defendant should have been able to clarify this without Court intervention by conferring with Plaintiff. Regardless, the Court sustains Defendant's objection because "MIP" does not appear to be a position or job title at UPS.

Defendant also argues Request for Admission No. 3 is irrelevant to Plaintiff's Equal Pay Act claim because Plaintiff had different duties and responsibilities from full-time supervisors in the feeder department.  Under the Equal Pay Act, Plaintiff must show (1) she was performing work which was substantially equal to that of male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were

---

[80] *Harris v. Oil Reclaiming Co.*, 190 F.R.D. 674, 677 (D. Kan. 1999).

[81] Fed. R. Civ. P. 36(a)(6).

basically the same; and (3) male employees were paid more under such circumstances.[82]

Plaintiff does not explain how Request for Admission No. 3 is relevant.[83] Thus, the Court cannot ascertain whether Plaintiff is attempting to use this request for admission to support her Equal Pay Act claim or some other claim. Regardless, the Court overrules Defendant's relevance objection. Although Defendant has provided some evidence that Plaintiff did not have all of the same responsibilities as full-time supervisors, the Court is not in a position to determine this issue without a further factual record. Further, the Court does not believe there is any prejudice to Defendant in being required to answer this request for admission. For example, even if Defendant admits Request for Admission No. 3, it is not prevented from arguing Plaintiff had different responsibilities than those individuals employed as full-time supervisors. Additionally, Request for Admission No. 3 could be relevant to other issues in case, such as establishing that Plaintiff was damaged by Defendant's purported wrongful denial of promotions. As a result, the Court overrules Defendant's relevance objection.

Defendant also objects that the temporal scope of this request is overly broad because Plaintiff's Equal Pay Act claims go back only three years – to June 2006.[84] Defendant contends the appropriate temporal scope of this request is June 2006 through August 2009. As discussed above, this request could be relevant to Plaintiff's failure to promote claim. Because Plaintiff first applied for promotion to full-time supervisor in 2005, the temporal scope of this request should include calendar year 2005. The Court, however, does not understand why information prior to 2005 is

---

[82] *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997).

[83] Plaintiff states merely, "This is a straightforward and very relevant request which should be answered with a simple and unqualified admission or denial."

[84] *See* 29 U.S.C. § 255(a).

relevant, and Plaintiff has not explained the temporal scope of this request. Accordingly, the Court finds the temporal scope of this request to be overly broad.

Plaintiff may re-phrase Request for Admission No. 3 by limiting the request to full-time supervisory positions at or within the UPS Kansas City, Kansas (James Street) feeder department and limiting the temporal scope of the request consistent with this Order. This should allow Defendant to simply admit, deny, or state in detail why it cannot truthfully admit or deny the request without further qualification. However, as presently phrased, the Court does not require Defendant to respond to this request for admission.

b. Request for Admission Nos. 8 and 27.

Request for Admission No. 8 states, "UPS has written policies which state that UPS will investigate any complaint or report any of its employees make in good faith regarding, acts, conduct, or practices which the reporting or complaining employee in good faith believes to be unlawful, unsafe, unethical, and/or otherwise improper."

Request for Admission No. 27 states, "UPS policies and procedures state that employees who have made internal complaints or reports of discrimination and/or retaliation will have an opportunity to review the final investigation report prepared by UPS in connection with any related investigation."

Defendant indicates it has searched but has not located any policies that state the information set forth in these requests. Defendant offers to further respond to these requests if Plaintiff identifies the policies to which she refers.

The answering party may assert lack of information or knowledge as a reason for failing to admit or deny only if that party states that it has made reasonable inquiry and that the information

it knows or can readily obtain is insufficient to enable it to admit or deny.[85]  Additionally, the answering party must show that it has, in fact, made a "reasonable inquiry" and that information "readily available" is insufficient to enable it to admit or deny the statement.[86]  Here, Defendant has not sufficiently described how it attempted to locate the policies at issue.  Thus, the Court cannot determine whether Defendant has made a "reasonable inquiry" to obtain the information that would enable it to admit or deny Request for Admission Nos. 8 and 27.

Within fourteen (14) days of this Order, Defendant shall provide a supplemental response either admitting, denying, or indicating, in further detail, why it does not have sufficient information to admit or deny these requests.

c.      Request for Admission Nos. 15 and 16.

Request for Admission No. 15 states, "During the entire time period of 2004 through 2009, there were a greater number of male MIP employees than female MIP employees at the UPS Kansas City, Kansas (James Street) facility."  As discussed with respect to Request for Admission No. 3, the Court sustains Defendant's objection because "MIP" does not appear to be a position or job title at UPS.  The Court, however, finds the temporal scope of this request to be reasonable and not overly broad.

Plaintiff may re-phrase Request for Admission No. 15 by limiting the request to full-time supervisory positions at or within the UPS Kansas City, Kansas (James Street) feeder department. This should allow Defendant to simply admit, deny, or state in detail why it cannot truthfully admit or deny the request without further qualification.  However, as presently phrased, the Court does not

---

[85] Fed. R. Civ. P. 36(a)(4).

[86] *Harris*, 190 F.R.D. at 679.

require Defendant to respond to this request for admission.

Request for Admission No. 16 seeks the same information for the Lenexa facility as Request for Admission No. 15. As discussed elsewhere in this Order, Plaintiff has not established that hiring decisions at the Lenexa facility and the James Street facility were made by a common decision maker. Accordingly, the Court sustains Defendant's relevance objection as to Request for Admission No. 15 and further response to it is not ordered.

d.      Request for Admission No. 17

Request for Admission No. 17 states, "During the entire period of 2004 through 2009, there have been fewer than five (5) female employees in center manager positions within the UPS Kansas District."

Defendant objects the request is overly broad and irrelevant because Plaintiff never applied for a center manager position and does not claim she was denied promotion to such a position. Plaintiff offers no reason why information concerning center managers is relevant. The Court believes such information would be relevant only if the same decision makers who determined whether or not to promote Plaintiff were also involved in making the employment decisions concerning center managers. Plaintiff, however, has not demonstrated this. Accordingly, the Court sustains Defendant's relevance objection as to Request for Admission No. 17.

e.      Request for Admission No. 30

Request for Admission No. 30 states, "UPS never offered Ms. Daniels a full-time supervisory MIP position during the time she worked at UPS."

Defendant provided the following supplemental answer:

> UPS continues to object to this request for the reasons set forth above and in its General Objections. Subject to and without waiving those

> objections, UPS states Plaintiff only applied for promotion to a full time supervisor job in 2005 and 2006. Plaintiff did not apply for any other promotion or position at UPS since 1999. UPS admits that it did not offer Plaintiff a full time supervisor position because she did not demonstrate that she was qualified for promotion to such a position.

Plaintiff contends Defendant's response is evasive and non-responsive and that Defendant should provide a straightforward admission or denial. As discussed above, MIP does not appear to be a position or job title at UPS. Thus, the Court finds Defendant appropriately qualified its response by indicating the positions for which Plaintiff applied and the years applied.

Defendant, however, improperly qualified its response by indicating the purported reason Plaintiff was not promoted. Plaintiff did not seek an admission relating to this issue. Defendant has not explained why it qualified its response in this manner, and the Court finds no basis for Defendant to have done so. Admitting this request without qualification would not prevent Defendant from presenting evidence of the purported reason why Plaintiff was not promoted. Defendant's response is insufficient because it does not "fairly meet the substances of the requested admission."[87] Accordingly, Defendant shall provide an amended response to Request for Admission No. 30 within fourteen (14) days of this Order.

f       Requests for Admission Nos. 32 and 33.

Request for Admission No. 32 states, "UPS filled open positions or promotions Ms. Daniels had expressed an interest in with male employees."

Defendant answered Request for Admission No. 32 as follows:

> UPS continues to object to this request for the reasons set forth above and in its General Objections. Subject to and without waiving those objections, UPS states Plaintiff only applied for promotion to a full

---

[87] *See Harris v. Oil Reclaiming Co.*, 190 F.R.D. 674, 678 (D. Kan. 1999).

time supervisor job in 2005 and 2006. Plaintiff did not apply for any other promotion or position at UPS since 1999. Plaintiff did not demonstrate that she was qualified for promotion to a full time supervisor position. UPS admits that it filled supervisor positions in 2005 and/or 2006 with female and male employees.

Request for Admission No. 33 states, "UPS filled open positions or promotions Ms. Daniels had expressed an interest in with employees under the age of 40."

Defendant answered Request for Admission No. 33 as follows:

UPS continues to object to this request for the reasons set forth above and in its General Objections. Subject to and without waiving those objections, UPS states Plaintiff only applied for promotion to a full time supervisor job in 2005 and 2006. Plaintiff did not apply for any other promotion or position at UPS since 1999. Plaintiff did not demonstrate that she was qualified for promotion to a full time supervisor position. UPS admits that it filled supervisor positions in 2005 and/or 2006 with employees who were under age 40 and employees who were over age 40.

Request for Admission Nos. 32 and 33 are potentially misleading as drafted. The implication is that Defendant filled the positions Plaintiff expressed an interest in with *only* male employees and/or those under the age of 40. Accordingly, Defendant properly qualified its admissions to these requests by indicating it filled the open positions with female employees and with employees over the age of 40.[88]

Similar to Request for Admission No. 30, however, Defendant improperly qualified its responses to these requests by including information about the purported reason why Plaintiff was not promoted. Accordingly, Defendant's responses do not fairly meet the substances of the requested admissions in this regard.

---

[88] *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2192-JWL, 2008 WL 2222022, at *6 (D. Kan. May 28, 2008) (finding that qualifying language included within defendant's response to a request for admission was necessary to clarify an ambiguous term).

Defendant shall provide an amended response to Requests for Admission Nos. 32 and 33 within fourteen (14) days of this Order.

g.     Request for Admission No. 34

Request for Admission No. 34 states, "UPS has on at least one occasion at its James Street facility interviewed a female and/or minority employee for a job opening or promotion which that employee had not submitted paperwork expressing an interest in."  Defendant objects that this request is overly broad, vague, ambiguous, and seeks information that is irrelevant.

Because Plaintiff has failed to define any temporal scope of this request, the Court agrees the request is facially overly broad.[89]  Defendant also objects because the request is not limited to employees who interviewed for full-time supervisory positions at the James Street facility.  The Court finds the request to be overly broad because it is not limited to the feeder department at the James Street facility.  Plaintiff may re-phrase this request, but as presently phrased, the Court will not require Defendant to respond to it.

h.     Request for Admission No. 35

Request for Admission No. 35 seeks an admission that "Ms. Daniels was never interviewed by anyone in UPS management in connection with any letter of intent or paperwork she submitted in connection with her being considered for placement in or promotion to a full-time supervisory MIP position."

Defendant provided the following supplemental answer:

_____

[89] *See Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 672 (D. Kan. 2003) (holding that plaintiffs' failure to limit the temporal scope of interrogatories made them overly broad on their face).

> UPS continues to object to this request for the reasons set forth above and in its General Objections. Subject to and without waiving those objections, UPS states Plaintiff only applied for promotion to a full time supervisor job in 2005 and 2006. Plaintiff was not interviewed by management for promotion to full time supervisor position because she did not demonstrate that she was qualified for such a position in 2005 or 2006.

Consistent with the rest of this Order, Defendant properly qualified its response by limiting the admission to full-time supervisor positions, rather than a full-time supervisory MIP positions, and including information about the years in which Plaintiff applied for promotion. Similar to Request for Admission No. 30, however, Defendant has improperly included information about the purported reason why Plaintiff was not promoted. Admitting this request without such qualification would not prevent Defendant from presenting evidence on these topics. Accordingly, Defendant shall provide an amended response to Request for Admission No. 35 within fourteen (14) days of this Order.

## V.      Attorney Fees and Expenses

Under Federal Rule of Civil Procedure 37(a)(5)(C), if a motion to compel is granted in part and denied in part, as is the case here, then the Courts may "apportion the reasonable expenses for the motion." The Court has reviewed the relevant filings and concludes that it is appropriate in this case to require the parties to bear their own expenses incurred in connection with this motion.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Discovery and for Related Sanctions (Doc. 64) is granted in part, as set forth above, but denied in all other respects.

**IT IS SO ORDERED**.

Dated this 8th day of September, 2010 at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge
