**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| REGINA DANIELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 09-2304-JAR |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


LAW OFFICES OF FREDRICK D. DEAY, II

By: s/ Fredrick D. Deay, II
Fredrick D. Deay, II    KS Bar No. 15035
7575 W. 106th Street, No. 14
Overland Park, KS 66212
(913) 649-0687
fddpai2@hotmail.com  *email*

POPHAM LAW FIRM
Dennis E. Egan    KS Bar No. 70672
712 Broadway, Suite 100
Kansas City, MO 64105
(816) 399-5202
degan@pophamlaw.com  *email*

*Attorneys for Plaintiff – Regina Daniels*

## TABLE OF CONTENTS

I.  INTRODUCTION………..………..……………………………………………….……..3

II. STATEMENT OF MATERIAL FACTS………………………………………….……..8

    A.  PLAINTIFF'S RESPONSE TO DEFENDANT'S
        STATEMENT OF UNCONTROVERTED FACTS……………….............................8

    B.  PLAINTIFF'S SATEMENT OF ADDITIONAL
        MATERIAL FACTS ("AMF")……………………………………….…………..42

III. ARGUMENT………………………………………………………………………...61

    A.  Summary Judgment Standard……………………………………….……..61

    B.  The Abundant Pretext Evidence, Including Defendant's Brazen
        Admissions and Subjective, Contradictory, Undocumented, and
        Post-Hoc Assertions, Requires That Defendant's Motion Be Denied…………..…….63

    C.  Plaintiff's Claims, Which Defendant Inaccurately Characterizes,
        Are Timely……………………………………………………………………67

    D.  Plaintiff Has Been Subjected to a Number of Adverse Employment
        Actions Based on Her Age and/or Sex………………………………….……73

    E.  Plaintiff Was Retaliated Against Because of Her Complaint and
        Charge of Discrimination……………………………………………...….85

    F.  Plaintiff Was Performing Supervisory Duties and Paid Less Than
        a Comparable Male; Defendant Has Not Satisfied Its Burden to
        Lawfully Justify this Practice…..…………………………………….…………91

    G.  Plaintiff Has Established the Prima Facie Elements of Her Breach
        of Contract/Promissory Estoppel Claim……………….……………………...……94

IV.  CONCLUSION………………………………………………………………99

PLAINTIFF'S EXHIBIT LIST………………………………………….…...……104

## INTRODUCTION

## "THE MAN RULES"

That is the bold face, upper case title of a January 13, 2009 four page email - disparaging of and ridiculing women, and telling them to keep their problems to themselves  - sent out on UPS email by and between male supervisors (which they all are) in the UPS Kansas City, Kansas ("James Street") Feeder Department where Plaintiff worked.   It accurately captures the discriminatory, retaliatory, male dominated environment at UPS.   It is consistent with the repeated and continuous adverse actions Plaintiff was subjected to -- some of which will cause significant detrimental economic impact for her far into the future.

In 2009, Plaintiff, Regina Daniels, retired after providing nearly a quarter of century of service to Defendant, United Parcel Service, Inc.  At that time, she worked at Defendant's James Street facility, within the Feeder Department, and held the full-time position of OMS night feeder dispatcher.  Before that, she successfully and continuously held the position of full-time OMS cover dispatcher (for roughly 5 years), until, in July of 2008, unannounced and while she was on vacation, she was stripped of her cover position and replaced by a younger, less qualified male.

Later, that same month, Plaintiff made an internal complaint to UPS Kansas District Human Resources Manager Gary Liberti - expressly stating that she believed she had been discriminated and retaliated against by her manager Joe Dooley.  At that meeting, Ms. Daniels specifically took issue with her removal from the cover position, sought confirmation about the UPS promotion process, pointed out no one had ever discussed her promotion applications (as required), said she was aware that Mr. Dooley had improperly withheld her promotion application, and explained her actual job duties to Mr. Liberti.  Notably, Mr. Liberti asked why

3

Ms. Daniels position was not supervisory.  Ms. Daniels also told Mr. Liberti she had spoken to a female colleague whom Mr. Dooley had interviewed for the cover position and who had no interest in that job and felt UPS was simply trying to "cover its butt."  Mr. Liberti acknowledged he was involved with the interviews for Plaintiff's position.  Mr. Liberti then said he would talk to Mr. Dooley and Manager Ernie Christie and get back with Ms. Daniels.

After receiving no follow-up (as assured by Mr. Liberti), Plaintiff filed an intake questionnaire with the EEOC the next month, followed by a charge of discrimination in November.  Then, in February of 2009 - in unprecedented fashion - Plaintiff was told by Mr. Dooley that she was being monitored by security and accused by Mr. Liberti of improperly recording her work time.  Further, she also suffered a decrease in communications from Mr. Dooley which interfered with her ability to effectively perform her job. Raising quintessential pretext evidence that is reflective of Defendant's mendacity, UPS offers ever changing, inconsistent, contradictory and unbelievable explanations regarding Plaintiff's July 2008 internal complaint (as well as its knowledge of her EEOC charge): first denies Ms. Daniels ever made any internal complaint of discrimination; next urging that Mr. Liberti discussed with Mr. Dooley what he thinks Ms. Daniels said at that meeting; with Mr. Dooley finally stating he never even talked to Mr. Liberti about any such meeting.

The various OMS or specialist positions in the Feeder Department Plaintiff worked in have very different duties and responsibilities, and much different schedules.  Plaintiff had repeatedly told management it was her preference that she <u>not</u> be placed in the night dispatch position full time and that the cover dispatcher position she held was more beneficial to her for a number of reasons -- both professionally and personally.  Further, Plaintiff was not allowed to complete training on the twilight window, which training was provided to the younger male who

replaced her and, yet, which is training and related experience UPS says was necessary to perform the position she was removed from. Curiously, as Defendant admits, Plaintiff was and had been performing certain twilight window duties - but which is work UPS claims she was not capable of performing because of her lack of experience and which is the reason UPS removed her from the cover position. Similarly, the record evidence will show that, although Plaintiff was performing supervisory duties - including training, supervising, and disciplining other employees, as well as other supervisory responsibilities - her position was classified as non-supervisory. Again, as noted, after Plaintiff explained some of her actual duties to Mr. Liberti, Plaintiff was asked by Mr. Liberti why her position was not classified as MIP or supervisory.

In addition to the above, the record evidence viewed Plaintiff's way will show Plaintiff has been subjected to a number of other adverse employment actions which occurred under circumstances that give rise to an inference of discrimination. There is an abundance of pretext evidence which shows numerous procedural irregularities, inconsistencies, contradictions, unsubstantiated and post-hoc explanations, and subjective decisionmaking (carried out by males). This evidence easily will allow a jury to find Defendant's explanations for its conduct to be unworthy of belief and that its treatment of Plaintiff was based on and motivated by improper discriminatory and retaliatory motives and bias.

Much of this evidence is undisputed, and has been openly admitted by Defendant. For example, Defendant has brazenly admitted it did not comply with its written promotion policies and procedures and did not consider or process Plaintiff's promotion applications. There are no female supervisors or managers in the department Plaintiff worked in; there are a far greater number of men than women in supervisor positions at the James Street facility. UPS admits that supervisory employees make more and receive greater benefits, including UPS stock, than

Plaintiff.  UPS has also admitted - although at the same time arguing Plaintiff cannot show this - that it was accepting applications for and placing employees in full-time supervisor positions during the same period during which Plaintiff had submitted her applications.  However, UPS does not tell its employees if there are open supervisory positions or identify those positions.

Also, in addition to using overtly subjective interpersonal skills criteria, UPS utilizes a procedure (known as "Peoples Meetings") wherein management can either nominate or "blackball" an employee for promotional consideration and training opportunities.  The record evidence will also show that Plaintiff's former feeder manager, Maurice "Mic" Haynes, testified Plaintiff was qualified for, and was already performing the duties of a supervisor, and that she should have been made a supervisor.  In fact, Mr. Haynes made that very recommendation.  Although Mr. Haynes twice delivered this written assessment to HR – once by hand – UPS denies receiving it or says it got lost.  Mr. Haynes also testified Plaintiff was the best qualified individual for the cover position she performed and was removed from, and that she should have been provided with the training she was denied.

Defendant's arguments regarding Plaintiff's breach of contract/promissory estoppel claims are misguided; its related conduct is further overt evidence of pretext.  That is, Defendant has admitted all employees are required to comply with the reporting and non-retaliation obligations within the UPS Code of Business Conduct.  On the other hand, Defendant attempts to disavow its duties thereunder by pointing to so-called disclaimers.  Yet, it fails to acknowledge these same reporting and non-retaliation promises and obligations are contained with a signed, written agreement Plaintiff entered into, as did Mr. Dooley and Mr. Liberti, which have no such disclaimers.  Plaintiff reasonably relied on Defendant's promise in making her report and fulfilled her obligation; Defendant, in turn, retaliated against her.  This claim is independent of,

and arises from obligations entirely separate and distinct from her other claims.  Yet, as with all her claims, there are clearly disputed issues of material fact which preclude summary judgment. Thus, this claim, too, cannot be decided as a matter of law.

Contrary to Defendant's assertions, Plaintiff's claims are timely.  Plaintiff has been subjected to numerous adverse employment actions which occurred under circumstances that give rise to an inference of discrimination.  She has demonstrated the prima facie elements of all her claims and/or shown there to be disputed issues of material fact.  With respect to her denial of promotions, improper classification, and pay claims, these involve conduct which was continuous and ongoing and the discriminatory impact of such was felt by Plaintiff each time she received a discriminatory paycheck and was denied related benefits and other employment opportunities.  Defendant, however, cannot show the absence of disputed issues of material fact, and that UPS is entitled to judgment as a matter of law.  Defendant's so-called evidence is most certainly controverted and a jury is not required to believe it.

Defendant's motion openly asks this Court to make credibility decisions, weigh evidence, and draw inferences in its favor, while discounting or ignoring evidence favorable to Plaintiff. The bulk of Defendant's so-called evidence is based on biased, self-serving, unsubstantiated, post-hoc declarations from the very individuals perpetrating the discrimination and retaliation at issue.  They try to explain incredibly subjective decisionmaking and not what did take place -- but what the declarants say they would have done.

Defendant's motion also relies heavily on declarations from Mr. Liberti and Mr. Dooley who have already each given sworn testimony on two other occasions in this lawsuit, in both individual and corporate depositions, and for which they, each, provided well over 50 substantive errata changes, including changing and adding to their "sworn" testimony; thus, now, they are

providing purportedly sworn testimony for the fourth time on the same issues.  Further, their inconsistent testimony raises quintessential credibility issues related to motive and intent.

In sum, Defendant presents an inaccurate version of events and relies on controverted, overtly biased, unsubstantiated, and subjective testimony.  The record evidence, when viewed under the proper summary judgment standards, in its totality, and applying the proper legal analysis, will show Plaintiff has demonstrated the prima facie elements of all her claims (all of which are timely), adduced significant pretext evidence, and shown there are numerous disputed issues of material fact which are required to be decided by a jury.  Defendant's motion must be denied in its entirety.

## II.    STATEMENT OF MATERIAL FACTS

Pursuant to D.Kan.Rule 56.1(b), Plaintiff sets forth below her responses to Defendant's Statement of Uncontroverted Facts and the Additional Material Facts on which this response memorandum in opposition relies.

### A.    PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

1.    Disputed in part and as incomplete.   Plaintiff does not dispute that she was hired by and first started working with UPS in 1984 as a part-time customer service representative and became a full-time customer service representative in 1985.  However, Plaintiff did not refer to this position as a "clerk" in the testimony cited.  Pl. Ex. 1, Daniels Dep., at 13-14.  Further, Plaintiff did not state she considered the change from part-time to full-time to be a promotion. *Id*.  The records cited by Defendant are inconsistent with Plaintiff's testimony and do not refer to her position as a customer service representative.

2.    Undisputed.

3.    Undisputed.

4.      Disputed in part and as incomplete.  Plaintiff does not dispute that she became a full-time "dispatch specialist" in the package center in 1999.  However, what Defendant cites does not show that Plaintiff applied for and was promoted to that position.

5.      Disputed in part and as incomplete.  Plaintiff does not dispute that she moved from the package center to the Feeder Department.  However, Plaintiff's testimony cited by Defendant contradicts and is inconsistent with that alleged by Defendant, and shows Plaintiff "was moved within the department as a cover dispatch specialist."  Pl. Ex. 1, Daniels Dep., at 22 (emphasis added).

6.      Undisputed.

7.      Disputed in part and as incomplete.  Plaintiff does not dispute she worked as a feeder dispatch specialist.  However, Plaintiff's testimony cited by Defendant contradicts and is inconsistent with that alleged by Defendant, and shows Plaintiff "was moved within the department as a cover dispatch specialist."  Pl. Ex. 1, Daniels Dep., at 22 (emphasis added).

8.      Undisputed.

9.      Disputed in part and as incomplete.  Plaintiff does not dispute that she was not formally promoted, demoted, disciplined or discharged between 1999 and 2009.  However, what Defendant cites is inconsistent with and contradicted by the record evidence demonstrating Plaintiff was subjected to a number of discriminatory and retaliatory adverse actions during that period.    Pl. Ex. 27, Intake Quest.; Pl. Ex. 28, EEOC Charge; Pl. Ex. 29, EEOC Charge.  Defendant's allegation in this ¶ 8 that Plaintiff *was not* promoted is also contradicted by and inconsistent with Defendant's allegation in ¶ 4 that Plaintiff *was* promoted.

10.     Disputed in part and as incomplete.  Plaintiff does not dispute that she was not covered by a collective bargaining agreement.  However, Plaintiff disputes that she did not have

a contract that covered her employment.   The record evidence demonstrates Plaintiff and Defendant entered into a written agreement regarding the terms and conditions of her employment, with no contract disclaimer language, and which included the same reporting and non-retaliation obligations and promises contained within the UPS Code of Business Conduct (the "Code"), Pl. Ex. 48, Daniels Prof. Conduct & Anti-Harass. Agree.   Further, the record evidence demonstrates the Code was and Plaintiff believed it to be a contract which covered her employment.  Pl. Ex. 1, Daniels Depo., at 538-39.

11.   Disputed in part and as incomplete.  Plaintiff does not dispute that one of the many tasks she performed included working to dispatch tractor trailer drivers with their loads. However, the record evidence demonstrates Plaintiff performed and was responsible for many other tasks, including those of a feeder supervisor.  Pl. Ex. 1, Daniels Depo., at 25, 38, 39, 53-55, 111, 171-82, 221-22, 453-54; Pl. Ex. 14, Haynes Depo., at 157-58.

12.   Disputed in part and as incomplete.   Plaintiff does not dispute that UPS characterizes "dispatch specialist" as an entry level management position and specialists are considered by UPS to be below the level of full-time supervisors.  However, this is contradicted by and inconsistent with the record evidence demonstrating Plaintiff and other specialists performed and were responsible for the duties a full-time supervisor.  Pl. Ex. 1, Daniels Depo., at 25, 38, 39, 53-55, 111, 171-82, 221-22, 453-54; Pl. Ex.14, Haynes Depo., at 157-58; Pl. Ex. 15, Carpenter Declar., ¶¶ 7, 8, 11.

13.   Disputed in part and as incomplete.  Plaintiff does not dispute the duties and responsibilities of full-time Feeder supervisors and managers noted.  However, Plaintiff disputes that Plaintiff and other specialists do not perform these same tasks and have these same responsibilities.  Pl. Ex. 1, Daniels Depo., at 25, 38, 39, 53-55, 111, 171-82, 221-22, 453-54; Pl.

Ex. 14, Haynes Depo., at 157-58; Pl. Ex. 15, Carpenter Declar., ¶¶ 7, 8, 11.  That alleged by Defendant is also contradicted by and inconsistent with the record evidence demonstrating that Plaintiff filled in for others when absent or on vacation.  Pl. Ex. 24, Email (Aug. 3, 2006).

14.    Disputed in part and as incomplete.  Plaintiff does not dispute that specialists were not formally given supervisory authority.   However, Plaintiff and other specialists had and performed supervisory duties.  Pl. Ex. 1, Daniels Depo., at 25, 38, 39, 53-55, 111, 171-82, 221-22, 453-54; Pl. Ex. 14, Haynes Depo., at 157-58; Pl. Ex. 15, Carpenter Declar., ¶¶ 7, 8, 11.

15.    Disputed in part and as incomplete.  Plaintiff does not dispute that at times full-time supervisors change duties and are transferred.   However, Plaintiff disputes that the testimony of Plaintiff cited by Defendant indicates it was "often required."  Daniels Dep., 41-42.  Plaintiff's testimony simply acknowledged that these changes occur.  *Id.*

16.    **Disputed**.  Plaintiff and other specialists often had to work more than 40 hours a week and did not receive overtime pay.  Pl. Ex. 15, Carpenter Declar., ¶5.

17.    **Disputed**.  The testimony of Plaintiff cited by Defendant does not stand for that alleged.  Plaintiff simply testified that employees' hours change from time to time.  Daniels Dep., 46.

18.    Disputed in part and as incomplete.  Plaintiff does not dispute that there are three dispatch specialist positions ("shifts" or "windows") – day, twilight, and night – with different duties and hours.   However, Plaintiff disputes those are the only feeder dispatch specialist positions; there is also a feeder cover dispatch specialist position and which position Plaintiff held between 2004 and 2008.  Pl. Ex. 38, Dooley Depo., at 32-33; Pl. Ex. 1, Daniels Depo., at 22, 59,  60.

19.  **Disputed**.  The record evidence demonstrates that at certain and various times there was not a person assigned to work a window (or "shift" or "position").  Pl. Ex. 1, Daniels Depo., at 376-77; Pl. Ex. 25, Email (Dec. 29, 2007).

20.  Disputed in part and as incomplete.  Plaintiff does not dispute there is a cover dispatch position; as noted, she held that position for a number of years.  However, the record evidence shows the cover dispatcher does have an assigned or set shift, with respect to the window or shift they are covering.  Pl. Ex. 1, Daniels Depo., at 343-45.

21.  **Disputed** and Objected to.  The record evidence cited by Defendant does not demonstrate that alleged.  Plaintiff disputes that the night window was not busy; the record evidence shows the night window was very busy.  Pl. Ex. 1, Daniels Depo, at 98-99.  Plaintiff also objects to that cited by Defendant as lacking foundation and calling for speculation.  The declarations cited are also deficient in that they fail to include or provide supporting documentation for that alleged.  Likewise, the exhibit included with the Dooley declaration refers to activity on only January 13 & 14, 2010; there is nothing to demonstrate that is reflective of how "busy" the twilight window is over the unbounded temporal period alleged and/or during the time Plaintiff worked at UPS, prior to that.  Plaintiff additionally objects to these biased, self-serving, post-hoc declarations which call upon the Court to make credibility decisions.  That alleged is also irrelevant and immaterial with respect to whether or not Plaintiff was discriminated against.

22.  **Disputed** and Objected to.  The record evidence cited by Defendant does not demonstrate that alleged.  Plaintiff disputes that the night window was not busy; the record evidence shows the night window was very busy.  Pl. Ex. 1, Daniels Depo, at 98-99. Plaintiff also objects to that cited by Defendant as lacking foundation and calling for speculation.  The

declarations are also deficient and objected to for those reasons noted in Plaintiff's response to paragraph 21 above.  Plaintiff further objects to the improper manner in which Defendant has included a footnote within this paragraph 22 and the way in which such includes multiple allegations.  That alleged is also irrelevant and immaterial with respect to whether or not Plaintiff was discriminated against.

23.    **Disputed** and Objected to.  The record evidence cited by Defendant does not demonstrate that alleged.  Plaintiff also objects to that cited by Defendant as lacking foundation and calling for speculation.  The declarations are also deficient and objected to for those reasons noted in Plaintiff's response to paragraph 21 above.   That alleged is also irrelevant and immaterial with respect to whether or not Plaintiff was discriminated against.

24.    **Disputed** and Objected to.  The record evidence cited by Defendant does not demonstrate that alleged.  Plaintiff also objects to that cited by Defendant as lacking foundation and calling for speculation.  The declarations are also deficient and objected to for those reasons noted in Plaintiff's response to paragraph 21 above.  Plaintiff also disputes the allegation in this ¶ 24 as it contradicted by and inconsistent with the record evidence demonstrating that Plaintiff received some training on and performed twilight window duties, as did other non-supervisors. Pl. Ex. 1, Daniels Depo., 90-91, 100-101, 154; Def. ¶¶ 62, 74.

25.    Disputed in part and as incomplete.  Plaintiff does not dispute that Dennis Smith and Jim Yankovich have worked on the twilight window.  However, the record evidence also demonstrates that Plaintiff and other non-supervisory and supervisory employees have also worked on the cover window at various times since 2004.  Pl. Ex. 1, Daniels Depo., 90-91, 100-101, 154; Def. ¶¶ 62, 74.

26.    Undisputed.

27.     Undisputed.

28.     Undisputed.

29.     **Disputed** and Objected to.  Plaintiff first objects to that alleged in this ¶ 29, as it is unclear and cannot be determined what "policies and procedures" and what period of "time" is/are being referred to.  Further, that alleged is inconsistent with and contradicted by the record evidence.  The UPS Policy Book states individual employees have no authority to change and must follow UPS policies.  Pl. Ex. 32, UPS Policy Book, at 9.  The record evidence cited by Defendant does not demonstrate that alleged.  Plaintiff also objects to that cited by Defendant as lacking foundation and calling for speculation.  The declarations cited are also deficient in that they fail to include or provide supporting documentation for that alleged.

30.     Disputed in part and as incomplete.  Plaintiff does not dispute that the MAPP promotion process was required to be utilized in 2005.  However, Defendant's allegation in this paragraph 30 is contradicted by and inconsistent with the record evidence, including Defendant's own express admission, demonstrating the MAPP was not utilized or used consistently.  Pl. Ex. 34, Corp. Dep. (Liberti), at 287-90; Pl. Ex. 37, Liberti Depo., at 227-28; Def. ¶ 31.

31.     Disputed in part and as incomplete, and Objected to.  Plaintiff first objects to this allegation, as it is unclear what Defendant means by "it took some time for UPS to fully implement the procedures in the Kansas District."  Plaintiff disputes the MAPP was applied or utilized or done so consistently.  Pl. Ex. 1, Daniels Depo., at 225-228, 245-46; Pl. Ex. 34, Corp. Dep. (Liberti), at 287-90; Pl. Ex. 37, Liberti Depo., at 227-28; Def. ¶ 31.  The declarations cited by Defendant in support of this paragraph 31 are deficient, in that they lack foundation and have no required supporting documentation.  The record evidence cited by Defendant does not

demonstrate that alleged.  This ¶ 31 is and express admission by Defendant that it did not utilize or apply the MAPP as required.

32.    Undisputed.

33.    Undisputed.

34.    Disputed in part and as incomplete.  Plaintiff does not dispute that alleged by Defendant is set forth in the MAPP.  However, the record evidence and Defendant's express admission demonstrate UPS did not comply with or follow the MAPP. Pl. Ex. 1, Daniels Depo., at 225-228, 245-46; Pl. Ex. 34, Corp. Dep. (Liberti), at 287-90; Pl. Ex. 37 , Liberti Depo., at 227-28; Def. ¶ 31.

35.    Disputed in part and as incomplete.  Plaintiff does not dispute that alleged is set forth in and required by the MAPP.  However, the record evidence and Defendant's express admission demonstrate UPS did not comply with or follow the MAPP; likewise, the record evidence demonstrates UPS did not comply with or follow the respective requirement of the MAPP with Plaintiff.  Pl. Ex. 1, Daniels Depo., at 225-228, 245-46; Pl. Ex. 34, Corp. Dep. (Liberti), at 287-90; Pl. Ex. 37, Liberti Depo., at 227-28; Def. ¶ 31; Pl. Ex. 43, MAPP Scoring Sheet.  Plaintiff, therefore, disputes Defendant complies with or follows the MAPP.

36.    Disputed in part and as incomplete.  Plaintiff does not dispute that alleged is set forth in and required by the MAPP.  However, the record evidence and Defendant's express admission demonstrate UPS did not comply with or follow the MAPP; likewise, the record evidence demonstrates UPS did not comply with or follow the respective requirement of the MAPP with Plaintiff.  Pl. Ex. 1, Daniels Depo., at 225-228, 245-46; Pl. Ex. 34, Corp. Dep. (Liberti), at 287-90; Pl. Ex. 37, Liberti Depo., at 227-28; Def. ¶ 31; Pl. Ex. 43, MAPP Scoring Sheet. Plaintiff, therefore, disputes Defendant complies with or follows the MAPP.

37.     Disputed in part and as incomplete.  Plaintiff does not dispute that alleged is set forth in and required by the MAPP.  However, the record evidence and Defendant's express admission demonstrate UPS did not comply with or follow the MAPP; likewise, the record evidence demonstrates UPS did not comply with or follow the respective requirement of the MAPP with Plaintiff.  Pl. Ex. 1, Daniels Depo., at 225-228, 245-46; Pl. Ex. 34, Corp. Dep. (Liberti), at 287-90; Pl. Ex. 37, Liberti Depo., at 227-28; Def. ¶ 31; Pl. Ex. 43, MAPP Scoring Sheet.  Plaintiff, therefore, disputes Defendant complies with or follows the MAPP.  Given such, that alleged in this ¶ 37 is irrelevant and immaterial.  Also, Plaintiff objects to the improper manner in which Defendant has included a footnote within this ¶ 37 and the way in which such includes additional allegations.  Plaintiff further objects to that alleged in the declaration cited to within this footnote, as lacking foundation, and because it fails to provide required supporting documentation.  For those reasons already noted, Plaintiff disputes that alleged and objects because it is irrelevant and immaterial.

38.     Disputed in part and as incomplete.  Plaintiff does not dispute that alleged is set forth in and required by the MAPP.  However, the record evidence and Defendant's express admission demonstrate UPS did not comply with or follow the MAPP; likewise, the record evidence demonstrates UPS did not comply with or follow the respective requirement of the MAPP with Plaintiff. Pl. Ex. 1, Daniels Depo., at 225-228, 245-46; Pl. Ex. 34, Corp. Dep. (Liberti), at 287-90; Pl. Ex. 37, Liberti Depo., at 227-28; Def. ¶ 31; Pl. Ex. 43, MAPP Scoring Sheet.  Plaintiff, therefore, disputes Defendant complies with or follows the MAPP.  Given such, that alleged in this ¶ 38 irrelevant and immaterial.

39.     Disputed in part and as incomplete, and Objected to.  Plaintiff does not dispute that alleged is set forth in and required by the MAPP.  However, the record evidence and

Defendant's express admission demonstrate UPS did not comply with or follow the MAPP; likewise, the record evidence demonstrates UPS did not comply with or follow the respective requirement of the MAPP with Plaintiff.  Pl. Ex. 1, Daniels Depo., at 225-228, 245-46; Pl. Ex. 34, Corp. Dep. (Liberti), at 287-90; Pl. Ex. 37, Liberti Depo., at 227-28; Def. ¶ 31; Pl. Ex. 43, MAPP Scoring Sheet.  Plaintiff, therefore, disputes Defendant complies with or follows the MAPP.  Given such, that alleged in this paragraph is irrelevant and immaterial.  Also, Plaintiff objects to the improper manner in which Defendant has included a footnote within this ¶ 39 and the way in which such includes additional Plaintiff further objects to that alleged within the declaration cited to within this footnote as lacking foundation and because it fails to provide required supporting documentation.  For those reasons already noted, Plaintiff disputes that alleged and because it is irrelevant and immaterial.

40.     Disputed in part and as incomplete.  Plaintiff does not dispute that alleged is set forth in and required by the MAPP.  However, the record evidence and Defendant's express admission demonstrate UPS did not comply with or follow the MAPP; likewise, the record evidence demonstrates UPS did not comply with or follow the respective requirement of the MAPP with Plaintiff.  Pl. Ex. 1, Daniels Depo., at 225-228, 245-46; Pl. Ex. 34, Corp. Dep. (Liberti), at 287-90; Pl. Ex. 37, Liberti Depo., at 227-28; Def. ¶ 31; Pl. Ex. 43, MAPP Scoring Sheet.  Plaintiff, therefore, disputes Defendant complies with or follows the MAPP.  Given such, that alleged in this paragraph is irrelevant and immaterial.

41.     Disputed in part and as incomplete.  Plaintiff does not dispute that set forth in and required by the MAPP.  However, Plaintiff disputes that alleged, as the record evidence demonstrates UPS did not comply with the MAPP and it was not utilized with Plaintiff.  Pl. Ex. 1, Daniels Depo., at 225-228, 245-46; Pl. Ex. 34, Corp. Dep. (Liberti), at 287-90; Pl. Ex. 37,

Liberti Depo., at 227-28; Def. ¶ 31; Pl. Ex. 43, MAPP Scoring Sheet.   The MAPP requires that UPS discuss with, and obtain signed forms, from a candidate regarding willingness to travel/relocate – *prior to any to any qualification decision*.   Pl. Ex. 41, MAPP Proced. & Ref. Man., at 5 (Step 6, pt. 3).   As this was <u>never</u> <u>done</u> with Plaintiff, as Defendant admits, that alleged in this paragraph is irrelevant and immaterial.

42.   Disputed in part and as incomplete.  Plaintiff does not dispute what is set forth in and required by the MAPP.   However, Plaintiff disputes that the MAPP requirements were carried out or applied with Plaintiff, given Defendant has expressly admitted it was not. Pl. Ex. 1, Daniels Depo., at 225-228, 245-46; Pl. Ex. 34, Corp. Dep. (Liberti), at 287-90; Pl. Ex. 37, Liberti Depo., at 227-28; Def. ¶ 31; Pl. Ex. 43, MAPP Scoring Sheet.  Given such, that alleged in this paragraph is irrelevant and immaterial.

43.   Undisputed.

44.   Disputed in part and as incomplete, and Objected to.  Without waiving related objections below, Plaintiff does not dispute that Mr. Haynes completed and returned to Human Resources Plaintiff's promotion assessment.   Plaintiff does not dispute UPS failed to give Plaintiff a computerized test or panel interview.   However, Plaintiff disputes that Human Resources has no record of Plaintiff's assessment or that Plaintiff was disqualified because of this.   The record evidence demonstrates Mr. Haynes knew Plaintiff turned in and submitted promotional materials and he *twice* completed Plaintiff's assessments (recommending her for promotion) and personally hand delivered this to Mr. Grover.  Pl. Ex. 14, Haynes Depo., at 42-44, 98-99.  Plaintiff objects to the declarations submitted by Defendant as lacking foundation, self-serving, conclusory, biased, and post-hoc allegations with no required supporting documentation.  Plaintiff also objects to the improper footnote within this paragraph 44, as well

as to the declaration citations therein.  For those reasons already noted, the declarations cited within the footnote are improper and deficient.  Plaintiff also objects to Defendant referring to Mr. Haynes' testimony with no supporting citation.

45.   Disputed in part and as incomplete, and Objected to.  Plaintiff does not dispute that cited by Defendant demonstrates Plaintiff wanted to be promoted to management, and this was endorsed by Mr. Haynes.  Plaintiff disputes what Defendant cites indicates Plaintiff had any serious issues with coworkers, let alone any which would have legitimately prevented her from being considered for promotional opportunities.  Mr. Haynes deposition testimony makes clear he felt Plaintiff should have been promoted.  Pl. Ex. 14, Haynes Depo., at 98-99.  Plaintiff objects to Defendant again improperly including a footnote, which amounts to a separate statement of fact or facts.  Notwithstanding, although Plaintiff admits that cited by Defendant indicates Plaintiff's preference at that time was not to relocate or travel, the record evidence shows Mr. Haynes believed this was just her preference based on her present personal situation and at the time and that she would reconsider this is her needs changed and if presented with a promotion opportunity.  *Id*., at 36, 254-57.   Mr. Haynes also stated he would have found one refusing to travel or relocate inconsistent with seeking promotion and believed the information regarding travel and relocation was not accurate.  *Id*.  Plaintiff also disputes Defendant's characterization of Plaintiff's relationships with coworkers or that Plaintiff had any serious issues in that regard.  The record evidence demonstrates Mr. Haynes was merely offering advice on how to get along with difficult coworkers and that as to related skills he felt she "did a very good job of that."  *Id.*, at 39-42.

46.   Undisputed.

47.     Disputed in part and as incomplete, and Objected to.  Plaintiff does not dispute she *again* turned in promotional materials in 2006.  However, Plaintiff disputes that alleged in this ¶ 47 because Defendant fails to provide any evidence of that alleged other than the unsubstantiated allegations in the declarations.  Plaintiff objects to the declarations submitted by Defendant as lacking foundation, self-serving, subjective, conclusory, biased, and post-hoc allegations with no required supporting documentation.  Plaintiff also disputes that alleged in this ¶ 47 because it is inconsistent with and contradicted by the record evidence demonstrating Plaintiff consistently received favorable reviews, was recommended for promotion by her former manager, and had never been told she had problems with others which could impede her ability to be considered for promotion.  Pl. Ex. 14, Haynes Depo., at 39-42, 98-99.  Plaintiff also disputes that alleged in ¶ 47 because it is inconsistent with and contradicted by the record evidence showing, as Defendant openly admits in ¶ 47, Mr. Dooley did not fill out the assessment or recommend Plaintiff for promotion at the relevant time – i.e., Mr. Dooley is alleging what he would have done but did not do. Plaintiff also disputes that alleged in ¶ 47, as the record evidence demonstrates Plaintiff got along well with and was liked by her colleagues. Pl. Ex. 15, Carpenter Declar., ¶ 14.

48.     **Disputed** and Objected to.  Plaintiff disputes that alleged in this ¶ 48 because Defendant fails to provide any evidence of that alleged other than the unsubstantiated allegations in the declarations.  Plaintiff objects to the declarations submitted by Defendant as lacking foundation, self-serving, subjective, conclusory, biased, and post-hoc allegations with no required supporting documentation.  Plaintiff also disputes that alleged in this ¶ 48 because it is inconsistent with and contradicted by the record evidence demonstrating Plaintiff consistently received favorable reviews, was recommended for promotion by her former manager, and had

never been told she had problems with others which could impede her ability to be considered for promotion.  Pl. Ex. 14, Haynes Depo., at 39-42, 98-99.  Plaintiff also disputes that alleged in ¶ 48 because it is inconsistent with and contradicted by the record evidence showing, as Defendant openly admits, Mr. Dooley did not fill out the assessment or recommend Plaintiff for promotion at the relevant time.   Plaintiff further disputes that alleged in ¶ 48, as the record evidence demonstrates Plaintiff got along well with and was liked by her colleagues; she was considered to be "extremely conscious, reliable, and knew and performed her job well."  Pl. Ex. 15, Carpenter Declar., ¶ 14.

49.     Disputed in part and as incomplete.  Plaintiff does not dispute that Mr. Dooley  - or anyone from UPS – did not speak to her or follow-up with her in any way about her application.  However, Plaintiff disputes that it was her obligation or anyone ever told her that she was required to initiate a discussion with Mr. Dooley regarding the failure of Mr. Dooley and UPS to comply with the promotion process.  Plaintiff disputes she had an obligation to follow-up with UPS; the record evidence shows it is the obligation of UPS to follow-up with an individual who has applied for promotion.  Pl. Ex. 41, MAPP Proced. & Ref. Man., at 3-5.

50.     Disputed in part and as incomplete.  Plaintiff does not dispute that she did not formally submit a letter of interest or apply for promotion after 2006.   However, Plaintiff disputes she was no longer interested in being considered for promotion.  The record evidence demonstrates Plaintiff believed that, because of the failure or refusal of UPS to properly process her promotion applications or follow-up on them or with her, she believed it was a futile gesture; which the record evidence and Defendant's admissions show to be true. Pl. Ex. 1, Daniels Depo., at 240, 249, 270-71, 329; Pl. Ex. 15, Carpenter Declar., ¶ 9.

51.    **Disputed** and Objected to.  Plaintiff disputes that alleged in this ¶ 51 because Defendant fails to provide any evidence of that alleged other than the unsubstantiated allegations in the declarations.  Plaintiff objects to the declarations submitted by Defendant as lacking foundation, self-serving, subjective, conclusory, biased, and post-hoc allegations with no required supporting documentation.  Plaintiff also disputes that alleged in this ¶ 51 to the extent that it suggests Plaintiff did not successfully complete the process, as UPS admittedly lost and failed to process her applications.  Pl. Ex. 14, Haynes Depo., at 42-44, 98-99; Def. ¶ 47. Similarly, whether there were other employees who did not successfully complete the process is irrelevant and immaterial, because, again, UPS admittedly did not apply the process to Plaintiff. *Id.*  It is also irrelevant and immaterial, with respect to Plaintiff's treatment and claims, that other employees – male or female - may or may not have had their promotion applications processed properly.

52.    **Disputed** and Objected to. Plaintiff disputes that alleged in this ¶ 52 because Defendant fails to provide any evidence of that alleged other than the unsubstantiated allegations in the declarations.  Plaintiff objects to the declarations submitted by Defendant as lacking foundation, self-serving, subjective, conclusory, biased, and post-hoc allegations with no required supporting documentation.  Plaintiff also disputes that alleged in this ¶ 52 to the extent that it suggests Plaintiff did not successfully complete the process, as UPS admittedly failed to process her application.  Pl. Ex. 14, Haynes Depo., at 42-44, 98-99; Def. ¶ 47. Similarly, other employees who did not successfully complete the process is irrelevant and immaterial, because, again, admittedly did not apply the process to Plaintiff.  *Id.*   Again, it is irrelevant and immaterial, with respect to Plaintiff's treatment and claims, that other employees under the age of 40 may or may not have had their promotion applications processed properly.

53.     Disputed in part and Objected to.   Plaintiff does not dispute that there were employees promoted to full-time supervisory positions in the Kansas District in 2005 and 2006. This is an admission by Defendant that at the time Plaintiff submitted her promotion applications there <u>were</u> open supervisory positions UPS was seeking to and did fill.   This contradicts and is inconsistent with Defendant's argument Plaintiff cannot identify any supervisory positions that were available and filled during the same period UPS failed or refused to process her promotion applications.   However, Plaintiff disputes that alleged in this ¶ 53 because Defendant fails to provide any evidence of that alleged other than the unsubstantiated allegations in the declarations.   Plaintiff objects to the declarations submitted by Defendant as lacking foundation, self-serving, speculative, subjective, conclusory, biased, and post-hoc allegations with no required supporting documentation.   Plaintiff also disputes that alleged in this ¶ 53 to the extent that it suggests Plaintiff did not successfully complete the process, as UPS admittedly failed to process her application.   Pl. Ex. 14, Haynes Depo., at 42-44, 98-99; Def. ¶ 47. Again, it is irrelevant and immaterial, with respect to Plaintiff's treatment and claims, that other employees who were promoted did or did not have their promotion applications processed properly. Plaintiff also notes Defendant does not specifically state in its ¶ 53 that any female employees over the age of 40 were promoted to supervisory positions.

54.     Undisputed.    Plaintiff does not dispute the existence of the UPS salary administration guidelines and procedures.   That is irrelevant and immaterial though, as to whether or not Plaintiff and/or her job was/were classified in a discriminatory fashion.

55.     Undisputed.   Plaintiff does not dispute that pursuant the salary administration guidelines and procedures her salary in part depended on previous job.   That is irrelevant and

immaterial though, as to whether or not Plaintiff and/or her job was/were classified in a discriminatory fashion.

56.     Disputed in part and as incomplete.  Plaintiff does not dispute she received a salary increase during 2006 and 2009.  That is irrelevant and immaterial though, as to whether or not Plaintiff and/or her job were classified in a discriminatory fashion.

57.     Undisputed.  Plaintiff does not dispute that alleged in ¶ 57.  However, that alleged is irrelevant and immaterial though, as to whether or not Plaintiff and/or her job was/were classified in a discriminatory fashion.

58.     Disputed in part and as incomplete, and Objected to.  Plaintiff does not dispute that the individuals noted were full-time supervisors at some time during 2006 and 2009.  Plaintiff disputes these individuals worked as and performed feeder supervisor duties which Plaintiff did not.  The record evidence demonstrates and shows Plaintiff was performing and responsible for the duties of a full-time feeder supervisor.  Pl. Ex. 14, Haynes Depo., at 157-58; Pl. Ex. 1, Daniels Depo., at 25, 38, 39, 53-55, 111, 171-82, 221-22, 453-54; Pl. Ex. 15, Carpenter Declar., ¶¶ 7, 8, 10, 11.  Plaintiff objects to the declarations cited as deficient and to the extent they call for subjective, unsubstantiated, and conclusory allegations.  Plaintiff also objects to Defendant again setting forth a separate fact in a footnote which amounts to a separate paragraph.  Without waiving this objection, Plaintiff does not dispute Mr. Smith retired from UPS.

59.     Disputed in part and as incomplete.  Plaintiff does not dispute that Mr. Wetschensky, Mr. Stuke, and Mr. Sloan worked as on-road supervisors.  However, Plaintiff disputes that the duties noted are only performed by on-road supervisors.  This is contradicted by and inconsistent with the record evidence demonstrating that Plaintiff and other dispatch

specialists trained, supervised, and evaluated drivers.  Pl. Ex. 1, Daniels Depo., at 38-39; Pl. Ex. 2, Daniels Notes, at PLT 324-25; Pl. Ex. 15, Carpenter Declar., ¶¶ 7, 10.  That these individuals noted in ¶ 59 had commercial drivers licenses or DOT cards is irrelevant and immaterial; Defendant does not state or allege either Mr. Yankovich or Mr. Smith had commercial drivers licenses or DOT cards.

60.    Disputed in part and as incomplete, and Objected to.  Plaintiff does not dispute that the individuals noted worked as dispatchers on the twilight shift and had been dispatchers at the Lenexa facility.  However, Plaintiff disputes that she was not performing twilight duties.  The record evidence demonstrates and shows Plaintiff had trained on, performed, and was responsible at various times for twilight dispatch or shift duties at the James Street facility. Pl. Ex. 1, Daniels Depo., at 59-70, 100-106.  Plaintiff objects to the declarations cited as deficient and to the extent they call for subjective, unsubstantiated, and conclusory allegations.

61.    Undisputed.

62.    Disputed in part and as incomplete.  Plaintiff does not dispute that she was provided limited and unfinished training on the twilight window and twilight training she was not provided or denied, including supervision and oversight, was provided to male employees. Plaintiff disputes that she was not performing twilight duties.  The record evidence demonstrates and shows Plaintiff had trained on, performed, and was responsible at various times for twilight dispatch or shift duties at the James Street facility. Pl. Ex. 1, Daniels Depo., at 59-70, 100-106. The record evidence also shows Plaintiff was capable of performing the duties of the twilight window on her own if provided with proper training, supervision, and assistance, which she was denied, but, was provided Jason Isabell. Pl. Ex. 1, Daniels Depo., at 59-70, 100-106.

63.    Undisputed.

64.     Disputed in part and as incomplete.  Plaintiff does not dispute she held the cover dispatch position.  This ¶ 64 is an express admission by Defendant which contradicts and is inconsistent with its allegations that Plaintiff was not the cover dispatcher.  Plaintiff disputes she was "assigned" the cover position; she was offered, accepted, and held that position – *for five (5) years*.  Pl. Ex 1, Daniels Depo., at 59-62.  This included her covering the day, night, *and* twilight windows or shifts.  *Id*.  Plaintiff also disputes her being placed in the cover position was merely a schedule change.  All of the dispatch positions have different duties and responsibilities and have different schedules.  Pl. Ex. 30, JBAs;  Pl. Ex. 38, Dooley Depo., at 28; Def. ¶ 18.  Plaintiff does not dispute that although her duties changed, UPS did not change her classification/grade or compensation.  This ¶ 64 is an admission that job classification/grade and compensation is based not on actual job duties, but, rather, what title UPS chooses to give a job or position.

65.     Disputed in part and as incomplete, and Objected to.  Plaintiff does not dispute she held the cover position.  However, for those reasons noted in response to ¶ 64 above, Plaintiff disputes that was an "assignment" or temporary – Plaintiff held the cover position for 5 years.  Plaintiff also disputes she did not perform twilight duties in her cover position. Pl. Ex. 1, Daniels Depo., at 59-70, 100-106. Plaintiff objects to Defendant's improperly once again setting forth independent factual statements within a footnote to a paragraph.  Without waiving that objection, Plaintiff does not dispute she performed various twilight yard duties, some of which Defendant openly admits in its footnote 9.  Footnote 9 is an express admission by Defendant Plaintiff was performing twilight window duties on her own.

66.     Disputed in part and as incomplete, and Objected to.  Plaintiff does not dispute that, after she had started training on the twilight window and performed various twilight duties, Guy Albertson decided that only full-time supervisors – all males – could cover the twilight

26

window.  This ¶ 66 is an express admission by Defendant it would only allow males to perform this work or cover the twilight window.  Further, the record evidence shows Plaintiff had trained on, performed, and was responsible at various times for twilight dispatch or shift duties at the James Street facility. Pl. Ex. 1, Daniels Depo., at 59-70, 100-106.  However, the Plaintiff disputes that alleged in this ¶ 66 regarding alleged service failures, as Defendant fails to provide any evidence of that alleged other than the unsubstantiated allegations in the declarations. Plaintiff objects to the declarations submitted by Defendant as lacking foundation, self-serving, subjective, conclusory, biased, and post-hoc allegations with no required supporting documentation.

67.    Disputed in part and Objected to.  Plaintiff does not dispute Mr. Albertson made the decision.  Yet, Plaintiff disputes that alleged in this ¶ 66 regarding his reason, as Defendant fails to provide any evidence of that alleged other than the unsubstantiated allegations in the declarations.   The record evidence shows Plaintiff had trained on, performed, and was responsible at various times for twilight dispatch or shift duties at the James Street facility. Pl. Ex. 1, Daniels Depo., at 59-70, 100-106.  Plaintiff objects to the declarations submitted by Defendant as lacking foundation, self-serving, subjective, conclusory, biased, and post-hoc allegations with no required supporting documentation.

68.    Disputed in part and as incomplete.  Plaintiff does not dispute she covered the night window for Ms. McGaugh.  However, Plaintiff disputes and the record evidence is inconsistent with and contradicts Defendant's allegation that Plaintiff "went back to working" that position. The record evidence demonstrates Plaintiff was the cover dispatcher at that time and she was covering for Ms. McGaugh. Pl. Ex. 1, Daniels Depo., at 22, 59-60; Pl. Ex. 24, Email (Aug. 3, 2006).

69.     Disputed in part and as incomplete.  Plaintiff does not dispute she covered for the night window.  Plaintiff disputes she was the night dispatcher at that time.  The record evidence demonstrates Plaintiff was the cover dispatcher at that time.  Pl. Ex. 1, Daniels Depo., at 22, 59-60; Pl. Ex. 24, Email (Aug. 3, 2006).

70.     Disputed in part and as incomplete.  Plaintiff does not dispute she was the cover dispatcher at that time.  Plaintiff disputes and the record evidence contradicts and is inconsistent with Defendant's allegations Plaintiff "went back to working as the cover dispatcher" because Plaintiff had been and was still the cover dispatcher.  Pl. Ex. 1, Daniels Depo., at 22, 59-60; Pl. Ex. 24, Email (Aug. 3, 2006).

71.     Disputed in part and as incomplete.  Plaintiff does not dispute she covered the night shift for Ms. Chappell.  However, Plaintiff disputes and the record evidence contradicts and is inconsistent with Defendant's allegation that Plaintiff "began working the night shift again." Plaintiff was the cover dispatcher and she was covering for Ms. Chappell.  Pl. Ex. 1, Daniels Depo., at 22, 59-60; Pl. Ex. 24, Email (Aug. 3, 2006); Pl. Ex. 25, Email (Dec. 29, 2007).

72.     Disputed in part and as incomplete.  Plaintiff does not dispute she covered the night shift for Ms. Chappell.  However, Plaintiff disputes and the record evidence contradicts and is inconsistent with Defendant's allegation that Plaintiff "worked the night window until she retired." Plaintiff was the cover dispatcher and covered the night window until she was removed from the cover position in July of 2008 and became the full-time night dispatcher. Pl. Ex. 1, Daniels Depo., at 22, 59-60; Pl. Ex. 24, Email (Aug. 3, 2006); Pl. Ex. 25, Email (Dec. 29, 2007).

73.     Disputed in part and as incomplete.  Plaintiff does not dispute that at times supervisors covered dispatch window absences.  However, Plaintiff denies she was "working the night shift in late 2007 and early 2008." The record evidence, including Plaintiff's testimony

cited by Defendant, demonstrates Plaintiff was acting as the cover dispatcher during that period and she happened to be covering the night window.  Pl. Ex. 1, Daniels Depo., at 22, 59-60; Pl. Ex. 24, Email (Aug. 3, 2006); Pl. Ex. 25, Email (Dec. 29, 2007).   Defendant grossly misrepresents Plaintiff's testimony.   The record evidence cited by Defendant shows that difficulties that were experienced were due to the Feeder Department being shorthanded or not properly staffed; if Plaintiff was covering the night window, management would have to have someone else cover dispatch absences and vacations.

74.     Disputed in part and as incomplete.  Plaintiff does not dispute Jason Isabell was allowed to perform and cover twilight duties while receiving training and supervision on the twilight window.  Plaintiff disputes that Mr. Isabell already knew how to perform all the duties of the twilight window or that he was left unsupervised or without assistance and guidance from a supervisor.  Pl. Ex. 1, Daniels Depo., at 157-61.  That alleged in this ¶ 74 also contradicts and is inconsistent with Defendant's allegation that Guy Albertson decided that only a full-time supervisor, which Mr. Isabell was not, would be allowed to cover the twilight window.  Def. ¶ 66.  This ¶ 74 is also an admission by Defendant that simply because one covers the duties of another position for an extended period, as Defendant says Mr. Isabell did for Mr. Smith, they do not assume or move into that position.  This contradicts and is inconsistent with Defendant's argument regarding the extended time Plaintiff covered for Mr. Chapell and for which Defendant falsely says Plaintiff moved into that position.

75.     Disputed in part and as incomplete.  Plaintiff does not dispute that Mr. Isabell was allowed to work on the twilight window and provided with training, including close assistance and supervision, from other supervisors which allowed him to learn aspects of that job, but which training, experience, and supervision was denied Plaintiff.  Pl. Ex. 1, Daniels Depo., at

157-61.  Plaintiff objects to Defendant again improperly including a footnote in a paragraph which contains additional factual allegations and amounts to an additional paragraph.  Without waiving this objection, Plaintiff does not dispute she did perform various twilight duties, including yard control, and covered for Mr. Isabell.  However, Plaintiff disputes that she was provided with the same training, supervision, and assistance that was provided to Mr. Isabell.  *Id*. Defendant's allegation in this footnote 10 directly contradicts and is inconsistent with Defendant's other allegations that Plaintiff was not working as the cover dispatcher and, also, she was not capable of performing twilight window duties.  Plaintiff's testimony cited by Defendant does not support that alleged by Defendant.

76.     Undisputed.

77.     **Disputed**.  The record evidence demonstrates Mr. Isabell received extended and ongoing training, including close supervision and assistance, from supervisors and which training was not provided to Plaintiff. Pl. Ex. 1, Daniels Depo., at 61-62, 157-61.

78.     Disputed in part and as incomplete.  Plaintiff does not dispute that she did not complain to management at that time.  However, that is irrelevant and immaterial.  Plaintiff was not made aware of the adverse impact Mr. Isabell being allowed to work on the twilight window would have for her until she was removed or stripped from her cover position and replaced by Mr. Isabell in July of 2008. The record evidence, including Plaintiff's testimony cited by Defendant, demonstrates Plaintiff was acting as the cover dispatcher during that period and she happened to be covering the night window.  Pl. Ex. 1, Daniels Depo., at 22, 59-60; Pl. Ex. 24, Email (Aug. 3, 2006); Pl. Ex. 25, Email (Dec. 29, 2007).

79.     **Disputed**.  That alleged by Defendant is directly contradicted by and inconsistent with the record evidence which makes clear that Plaintiff held the cover dispatch position in

March of 2008.  Pl. Ex. 1, Daniels Depo., at 22, 59-60; Pl. Ex. 24, Email (Aug. 3, 2006); Pl. Ex. 25, Email (Dec. 29, 2007).   The record evidence also demonstrates that Mr. Dooley, as the Feeder Manager, should have been fully aware of the positions held by those in the Feeder Department.  Further, the record evidence shows Mr. Dooley was well aware that Ms. Daniels held the cover position.  Pl. Ex. 38, Dooley Depo., at 32, 35; Pl. Ex. 24, Email (Aug. 3, 2006).  For example, Plaintiff repeatedly submitted time records, approved by Mr. Dooley, which expressly noted Plaintiff was covering the night window for Ms. Chappell. Pl. Ex. 13; Pl. Ex. 38, Dooley Depo., at 130-31. This ¶ 79 is an express admission by Defendant that it does not classify or recognize a position or job based on the actual position held or duties performed.

80.     Disputed in part and because incomplete.  Plaintiff does not dispute supervisors covered absences - because Plaintiff was covering the night window and the department was understaffed.  However, Plaintiff disputes Mr. Dooley "believed he did not have did not have a cover person."  The record evidence shows Mr. Dooley was well aware that Ms. Daniels held the cover position.  Pl. Ex. 38, Dooley Depo., at 32, 35; Pl. Ex. 24, Email (Aug. 3, 2006).  As already noted, Plaintiff repeatedly submitted time records, approved by Mr. Dooley, which expressly recognized Plaintiff was covering the night window for Ms. Chappell.  Pl. Ex. 13; Pl. Ex. 38, Dooley Depo., at 130-31. Mr. Dooley's so-called "belief" is directly contradicted by and inconsistent with the record evidence.

81.     **Disputed** and Objected to.  That cited by Defendant does not establish that it alleges. Plaintiff also objects to the declarations cited; Defendant fails to provide any evidence of that alleged other than the unsubstantiated allegations in the declarations.  Plaintiff objects to the declarations submitted by Defendant as lacking foundation, self-serving, subjective, conclusory, biased, and post-hoc allegations with no required supporting documentation.   Also, the record

evidence demonstrates that, contradicting and inconsistent with that alleged by Defendant, Feeder Management was aware in December of 2007 that Ms. Chapell was not coming back and a replacement was needed for her.  Pl. Ex. 25, Email (Dec. 29, 2007).  Further contradicting and inconsistent with Defendant's allegations, this amply demonstrates Ms. Daniels was the cover dispatcher covering for Ms. Chapell – i.e., if Ms. Daniels had already been moved into and occupied the night dispatcher position, there would be no need to find a replacement for Ms. Chappell.

82.    Disputed in part and as incomplete.  Plaintiff does not dispute that Mr. Isabell was promoted to and actually started in the cover position Plaintiff was stripped or removed from on July 9, 2008, unannounced to Plaintiff and while she was on vacation.   However, Plaintiff disputes that only Mr. Dooley and Mr. Christie were responsible for the decision to promote Mr. Isabell.  The record evidence demonstrates Gary Liberti and Jaime Diaz were also involved with and responsible for placing Mr. Isabell in the cover position held by Plaintiff.  Pl. Ex. 2, Notes (July 31, 2008), at PLT 322-23; Pl. Ex. 37, Liberti Depo., at 241-43; Pl. Ex. 1, Daniels Depo., at 657-58, 662-63.

83.    Disputed in part and as incomplete.  Plaintiff does not dispute that Mr. Isabell was promoted to specialist, Ms. Ammons was a specialist, or that Ms. Yankovich worked on the twilight window at times.  However, Plaintiff disputes she was the night dispatcher.  That alleged by Defendant is directly contradicted by and inconsistent with the record evidence which makes clear that Plaintiff held the cover dispatch position and was covering the night window.  Pl. Ex. 1, Daniels Depo., at 22, 59-60; Pl. Ex. 24, Email (Aug. 3, 2006); Pl. Ex. 25, Email (Dec. 29, 2007).

84.     Disputed in part and as incomplete, and Objected to.  Plaintiff does not dispute she was stripped of the cover position and replaced by Mr. Isabell and this was a promotion for him.  Plaintiff disputes Mr. Isabell was better qualified for the cover dispatch position.  The record evidence demonstrates Plaintiff had more experience than Mr. Isabell, she knew how to and had covered all the windows, and her former manager, Mic Haynes, felt she was best qualified to hold the cover position.  Pl. Ex. 14, Haynes Depo., at 136-37; Pl. Ex. 1, Daniels Depo., at 25, 38, 39, 53-55, 111, 171-82, 221-22, 453-54.   Plaintiff also objects to the declarations cited; Defendant fails to provide any evidence of that alleged other than the unsubstantiated allegations in the declarations regarding what was purportedly "believed" in the past.  Plaintiff objects to the declarations submitted by Defendant as lacking foundation, self-serving, subjective, conclusory, biased, and post-hoc allegations with no required supporting documentation.  Plaintiff also objects to Defendant again improperly including a footnote in a paragraph which contains additional factual allegations and amounts to an additional paragraph.  Without waiving this objection, Plaintiff does not dispute Mr. Isabell was assigned the night dispatcher position after Plaintiff left.   How much Mr. Isabell was making is irrelevant and immaterial as to Plaintiff's treatment and claims.

85.     **Disputed** and Objected to.  The record evidence demonstrates Plaintiff was better and more qualified than Mr. Isabell – Plaintiff held the cover position for five years, and worked on the day, night, and twilight windows, including performing various twilight duties.  Pl. Ex. 14, Haynes Depo., at 136-37; Pl. Ex. 1, Daniels Depo., at 25, 38, 39, 53-55, 111, 171-82, 221-22, 453-54.  As noted testified to by her former manager, Mic Haynes, Plaintiff had the experience and ability and should have been allowed to acquire any twilight training which would have allowed her to cover all twilight window duties.   Pl. Ex. 14, Haynes Depo., at 71-72, 107-08.

Plaintiff also objects to the declarations cited; Defendant fails to provide any evidence of that alleged other than the unsubstantiated allegations in the declarations regarding what was purportedly "believed" in the past. Plaintiff objects to the declarations submitted by Defendant as lacking foundation, self-serving, subjective, conclusory, biased, and post-hoc allegations with no required supporting documentation.

86. **Disputed**. That alleged by Defendant is contradicted by and inconsistent with the record evidence. Plaintiff testified she was not allowed to complete and receive training on the twilight window provided to Mr. Isabell; although she had and could perform various twilight window duties, she believed she needed further training, including the supervision and assistance provided to Mr. Isabell, in order to perform all twilight duties on her own. Pl. Ex. 1, Daniels Depo., at 60-62, 90-92, 111-12. Further, the record evidence amply demonstrates Plaintiff was performing some twilight duties on her own. *Id*. Plaintiff's testimony cited by Defendant does not state that alleged by Defendant.

87. Disputed in part and as incomplete. Plaintiff does not dispute that Mr. Isabell covered different windows, including twilight. However, Plaintiff disputes that he did this all on his own, without any back-up, support or reinforcement from supervisors. Pl. Ex. 1, Daniels Depo., at 61-62, 157-61.

88. Disputed in part and as incomplete. The record evidence amply demonstrates Ms. Daniels performed various twilight duties, she received some twilight training, and she wanted to complete that training. Pl. Ex. 1, Daniels Depo., at 60-62, 90-92, 111-12. The record evidence also shows Plaintiff repeatedly told management she wanted to remain in the cover position. Pl. Ex. 38, Dooley Depo., at 41-42; Pl. Ex. 37, Liberti Depo., 179-83. The record evidence also Plaintiff held the cover position for five years and was performing some twilight duties. Pl. Ex.

1, Daniels Depo., at 25, 38, 39, 53-55, 111, 171-82, 221-22, 453-54.   Thus, Plaintiff clearly was able to perform certain twilight duties, she wanted to do so, and management was fully aware she wanted to cover the twilight shift.   The testimony of Plaintiff cited by Defendant does not stand for that alleged.

89.     Disputed in part and as incomplete.   Plaintiff does not dispute her classification and pay remained the same after she was stripped of or removed from the cover position in July of 2008.   However, Plaintiff disputes her hours and schedule did not change.   The record evidence demonstrates Plaintiff's hours and schedule as a cover dispatcher were very different than if she was holding only the position of night dispatch position.   Plaintiff repeatedly told management the hours and scheduling of the night dispatch position were not as favorable as the cover position; also, she did not want to be placed in the night dispatch position full-time.   Pl. Ex. 38, Dooley Depo., at 41-42; Pl. Ex. 37, Liberti Depo., at 179-83; Pl. Ex. 8, at PLT 202; Pl. Ex. 27, Intake Quest., at 3.

90.     Disputed in part and as incomplete.   Plaintiff does not dispute she met with Mr. Liberti on July 31, 2008.   However, Plaintiff disputes all that was discussed was Mr. Isabell performing the cover dispatch duties.   The record evidence makes it clear that when Plaintiff met with Mr. Liberti she expressly complained about sex and age discrimination and retaliation regarding Plaintiff being stripped or removed from her cover position and being replaced by Mr. Isabell, not being allowed to complete and receive training for the twilight window, and Mr. Dooley retaliating for a previous complaint she had made about him coming to her home.  Pl. Ex. 1, Daniels Depo., at 425, 427, 429, 438-57; Pl. Ex. 2, Notes (July 31, 2008); Pl. Ex. 27, Intake Quest.; Pl. Ex. 28, EEOC Cg. (Nov. 2008); Pl. Ex. 29, EEOC Cg. (April 2009). Plaintiff also asked about the promotion process to confirm her understanding of that; she discussed her job

duties and responsibilities; Mr. Liberti then asked Plaintiff why her position was not classified as MIP or supervisory; and, Mr. Liberti told Plaintiff he would visit with Mr. Dooley and Mr. Christie and he would follow-up with Plaintiff regarding her complaint and the issues she brought up.  Pl. Ex. 1, Daniels Depo., at 446-60; Pl. Ex. 2, Daniels Notes (July 31, 2008).

91.    Disputed in part and incomplete.  Plaintiff does not dispute she met with Mr. Liberti in July of 2008 - the same month she was improperly stripped or removed from her cover position.  However, that cited by Defendant does not stand for that alleged.  Plaintiff disputes she did not speak to Mr. Liberti before the meeting.  The record evidence shows, after Plaintiff returned from vacation and learned of being removed from the cover position, she called Mr. Liberti before and to arrange the meeting, telling him she had some concerns she wanted to address.  Pl. Ex. 1, Daniels Depo., at 339-40.

92.    Disputed in part and as incomplete.  Plaintiff's testimony and other evidence make it clear she complained to Mr. Liberti because she felt she was being discriminated against based on her age and sex, including being stripped or removed from her cover position and being replaced by a younger, male – Jason Isabell.  Pl. Ex. 1, Daniels Depo., at 425, 427, 429, 438-57; Pl. Ex. 2, Notes (July 31, 2008); Pl. Ex. 27, Intake Quest.; Pl. Ex. 28, EEOC Cg. (Nov. 2008); Pl. Ex. 29, EEOC Cg. (April 2009).  See Pl. Resp. to ¶ 90, supra.  Defendant misrepresents Plaintiff's testimony regarding her meeting with Mr. Liberti and what she complained about. Plaintiff does not dispute that one of the reasons she believed Mr. Isabell was placed in her position was out of retaliation for a report she made regarding Mr. Dooley's improper conduct (and for which UPS disciplined and reprimanded Mr. Dooley).  However, Plaintiff disputes she told Mr. Liberti that retaliation was the only reason for her being improperly stripped or removed from her cover position.

93.     Disputed in part and as incomplete.  Plaintiff does not dispute Mr. Liberti told her during their July 31, 2008 meeting he would visit with Mr. Dooley and Mr. Christie.  However, Plaintiff disputes that is all Mr. Liberti told Plaintiff he would do in responding to her complaint.  The record evidence demonstrates Mr. Liberti told Plaintiff he would follow up with her regarding her complaint and the issues she raised.  Pl. Ex. 1, Daniels Depo., at 425, 427, 429, 438-57; Pl. Ex. 2, Notes (July 31, 2008); Pl. Ex. 27, Intake Quest.; Pl. Ex. 28, EEOC Cg. (Nov. 2008); Pl. Ex. 29, EEOC Cg. (April 2009).  As such, Plaintiff disputes Mr. Liberti only told Plaintiff he would look into "Mr. Isabell working as the cover dispatch person."  Plaintiff also disputes that Mr. Liberti ever actually met with Mr. Liberti or Mr. Christie and discussed with them the actual complaint made and issues raised by Plaintiff.  The record evidence shows Mr. Dooley was not told by Mr. Liberti about the issues raised and complaint made by Plaintiff in July of 2008.  Pl. Ex. 1, Daniels Depo., at 477-78; Pl. Ex. 3, Daniels Notes (Feb. 18, 2009).

94.     Disputed in part and as incomplete.  Plaintiff does not dispute that she met with Mr. Liberti and Mr. Williams on February 26, 2009.  However, Plaintiff disputes they met with her to follow up on her "concerns" or that which she actually complained of to Mr. Liberti in July of 2008.  The record evidence shows Mr. Liberti and Mr. Williams met with Plaintiff to falsely accuse her of improperly recording her time.  Pl. Ex. 1, Daniels Depo., at 392-94; Pl. Ex. 3, Notes (Feb. 18, 2009); Pl. Ex. 29, EEOC Charge (April 2009).  Given such, Plaintiff also disputes what Defendant alleges to be Plaintiff's "concerns."  The record evidence shows Plaintiff's "concerns" included that she complained of to Mr. Liberti in July of 2008, which he denied being aware of at the February 26, 2009 meeting.  Pl. Ex. 1, Daniels Depo., at 392-94, 500-01; Pl. Ex. 3, Notes (Feb. 18, 2009); Pl. Ex. 29, EEOC Charge (April 2009).

95.     Disputed in part and as incomplete.  Plaintiff's testimony cited by Defendant does not stand for that alleged.  Plaintiff stated Mr. Liberti told her he asked Mr. Dooley to follow-up with her.  Pl. Ex. 1, Daniels Depo., at 478-79.  However, the record evidence demonstrates Mr. Dooley told Plaintiff Mr. Liberti had not talked to him about the meeting Plaintiff had with Mr. Liberti in July of 2008.  *Id*. at 276-78.

96.     **Disputed**.  Plaintiff's testimony cited by Defendant does not stand for that alleged.  Plaintiff testified Mr. Liberti accused her of improper time card recordation, telling her she needed to record her time, meals, and breaks, suggested she was documenting her meals and breaks incorrectly, and leaving early and documenting her time as still at work.  Pl. Ex. 1, Daniels Depo., at 393-94, 433-34.

97.     Disputed in part and as incomplete, and Objected to.  Plaintiff does not dispute that Mr. Liberti briefly spoke with Plaintiff one day in January of 2009 as she was leaving at the proper time and at the end of her working a full shift.  Plaintiff disputes all else alleged in this ¶ 97, as that cited by Defendant does not stand for or support that alleged.  The record evidence demonstrates that Plaintiff and other employees were forced to work without taking a break or lunch and this would impact the time of day they left, as compared to their scheduled times.  Pl. Ex. 1, Daniels Depo., at 433-34; Pl. Ex. 15, Carpenter Declar., at ¶¶ 5, 6. Plaintiff disputes that set forth in and objects to the declarations and documentation cited by Defendant as they do not stand for that alleged.  That alleged in this ¶ 97 is also an admission by Defendant that it is not familiar with and has no personal knowledge of the actual hours worked by Plaintiff.

98.     Disputed in part and as incomplete.  That alleged by Defendant is contradicted by and inconsistent with the record evidence. Plaintiff does not dispute Defendant sent Plaintiff emails regarding recording time. However, this email told Plaintiff to *always* record her lunch

and breaks – regardless of whether she took lunch or breaks, which she was not able and allowed to do.  Pl. Ex. 1, Daniels Depo., at 433-34; Pl. Ex. 47, Emails (June 2009); Pl. Ex. 15, Carpenter Declar., at ¶¶ 5, 6; Pl. Ex. 4, Daniels Notes (June 29, 2009).  The record evidence shows email Plaintiff received from Defendant was inconsistent with and contradicted that which stated there should be *very few* times one would not be able to take a lunch or break.  Plaintiff's testimony cited by Defendant does not stand for that alleged.

99.  **Disputed**.  Plaintiff's testimony cited by Defendant does not support or stand for that alleged.  Plaintiff testified she received a decrease in emails and voice mails from Mr. Dooley and this interfered with and impeded her ability to do her job.  Pl. Ex. 1, Daniels Depo., at 474, 486-87.  Simply because Plaintiff, as she testified, overcame this and performed her job as required does not in any way lessen or negate the fact that this occurred.  The record evidence also shows Defendant failed and refused to properly address and follow up with Plaintiff regarding the complaint of sex and age discrimination and retaliation she made to Mr. Liberti, as well as the other issues she raised, in July of 2008.  Pl. Ex. 1, Daniels Depo., at 431-32, 467-68, 482-83, 501-02; Pl. Ex. 2, Notes, at PLT 325; Pl. Ex. 27, Intake Quest.; Pl. Ex. 29, EEOC Cg. (April 2009).  Likewise, the record evidence shows Mr. Dooley did not address Plaintiff's "concerns" in February of 2009.  Pl. Ex. 1, Daniels Depo., at 477-78; Pl. Ex. 3, Daniels Notes (Feb. 18, 2009)

100.  Undisputed.

101.  Disputed in part and as incomplete.  Plaintiff does not dispute she provided two copies of the Code to Defendant.  Nor does Plaintiff dispute the so-called "disclaimer" language in the copies of the Code she produced or the language which also includes the requirements, promises, and obligations of reporting and non-retaliation.  However, the so-called "disclaimer"

language referred to by Defendant is directly contradicted by and inconsistent with Defendant's corporate deposition and its managers testimony that UPS and all of its employees are bound by and obligated to comply with the Code, including, in particular, the reporting and non-retaliation provisions therein.  Pl. Ex. 37, Liberti Depo., at 145; Pl. Ex. 34, Corp. Dep. (Liberti), at 262-63. Plaintiff also disputes that cited by Defendant demonstrates the disclaimers apply to the reporting and retaliation obligations and promises; the record evidence makes clear the Code disclaimer concerns an employee's at-will or other employment relationship.  The record evidence also demonstrates the so-called "disclaimer" language in the Code is inconsistent with and contradicted by other language in the Code and other documentation, including signed written agreements which Plaintiff, UPS management, and UPS have entered into, which require UPS and these employees to comply with the reporting and non-retaliation provisions of the Code.  Pl. Ex. 48, Daniels Agreement; Pl. Ex. 49, Liberti Agreement; Pl. Ex. 50, Dooley Agreement; Pl. Ex. 51, Liberti Prof. Cond. Agreement; Pl. Ex. 52, Dooley Prof. Cond. Agreement.  Importantly, those written, signed agreements do ***not*** contain or even make reference to any type of so-called "disclaimer" language.  As such, Plaintiff disputes the so-called "disclaimer" language in the Code somehow or in any way releases UPS and its management from being bound by and obligated to comply with the non-retaliation agreements, promises, and representations therein.

102.    Disputed in part and as incomplete, and Objected to.  Plaintiff does not dispute the requirement of reporting known violations.  However, the cited to by Defendant also demonstrates other types of conduct are to be reported if one has a good faith belief of that conduct being improper, unethical, or unlawful or in any way in violation of the Code or any UPS policy or rule.  Plaintiff again objects to Defendant improperly setting forth an additional paragraph within a paragraph and which includes additional alleged facts.  Without waiving this

objection, Plaintiff disputes that alleged.  Plaintiff produced the copy of the Code she had and provided to her by Defendant.  Pl. Ex. 1, Daniels Depo., at 557-58

103.    Undisputed.

104.    Disputed in part and as incomplete.  Plaintiff does not dispute that she did not personally draft or prepare the Code or negotiate or bargain as to its contents.  That is irrelevant and immaterial.  However, the record evidence demonstrates Plaintiff was presented by Defendant with an agreement, which Plaintiff signed and returned to Defendant, which UPS and Plaintiff were obligated to comply with and which included the same discrimination, reporting, and anti-retaliation requirements and obligations as set forth in the Code, but, with no disclaimer language.  Pl. Ex. 48, Daniels Agreement.

105.    Disputed in part and as incomplete.  Plaintiff does not dispute that she did not expressly tell someone in UPS management or Human Resources she thought the Code was a contract.  That is irrelevant and immaterial.  However, UPS management has repeatedly told Plaintiff and other employees, as well as testified in this case, that UPS and all employees are required and obligated to comply with the Code, including, in particular, its reporting and non-retaliation provisions.  Pl. Ex. 37, Liberti Depo., at 145; Pl. Ex. 34, Corp. Dep. (Liberti), at 262-63.  Further, Plaintiff has entered into a signed, written agreement with UPS which obligated and required her and UPS to comply with that agreement, including the reporting and non-retaliation provisions therein, and the Code, but, with no disclaimer.  Pl. Ex. 48, Daniels Agreement.

106.    Undisputed.

107.    Undisputed.

**B.   PLAINTIFF'S STATEMENT OF ADDITIONAL
        MATERIAL FACTS ("AMF")**

1.    Plaintiff worked in the UPS Kansas City, Kansas ("James Street") Feeder

Department since 1999 and held the position of cover dispatcher from 2004 through July of

2008.  Pl Ex. 1, Daniels Depo., at 22, 59-60; Pl. Ex. 23, Def. Answer, ¶ 23; Pl. Ex. 21, Def.

Supp. Ans. & Obj. to Pltf. 1st Req. Adm., No. 1.

2.    Plaintiff's former Feeder manager, Mic Haynes, felt Plaintiff should have been

promoted to a supervisor or MIP. Pl. Ex. 14, Haynes Depo., at 93, 98, 136-37.

3.    Although Plaintiff twice properly submitted applications and materials for

promotion to a full-time supervisor position in 2005 and 2006, Defendant did not process

Plaintiff's applications and did not meet or follow-up with her; Defendant never told Plaintiff the

status of her promotion applications.  Pl. Ex. 1, Daniels Depo., at 225-28, 245-46; Pl. Ex. 2,

Daniels Notes (July 31, 2008); Pl. Ex. 37, Liberti Depo., at 209-10.

4.    Plaintiff's former manager, Mr. Haynes, stated he twice submitted Plaintiff's

promotional paperwork to Human Resources, including hand delivering such to former Kansas

District Human Resources Manager Jim Grover.  Pl. Ex. 14, Haynes Depo., at 43-44, 99.

5.    UPS claims it has no record of, did not receive, or lost Plaintiff's promotional

paperwork.  *Id.*, at 43-44, 99.

6.    UPS management utilizes a subjective process – "People's Meetings" – to

endorse and "blackball" employees for consideration for and promotion to supervisory and

managerial positions and training opportunities.  Pl. Ex. 14, Haynes Depo., at 17-23.

7.    There are no full-time female supervisors or managers in the James Street Feeder

Department.  Pl. Ex. 14, Haynes Depo., at 294-96; Pl. Ex. 38, Dooley Depo., at 40-41; Pl. Ex. 22,

Def. Supp. Ans. & Obj. to Pltf. 2nd Req. Adm., No. 1: Pl. Ex. 17, FT Sup. & Spec., James Street.

8.      As of July 1, 2008, there were 51 (fifty-one) full-time supervisors and specialists at the James Street facility and only 13 (seven) of these were female.  Pl. Ex. 16, Def. Supp. Ans. & Obj. to Pltf. 3rd Interrog., No. 1; Pl. Ex. 17, FT Sup. & Spec., James Street.

9.      As of July 1, 2008, out of 40 (forty) supervisors at the James Street facility, only 7 (seven) were female.  Pl. Ex. 16, Def. Supp. Ans. & Obj. to Pltf. 3rd Interrog., No. 1; Pl. Ex. 17, FT Sup. & Spec., James Street.

10.     There have historically been a far greater number of men than women in supervisory and managerial positions at the UPS James Street and Lenexa, Kansas facilities.  Pl. Ex. 15, Carpenter Declar., at ¶ 11; Pl. Ex. 14, Haynes Depo., at 294-96 .

11.     UPS has a practice of discriminating against women in the manner in which it classifies their jobs, shifts, duties, and assignments and, also, impeding or denying promotion and training opportunities. Pl. Ex. 15, Carpenter Declar., ¶¶ 7-11, 13.

12.     UPS has submitted information to the EEOC which does not accurately reflect the managerial status of UPS James Street employees, including designating specialists, the position Plaintiff held, as managerial.  Pl. Ex. 16, Def. Supp. Ans. & Obj. to Pltf. 3rd Interrog., No. 3; Pl. Ex. 19, EEO-1 Rep.: Officials & Mgrs; Pl. Ex. 20, EEO-1 Rep.

13.     UPS does not post or make known to its employees specific full-time supervisory positions which are open and UPS is looking to fill or promote into.  Pl. Ex. 15, Carpenter Declar., at ¶ 9; Pl. Ex. 37, Liberti Depo., at 187.

14.     UPS management, including Gary Liberti, aggressively try and force women over the age of 40 to retire.  Pl. Ex. 15, Carpenter Declar., at ¶¶ 2-4.

15.     In 2009, UPS was trying replace older full time employees with younger part time employees.  *Id.*, at 2-3.

16.     Defendant, through corporate deposition testimony, has openly admitted that, although required to be followed, UPS managers in the Kansas District did not comply with UPS promotion policies and procedures (the Management Assessment and Promotion Process or "MAPP") and promotion applications and materials were not processed properly.  Pl. Ex. 34, Corp. Depo. (Liberti), at 10, 14, 15-17, 287-90, 293, 295.

17.     Although Defendant has submitted lengthy declaration testimony from former Kansas District Human Resources Manager Gary Liberti regarding the MAPP, its application, and UPS promotion practices, Mr. Liberti stated in his deposition in this case he does not know what "MAPP" stands for.  Def. Ex. E, ¶¶ 38-42; Pl. Ex. 37, Liberti Depo., at 35-36, 41-42.

18.     Defendant's MAPP Procedure and Reference Manual states it is to be used to "ensure the accurate, detailed, and timely completion of corresponding documents for the process" and "[a]s an Equal Opportunity Employer, UPS has an ethical and legal obligation to ensure that our people practices are fair, consistent, and appropriate." Pl. Ex. 41, MAPP Proced. & Ref. Man., at 1, 9.

19.     Defendant's MAPP or promotion policies and procedures state and require that, whether or not the applicant moves past the initial stages of that process, the applicant's manager is to meet with the employee or applicant and give the applicant feedback and let them know whether they are qualified or have been selected to proceed with the process. Id., at 3, 4, 5; Pl. Ex. 2, Daniels Notes (July 31, 2008), at PLT 320-22; Pl. Ex. 37, Liberti Depo., at 227-28; Pl. Ex. 42, MAPP Guide, at 2; Pl. Ex. 34, Corp. Dep. (Liberti), at 10, 14, 15-17.

20.     The letters which were sent to Plaintiff from the UPS Kansas District Human Resources Managers in 2005 and 2006, acknowledging and in response to her letters of intent for promotion to a full time MIP supervisor position in the Kansas District, state, "Your written

expression of interest is the first step of the promotion process. The next step will be a series of assessments. Your supervisor or manager will contact you with further details."   Pl. Ex. 9, Daniels Letter (Aug. 9, 2005); Pl. Ex. 10, Grover Letter (Aug. 19, 2005); Pl. Ex. 11, Daniels Letter (March 2, 2006); Pl. Ex. 12, Liberti Letter (March 17, 2006).

21.     The UPS Policy Book states that, "As individuals, we do not have the authority to change or disregard any of our company's policies. We are expected to follow existing policies, even if not always in complete agreement with them.  Our managers and supervisors set the example for carrying out our policies.  They, therefore, are expected to lead the way for other UPS people – by word and action – in living up to our policies."  Pl. Ex. 32, UPS Policy Book, at 9.

22.     Defendant never met or followed-up with Plaintiff to discuss her promotion applications in 2005 and 2006.  Pl. Ex. 1, Daniels Depo., at 225-229; Pl. Ex. 2, Daniels Notes (July 31, 2008), PLT 320-22.

23.     UPS has admitted it promoted employees to full-time supervisor positions in the Kansas District in 2005 and 2006 and there were applicants being interviewed and considered for promotion to full-time supervisory positions in the Kansas District during that period – the same time Plaintiff had submitted her promotion application materials.  Def. ¶ 53; Pl. Ex. 21, Def. 2nd Sup. Ans. & Obj. to Pltf. 1st Req. Adm., No. 32; Pl. Ex. 16, Def. Supp. Ans. & Obj. to Pltf. 3rd Interrog., No. 2; Pl. Ex. 18, Female Employees Interviewed.

24.     After UPS failed or refused to follow-up or meet with her regarding her promotion applications and learning, in 2007, that her promotion packet and assessment that had been sent to Joe Dooley had not been completed, Plaintiff believed it was a futile gesture to

apply for or submit any further materials for promotion.  Pl. Ex. 1, Daniels Depo., at 240, 245-46, 249, 270-71, 329.

25.     Plaintiff 's Career Development Planning Guide materials from 2004 and 2005 do not state she had interpersonal skill problems which disqualified her for consideration for promotion to a supervisory position.  Pl. Ex. 6, Car. Dev. Guide (2004); Pl. Ex. 7, Car. Dev. Guide (2005).

26.     Former Feeder Manager Mic Haynes testified he did not remember Plaintiff indicating that she refused to consider being transferred or move and she had merely indicated her preference at a particular time because of personal reasons.  Pl. Ex. 14, Haynes Depo. , at 36, 254-57.

27.     Plaintiff was not aware that if she indicated a preference not to travel or relocate at a particular time that it could forever affect her chances of promotion or that it made her any less qualified to be considered for the next level of management; in any event, as she was not allowed to go through the promotion process, that was not discussed with her in connection with her applications.  Pl. Ex. 1, Daniels Depo., at 285-87.

28.     The MAPP candidate Scoring Sheet to be completed by management is based on entirely subjective criteria.   Pl. Ex. 43, MAPP Scoring Sheet.

29.     Plaintiff routinely performed and was responsible for supervisory duties.  Pl. Ex. 1, Daniels Depo., at 25, 38, 39, 5 3-55, 111, 171-82, 221-22, 453-54; Daniels Notes (July 31, 2008).

30.     There are other women at UPS, like Plaintiff, who perform supervisory duties and have supervisory responsibilities – yet, whose positions are classified as non-supervisory.  Pl. Ex. 15, Carpenter Declar., ¶¶ 7-11.

31.     UPS has a practice of classifying and compensating female employees who are performing and responsible for supervisory duties as non-supervisory. *Id.*

32.     Plaintiff's former manager, Mic Haynes, stated that Plaintiff performed the duties of and had the responsibilities of a full-time supervisor.  Pl. Ex. 14, Haynes Depo., at 157-58.

33.     Plaintiff was paid less than supervisory employees, and she was not eligible for and did not receive other economic benefits made available to supervisory employees, including UPS stock through the Management Incentive Program ("MIP").  Pl. Ex. 23, Def. Answer, ¶ 39; Pl. Ex. 38, Dooley Depo., at 63-65; Pl. Ex. 27, Intake Quest.

34.     UPS classified Plaintiff's OMS or dispatch specialist job or position, as well as other females' OMS dispatch specialist jobs or positions, in a manner which did not reflect her actual job duties and resulted in Plaintiff performing the same duties as a supervisor, but being paid less than supervisors, as well as being denied other economic benefits, such as UPS stock, supervisors receive.  Pl. Ex. 1, Daniels Depo., at 453-54; Pl. Ex. 15, Carpenter Declar., ¶¶ 7, 8, 10, 11, 13.

35.     The UPS Salary Administration Guidelines are premised on an employee's job or position being accurately classified and not being classified in a discriminatory fashion.  Def. Ex. AA; Def. Ex. BB; Def. Ex. CC.

36.     UPS management, including Gary Liberti, has repeatedly been made aware that OMS or specialist employees are performing supervisory duties and it refuses to address this issue.  Pl. Ex. 15, Carpenter Declar., at ¶¶ 8, 10.

37.     In July of 2008, Gary Liberti, former Kansas Human Resources District manager, asked Plaintiff why, given the duties and responsibilities she had and was performing, she or her

position was not classified as MIP or supervisory.  Pl. Ex. 1, Daniels Depo., at 453-54; Pl. Ex. 2 , Daniels Notes (July 31, 2008), at PLT 324-25; Pl. Ex. 29, EEOC Cg. (April 2009), at PLT 105.

38.     Although it has been proposed that UPS consider making the night dispatch and cover dispatch positions supervisory or MIP, management has chosen not to do so because of cost or economic reasons.  Pl. Ex. 5, Daniels Notes (July 14, 2009); Pl. Ex. 38, Dooley Depo., at 75-76.

39.     Plaintiff held the position of and worked as cover dispatcher for almost five years, from 2004 until July of 2008.  Pl. Ex. 1, Daniels Depo., at 22, 59-60.

40.     In July of 2008, Plaintiff was stripped of, or removed from, the cover dispatch position she held and replaced by a younger, less experienced male.  Pl. Ex. 1, Daniels Depo., at 442-43, 447-48.

41.     Plaintiff, as the cover dispatcher, was covering for the night dispatch window at the time she was removed from the cover position; she was not the full-time night dispatcher at that time.  Pl. Ex. 1, Daniels Depo., at 442-43, 447-48; Pl. Ex. 25, Email (Dec. 29, 2007).

42.     UPS gave Plaintiff no advance notice she was going to be removed from the cover position she held or that it was interviewing for that position; UPS removed her from the cover position and placed Jason Isabell in that position while Plaintiff was on vacation.  Pl. Ex. 1, Daniels Depo., at 442-43; Pl. Ex. 2, Notes (July 31, 2008), at PLT 322-24; Pl. Ex. 27, Intake Quest.

43.     Joe Dooley interviewed one female, as instructed by management, who had no interest at all in the cover position, felt she was being forced to interview so UPS could "cover their butts," and was told by Mr. Dooley he already had someone else in mind for the position. Pl. Ex. 1, Daniels Depo., at 662-63; Pl. Ex. 2, Daniels Notes (July 31, 2008), at PLT 323-24.

44.     Although Defendant claims Plaintiff was removed from and not allowed to remain in the cover position because she lacked twilight window experience, Plaintiff did have twilight window experience; yet, UPS did not allow her to complete her twilight window training.  Pl. Ex. 1, Daniels Depo., at 60-62, 90-92, 111-12.

45.     After UPS started training on the twilight window, UPS put in place a rule or requirement that only supervisory or MIP employees would be allowed to work on or cover the twilight window.  Pl. Ex. 14, Haynes Depo., at 137; Pl. Ex. 1, Daniels Depo., at 61-62.

46.     Although Defendant had a rule that only a full-time supervisor could work on or cover the twilight window, Jason Isabell, who was not a full-time supervisor, was allowed to and did work on and cover the twilight window.  Pl. Ex. 14, Haynes Depo., at 137-141; Def. ¶ 74.

47.     The twilight window experience and qualifications UPS claimed it wanted for the cover position and which it alleges Plaintiff lacked and prevented her from remaining in or being considered for the cover position were only afforded or made available to employees in positions held only by males. *Id*.; Pl. Ex. 14, Haynes Depo., at 137-141; Pl. Ex. 1, Daniels Depo., at 61-62.

48.     Plaintiff was not provided with cover dispatch training that was given to the younger, male that replaced Plaintiff in the cover position.  *Id*. at 61-62, 158-59.

49.     Plaintiff's former manager, Mic Haynes, testified under oath that he believed Plaintiff should have been placed in the cover dispatcher position and she was the individual best qualified to hold the cover position.  Pl. Ex. 14, Haynes Depo., at 136-37.

50.     The day, night, and twilight dispatch positions or windows in the Feeder Department have very different duties and responsibilities and the hours are much different. Pl. Ex. 30, JBAs.

51.     Joe Dooley stated in his deposition that the different feeder dispatch specialist positions have different duties and the duties change.  Pl. Ex. 38, Dooley Depo., at 25, 28.

52.     Plaintiff had experience performing the duties of, and working in, all the different dispatcher positions (windows or shifts) in the feeder department – day, night, twilight, and cover. Pl. Ex. 1, Daniels Depo., at 25, 38, 39, 53-55, 111, 171-82, 221-22, 453-54; Pl. Ex. 14, Haynes Depo., at 61-62.

53.      Plaintiff had repeatedly told Mr. Dooley and other managers she wanted to come off the night dispatch window and that she did not want to regularly cover or work nights, Sunday and holiday nights, in particular.  Pl. Ex. 38, Dooley Depo., at 41-42; Pl. Ex. 37, Liberti Depo., at 181-83; Pl. Ex. 8, Car. Dev. Guide (2007), at PLT 202; Pl. Ex. 27, Intake Question., at 3.

54.     Plaintiff's 2008 time sheets, which were approved by Mr. Dooley, show Plaintiff was covering the night window.  Pl. Ex. 13, PTRS Times Sheets; Pl. Ex. 38, Dooley Depo., at 130-31.

55.     Mr. Dooley, Mr. Liberti, and other managers knew Plaintiff was performing the duties and held the position of cover dispatcher.  Pl. Ex. 38, Dooley Depo., at 32, 35; Pl. Ex. 37, Liberti Depo., at 179-83; Pl. Ex. 24, Email (Aug. 3, 2006).

56.     On January 13, 2009, utilizing UPS email, James Street Feeder Supervisor Scott Wetschensky sent to another other male Feeder Supervisor, Jim Yankovich, and other male employees, including the individual who had replaced Plaintiff in the cover position, Jason Isabell, a four page sexually discriminatory email which was disparaging of and ridiculed women, including stating that women need to keep their problems and concerns to themselves.

This email was entitled: "**THE MAN RULES**" - in bold face, upper case letter on the front page. Pl. Ex., 26, Email (Jan. 13, 2009).

57.     When asked about this email by Plaintiff's counsel during a deposition in this case, Gary Liberti and Joe Dooley claimed not to have been previously aware of its existence. Pl. Ex. 37, Liberti Depo., at 103; Pl. Ex. 38, Dooley Depo., at 114.

58.     When UPS Feeder Manager Joe Dooley was asked if and how this email was responded to after learning of it, Mr. Dooley said the employees who sent this email, who report to him, were told only that this was an improper use of UPS email for personal or non-work-related purposes; no disciplinary action was taken with the employees who sent this email.  Pl. Ex. 38, Dooley Depo., at 115-120.

59.     Although this type of email and conduct is addressed within and prohibited by the UPS Professional Conduct and Anti-Harassment Policy, which Mr. Dooley agreed in writing to comply with, when Mr. Dooley was asked in his deposition if he believed that email was sexually discriminatory, he said he did not know.  *Id*. at 120-122; Pl. Ex. 50.

60.     Gary Liberti, former Kansas District Human Resources Manager, gave corporate deposition testimony stating that, although he was sure it has occurred, he could not recall any situations where UPS had found a violation of the UPS Code of Business Conduct non-retaliation provisions.  Pl. Ex. 37, Liberti Depo., at 262.

61.     On July 31, 2008, Plaintiff met with Gary Liberti and specifically made a complaint of sex and age discrimination and retaliation.  Pl. Ex. 1, Daniels Depo., at 425, 427, 429, 451-52; Pl. Ex. 2, Notes (July 31, 2008); Pl. Ex. 27, Intake Quest.; Pl. Ex. 28, EEOC Cg. (Nov. 2008); Pl. Ex. 29, EEOC Cg. (April 2009).

62.     Plaintiff told Mr. Liberti the basis of her complaint, stating she believed she had been improperly removed from her cover position and replaced by a younger, less qualified male and she had been denied training provided to the individual who replaced her.  She also asked Mr. Liberti to confirm the promotion process and procedures; she then told him she felt her promotion applications had not been processed properly and that no one from management had ever met or followed-up with her.  She told Mr. Liberti she felt that, because of this, she was being discriminated against because of her age and sex and, also, in retaliation for an earlier complaint she had made about Mr. Dooley coming to her home.  Pl. Ex. 1, Daniels Depo., at 446-60; Pl. Ex. 2, Daniels Notes (July 31, 2008).

63.     At that meeting, on July 31, 2008, Plaintiff was told for the first time, by Mr. Liberti, that promotion applications and materials are not always processed properly or timely returned to human resources by managers and, also, an applicant's manager is required to follow-up and meet with the applicant to inform them of the status of their application - regardless of whether or not the applicant is being further considered for promotion.  Pl. Ex. 1, Daniels Depo., at 446-60; Pl. Ex. 2, Daniels Notes (July 31, 2008).

64.     Although Mr. Liberti expressly told Plaintiff he would look into her concerns and he would follow-up with her, neither Mr. Liberti nor anyone from UPS ever got back to Plaintiff regarding her concerns or complaint.  Pl. Ex. 1, Daniels Depo., at 431-32, 467-68, 482-83, 501-02; Pl. Ex. 2, Notes, at PLT 325; Pl. Ex. 27, Intake Quest.; Pl. Ex. 29, EEOC Cg. (April 2009).

65.     Plaintiff then filed an intake questionnaire with the EEOC in August of 2008, followed with a charge of discrimination on November 21, 2008. Pl. Ex. 27, Intake Quest.; Pl. Ex. 28, EEOC Charge (Nov. 2008).

66.     After filing her charge of discrimination with the EEOC in November of 2008, and making her internal complaint of age and sex discrimination and retaliation in July of 2008, Plaintiff was told by her manager, Joe Dooley, on February 18, 2009, that she was being investigated by UPS security for not recording her time properly.  Pl. Ex. 1, Daniels Depo., at 516-19; Pl. Ex. 53, Dooley Notes (Feb. 18, 2009); Pl. Ex. 3, Daniels Notes (Feb. 18, 2009).

67.     Mr. Dooley also told Plaintiff he had heard she filed a charge of discrimination with the EEOC.  *Id*.; Pl. Ex. 53, Dooley Notes (Feb. 18, 2009).

68.     After Plaintiff filed her charge of discrimination with the EEOC in November of 2008, Plaintiff was falsely accused of improper time recordation, including recording times for periods she allegedly had not worked (i.e., falsifying her start and stop times), in a meeting in February of 2009 with UPS Kansas District Human Resources Manager Gary Liberti and UPS Employee Relations Manager Brad Williams.  Pl. Ex. 1, Daniels Depo., at 392-94; Pl. Ex. 3, Daniels Notes (Feb. 18, 2009); Pl. Ex. 29, EEOC Charge (April 2009).

69.     Plaintiff specifically mentioned and complained about the conduct of both Mr. Liberti and Mr. Dooley in the intake questionnaire which Plaintiff submitted to the EEOC in connection with her charge of discrimination filed in November of 2008; both Mr. Liberti and Mr. Dooley saw and reviewed the intake questionnaire.  Pl. Ex. 27, Intake Quest.; Pl. Ex. 1, Daniels Depo., at 498-99; Pl. Ex. 3, Daniels Notes (Feb. 18, 2009).

70.     Mr. Liberti was aware of Plaintiff's EEOC charge prior to meeting with Plaintiff in February of 2009 and accusing her of improperly recording her time. Pl. Ex. 1, Daniels Depo., at 436, 498-99; Pl. Ex. 21, Def. 2nd Supp. Ans. & Obj. to Pltf. First Req. for Adm., No. 29.

71.     Mr. Liberti was slapping Plaintiff's intake questionnaire in his hand during the February 2009 meeting and angrily asked Plaintiff, "Well, do you want me to get the EEOC down here?" Pl. Ex. 1, Daniels Depo., at 500-01.

72.     Prior to Plaintiff's meetings with Joe Dooley and, then, Gary Liberti and Brad Williams, in February of 2009, Plaintiff had never had a formal meeting with UPS management wherein she was told she was not recording her time properly and accused of falsifying her start and stop times.  Pl. Ex. 1, Daniels Depo., at 397-98, 516-19; Pl. Ex. 37, Liberti Depo., at 210-11.

73.     UPS tells its employees using the PTRS or personal time recording system it would be an integrity issue not to record their times correctly.  Pl. Ex. 44, PTRS Memo (PLT 556).

74.     During Plaintiff's meeting with Gary Liberti in July of 2008, Mr. Liberti stated he was going to visit with Joe Dooley regarding Plaintiff's complaint.  Pl. Ex. 1, Daniels Depo., at 431-32; Pl. Ex. 1, Notes (July 31, 2008), at PLT 325; Pl. Ex. 27, Intake Quest.; Pl. Ex. 29, EEOC Cg. (April 2009).

75.     Mr. Liberti told Plaintiff he met with Mr. Dooley regarding the meeting he had with Plaintiff in July of 2008 and that Mr. Dooley was to follow-up with Plaintiff.  Pl. Ex. 1, Daniels Depo., at 478, 501-02.

76.     Mr. Dooley, by contrast, claims he was unaware Plaintiff had met with Gary Liberti in July of 2008. Pl. Ex. 1, Daniels Depo., at 477-78; Pl. Ex. 3, Daniels Notes (Feb. 18, 2009).

77.     Plaintiff received a decrease in calls and emails from Mr. Dooley after making her internal complaint and filing her charge of discrimination.  Pl. Ex. 1, Daniels Depo., at 474, 486-87.

78.     These decreased communications interfered with Plaintiff performing and prevented her from carrying out her job duties in the most effective manner possible.  *Id*.

79.     Plaintiff was forced to work through her lunch and breaks during the time she worked at UPS.  Pl. Ex. 1, Daniels Depo., at 433-34; Pl. Ex. 47, Emails (June 2009) .

80.     UPS has a practice of forcing employees to work through their breaks and not being allowed to take their lunch, but, instructing employees to record their time as if they are taking breaks and lunch.  *Id.*; Pl. Ex. 15, Carpenter Declar., at ¶¶ 5, 6; Pl. Ex. 4, Daniels Notes (June 29, 2009).

81.     Plaintiff received inconsistent instructions from UPS regarding the recording of her time worked; UPS management has stated that, even if break or lunch is not taken, time should be recorded to show a break and lunch were taken.  Pl. Ex. 46, Email (April 1, 2009); Pl. Ex. 47, Emails (June 2009); Pl. Ex. 15, Carpenter Declar., at ¶¶ 5, 6.

82.     Plaintiff was also told by management there should be *very few days* she would not to be able to take her break or meal and, yet, also, she was told she should *always* take and record her break and lunch and there is no reason not to take break or lunch.  Pl. Ex. 46, Email (April 1, 2009); Pl. Ex. 47, Emails (June 2009).

83.     UPS does not provide proper coverage for employees in order to allow them to take their breaks and lunch.  Pl. Ex. 1, Daniels Depo., at 433-34; Pl. Ex. 15, Carpenter Declar., at ¶¶ 5, 6.

84.     UPS has stated in memoranda and corporate deposition testimony that its concern regarding employees recording their breaks and lunches is based on its fear of liability for failing to compensate its employees for the actual time they have worked.   Pl. Ex. 44, PTRS Memo. (PLT 556); Pl. Ex. 36, Corp. Depo. (Rymer), at 20-30.

85.     After being falsely accused of improper time card recordation, experiencing a decrease in business communications from her manager, and, still, never having received any follow-up from Mr. Liberti regarding her complaint in July of 2008 or the status of any investigation, Plaintiff filed another charge of discrimination with the EEOC on April 3, 2009. Pl. Ex. 29, Charge (April, 2009).

86.     UPS has stated that Gary Liberti has been trained by UPS to recognize employee complaints of age and sex discrimination and retaliation; the UPS Guidelines for Investigation of Workplace Issues expressly address the type of discrimination and retaliation complaint made by Plaintiff and recognize it as such.  Pl. Ex. 21, Def. 2nd Supp. Ans. & Obj. to Pltf. First Req. for Adm., No. 11; Pl. Ex. 33, Guide. Invest. Work. Issues, at 3, 10.

87.     Mr. Liberti - a former UPS Kansas District Human Resources Manager - has testified that when Plaintiff met with him on July 31, 2008 she did not make a report or complaint of discrimination.  Pl. Ex. 21, Def. 2nd Supp. Ans. & Obj. to Pltf. First Req. for Adm., No. 12; Pl. Ex. 37, Liberti Depo., at 208, 211-12.

88.     Mr. Liberti told Plaintiff he was involved with the selection of the employees to interview for Plaintiff's cover position.  Pl. Ex. 2, Notes (July 31, 2008), at PLT 323; Pl. Ex. 37, Liberti Depo., at 241-43.

89.     UPS presented Plaintiff with a document, which Plaintiff signed and returned to UPS, entitled Professional Conduct and Anti-Harassment Policy, and which prohibits harassment by UPS and its employees, as set forth therein, and states harassment on the basis of age or sex is a form of unlawful discrimination.  Pl. Ex. 48, Daniels Agreement.

90.     This signed, written document states that an employee who feels they have been subjected to "objectionable conduct" must report it immediately and any employee making any such report will not be adversely affected or retaliated against for any such report.  *Id*.

91.     This signed, document or agreement also states that, "[i]in response to any such reports, UPS will conduct a prompt and through investigation." *Id*.

92.     This agreement has no disclaimer language stating it is not a contract.  *Id*.

93.     Gary Liberti and Joe Dooley have also entered into the same signed, written agreement with UPS.  Pl. Ex. 49, Liberti Agreement; Pl. Ex. 50, Dooley Agreement.

94.     Mr. Liberti and Mr. Dooley have also entered into signed, written agreements with UPS, entitled "Professional Conduct" and which contain language from the UPS Code of Business Conduct and UPS Policy Book, prohibiting discrimination and harassment; these agreements have no disclaimer language stating they are not contracts.  Pl. Ex. 51, Liberti Prof. Cond. Agreement; Pl. Ex. 52, Dooley Prof. Cond. Agreement.

95.     All employees of UPS are required to comply with the UPS Code of Business Conduct (the "Code") reporting and non-retaliation obligations and provide signed acknowledgment that they will comply with the non-retaliation provisions of the Code.  Pl. Ex. 37, Liberti Depo., at 145; Pl. Ex. 34, Corp. Dep. (Liberti), at 262-63.

96.     Plaintiff believed that the Code, including its promises and representations regarding discrimination and retaliation, formed a contract between her and UPS.  Pl. Ex. 1, Daniels Depo., at 536-44, 574-76.

97.     Plaintiff relied on Defendant's representations and promises in the Code, particularly, the reporting and non-retaliation requirements and obligations, in making her

internal report or complaint of discrimination and retaliation to Gary Liberti in July 2008.  *Id*. at 536-44, 574-76.

98.     UPS states and represents in its Policy Book and Investigation Guidelines that: UPS will give each employee complaint prompt, sincere attention; UPS will keep the employee informed about the status of the complaint; UPS takes such situations very seriously, and requires that they be vigorously and thoroughly investigated; and, retaliation, retribution, or harassment against any employee who in good faith asks any question or raises any concern regarding the company's compliance responsibilities is prohibited, and is grounds for discipline, which may include dismissal.  Pl. Ex. 32, Policy Book, at 20; Pl. Ex. 33, Invest. Guidelines, at 1, 21.

99.     Defendant has provided lengthy declarations with its motion from two UPS managers who were deposed in this case, individually and as corporate deponents, and for whom UPS submitted lengthy, substantive errata changes, including changing and adding testimony. Def. Ex. C (Dooley Declar.); Def. Ex. E (Liberti Declar.); Pl. Ex. 34, Corp. Depo., (Liberti), at 1-2, 259-61; Pl. Ex. 35, Corp. Depo. (Dooley), at 1-2; Pl. Ex. 37, Liberti Depo., at 1-2; Pl. Ex. 38, Dooley Depo., at 1-2; Pl. Ex. 39, Liberti Errata; Pl. Ex. 40, Dooley Errata.

100.    UPS Feeder Manager Joe Dooley submitted an errata sheet for his individual deposition in this case which included over 64 changes, at least 56 of which are or appear to be substantive, including changing and adding to his testimony, and during which deposition he was questioned by UPS counsel.  Pl. Ex. 40, Dooley Errata.

101.    Former Kansas District Human Resources Manager Gary Liberti submitted an errata sheet for his individual deposition in this case which included over 78 changes, at least 72

of which are or appear to be substantive, including changing and adding to his testimony, and during which deposition he was questioned by UPS counsel.   Pl. Ex. 39, Liberti Errata.

102.   As a result, in addition to their errata changes, these managers have given three different sets of allegedly sworn testimony or statements in this case regarding the same issues and subject matters and topics.  Def. Ex. C (Dooley Declar.); Def. Ex. E (Liberti Declar.); Pl. Ex. 34, Corp. Depo., (Liberti), at 1-2; Pl. Ex. 35, Corp. Depo. (Dooley), at 1-2; Pl. Ex. 37, Liberti Depo., at 1-2; Pl. Ex. 38, Dooley Depo., at 1-2; Pl. Ex. 39, Liberti Errata; Pl. Ex. 40, Dooley Errata.

103.   While employed by UPS, former Kansas District Human Resources Manager Jim Grover, along with UPS, was found guilty in a case tried before a judge in New York Federal District Court, Northern District, and affirmed by the Second Circuit Court of Appeals, of violating the ADA and New York Human Rights law; yet, Mr. Grover is still employed with UPS and has submitted a declaration in this case trying to justify the conduct of UPS.   *Picinich v. United Parcel Service*, 583 F.Supp.2d 336 (N.D.N.Y. 2008) (*aff'd*, 318 Fed.Appx. 34 (2d Cir. 2009)); *Picinich v. United Parcel Service*, No. 5:01-CV-1868, 2005 WL 3542571 (N.D.N.Y. Dec. 23, 2005) (*aff'd in part, vacated in part*, 236 Fed.Appx. 663 (2d Cir. 2007); *Picinich v. United Parcel Service*, 321 F.Supp.2d 485 (N.D.N.Y. 2004); Pl. Ex. 21, Def. 2nd Supp. Ans. & Obj. to Pltf. First Req. for Adm., No. 26.

104.   The UPS Code of Business Conduct and signed, written agreements which UPS management enters into state the Company will not tolerate discrimination, and that anyone found to have engaged in discriminatory conduct will be disciplined, including dismissal. Pl. Ex. 31, UPS Code of Bus. Conduct, at Stmt. of Policy, ii, 8; Pl. Ex. 49, Liberti Agreement; Pl. Ex.

50, Dooley Agreement; Pl. Ex. 51, Liberti Prof. Cond. Agreement; Pl. Ex. 52, Dooley Prof. Cond. Agreement.

105.     Prior to failing to process Plaintiff's promotion applications and stripping or removing her from her cover position, Plaintiff complained to UPS about an incident where Joe Dooley went to Plaintiff's home and posted a note her door to try and force her to cover for another employee; Mr. Dooley was reprimanded and counseled by UPS for this.  Pl. Ex. 1, Daniels Depo., at 458-463; Pl. Ex. 38, Dooley Depo., at 52-57.

106.     Former UPS James Street Division Manager, Jaime Diaz, has a practice of discriminatory and abusive conduct towards women and retaliation towards employees reporting or complaining of improper conduct and unlawful treatment by UPS and its management.  Pl. Ex. 55, Bleisch Depo., at 35-36, 40-47, 103-06; Pl. Ex. 54, Samborski Depo., at 12-17;  226-232.

107.     Both Gary Liberti and Jaime Diaz took part in removing Plaintiff from the cover position she had held for 5 years and replacing her with a younger, less experienced, male employee, Jason Isabell. Pl. Ex. 1, Daniels Depo., at 657-58, 662-63; Pl. Ex. 1, Daniels Notes (July 31, 2008), at PLT 322-23.

108.     UPS engages in a practice of sex and age discrimination and retaliation, which is carried out at the UPS James Street and Lenexa facilities and within the James Street Feeder Department.  Pl. Ex. 15, Carpenter Declar., ¶¶ 2, 3, 4, 7, 8, 9, 11, 12, 13; Pl. Ex. 53, Sifuentes Depo., at 76-77, 137-39, 286-87; Pl. Ex. 54, Samborski Depo., at 12-17; 226-232; Pl. Ex. 55, Bleisch Depo., at 35-36, 40-47, 103-06.

III.    **ARGUMENT**

A.  **Summary Judgment Standard**

In reviewing Defendant's motion, this Court must view the facts in the light most favorable to the non-movant, draw all reasonable inferences in favor of the non-moving party, make no credibility determinations, and weigh no evidence.  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir.1995) (*quoting Bacchus Industries, Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991)).  The Court "must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Reeves v. Sanderson Plumbing Company*, 120 S.Ct. 2097, 2111 (2000).

Credence may be given to evidence favoring or supporting the movant only to extent it comes from *disinterested* witnesses and is *uncontradicted* and *unimpeached*. *Id.* at 2110 (citations omitted) (emphasis added).  Summary judgment may only be granted where there is no genuine dispute as to ***any*** material fact; the evidence must be such that no reasonable jury could find in favor of the nonmoving party. Fed.R.Civ.Pro. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The nonmovant is to be given "wide berth to prove a factual controversy exists." *Jeffries v. Kansas*, 147 F.3d 1220, 1228 (10th Cir.1998) (*quoting Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir.1995)).

At the summary judgment stage, all doubts concerning pretext must be resolved in the plaintiff's favor.  *Doebele v. Sprint/United Mgm't Co.*, 342 F.3d 1117, 1135-39 (10th Cir. 2003).

> "It is not the purpose of a motion for summary judgment to force the judge to conduct a "mini trial" to determine the defendant's true state of mind. So long as the plaintiff has presented evidence of pretext (by demonstrating that the defendant's proffered non-discriminatory reason is unworthy of belief) upon which a jury could infer discriminatory motive, the case should go to trial.

Judgments about intent are best left for trial and are within the province of the jury."

*Randle v. City of Aurora*, 69 F. 3d 441, 453 (10th Cir. 1995).

Defendant's motion simply cannot meet the rigid standards for granting summary judgment.  Under the above standards, a rational juror could more than reasonably infer that Plaintiff was denied compensation and other benefits, denied promotional and training opportunities, and removed from her position because of her age and/or sex.  The record evidence also shows that after Plaintiff made an internal complaint of discrimination and retaliation and filed a charge of discrimination, she was subjected to a number of unprecedented material adverse actions which would easily dissuade a reasonable person from pursuing a charge.  Further, the record evidence demonstrates Defendant had a contractual and equitable obligation not to retaliate against Plaintiff for her complaint; and, it breached that agreement.  When combined with the abundant pretext evidence in this case, as well as Defendant's open admissions that it failed to comply with its written policies specifically addressing that at issue and which were required to be followed, a rational juror could more than reasonably conclude Defendant's conduct and Plaintiff's treatment were based on discriminatory bias, and retaliatory animus, and that Defendant's asserted reasons are simply unbelievable.[1]  A jury is not required to believe Defendant's biased, contradictory, unsubstantiated, post-hoc explanations for its behavior.  At the very least, evaluated properly and in its totality, the record evidence shows

---

[1] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("at the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial"); *Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1411 (10th Cir.1984) ("where different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment.") (*citing United States v. Diebold*, 369 U.S. 654, 655 (1962); *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1309 (10th Cir.1980) (questions of motive and intent are "particularly inappropriate for summary judgment disposition"); *see also Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir.1993) ("If the plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive, summary judgment is inappropriate, because it is for the trier of fact to decide which story is to be believed.").

there to be numerous disputed issues of material fact.  In short, Defendant has failed to show the absence of a genuine issue as to any material fact and that it is entitled to judgment as a matter of law; thus, its motion must be denied.

      **B.**  **The Abundant Pretext Evidence, Including Defendant's Brazen Admissions and Subjective, Contradictory, Undocumented, and Post-Hoc Assertions, Requires That Defendant's Motion Be Denied.**

The overwhelming pretext evidence in this case has great relevance as to <u>all</u> of Defendant's arguments, including its initial challenge as to the timeliness of certain of Plaintiff's claims.  Thus, it is critical that this evidence be considered here, foremost.  As will be clear, this evidence requires that Defendant's motion be denied.[2]

Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." *Plotke v. White*, 405 F. 3d 1092, 1102-03 (10th Cir. 2005) (quotations omitted).  "A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendant's stated reason for the adverse employment action was false, i.e. unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff."  *Id.* (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir.2000)).

---

[2] "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Plotke v. White*, 405 F. 3d 1092, 1102 (10th Cir. 2005) (*quoting Reeves, supra*, 530 U.S. at 148). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination."  *Id.* (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

More specifically, evidence of pretext may include "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir.1999), *cert. denied*, 528 U.S. 815, 120 S.Ct. 53, 145 L.Ed.2d 46 (1999). "The plaintiff's evidence can also allow for an inference that the "employer's proffered non-discriminatory reasons [were] either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Plotke*, *supra*, at 1102-03 (holding that post-hoc reasons for an adverse employment decision constitute evidence of pretext). *See also Tyler v. Re/Max Mountain States, Inc.*, 232 F.3d 808, 813 (10th Cir. 2000) ("We are disquieted … by an employer who "fully" articulates its reasons for the first time months after the decision was made."). Plaintiff is not required to offer any evidence of actual discrimination when attempting show pretext. *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1124 (10th Cir. 2005)(reversing summary judgment for employer, finding sufficient evidence of pretext calling into question veracity of employer's stated reasons for firing plaintiff). "In short, at the summary judgment stage, the inference of discrimination permitted by evidence of pretext must be resolved in favor of the plaintiff." *Id*.

The pretext evidence in this case is overwhelming - and quite stunning. As noted, it is properly considered at multiple stages of Plaintiff's claims. *Mickelson v. New York Life Ins. Co.*, 460 F. 3d 1304, 1316-17 (10th Cir. 2006) (*quoting Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2006). This evidence would easily allow a reasonable jury to rationally conclude that Defendant's proffered reasons for its conduct are unworthy of belief and, thus,

infer its treatment of Plaintiff was due to improper discriminatory and retaliatory bias and motive.  Just some of this evidence includes the following:

1.   Defendant has openly admitted it did not comply with or apply its written promotion policies and procedures and it did not process or review Plaintiff's promotion application and materials.  AMF 3-5, 16-20, 22, 27, 43, 63.

2.   UPS – the world's largest package delivery company, which claims it can track a package anywhere – says it lost Plaintiff's promotion application materials.  AMF 3-5, 22, 24.

3.   UPS does not post or make known to its employees supervisory positions which are open and that the Company is looking to fill.  AMF 13.

4.   In addition to the subjective interpersonal skill criteria Defendant relies on and set forth in its promotion policies and procedures, which are inconsistently followed, UPS utilizes an unwritten subjective procedure – "People's Meetings" – to approve and "blackball" employees for and from promotional consideration and other employment opportunities, such as training.  AMF 2, 6, 18, 19, 25, 28, 49.

5.   Plaintiff's former manager, Mic Haynes, testified under oath that he believed Plaintiff should have been promoted to a supervisor position, she was already performing supervisory duties, and he recommended her for a promotion; yet, UPS claims it never received the materials and assessment Mr. Haynes *twice* sent to HR – once by hand delivery.  AMF 2-5, 29, 32, 49.

6.   Although Plaintiff was employed by Defendant for over two (2) decades, effectively performed her job, and received consistently positive reviews and evaluations, Defendant is now claiming she had problems getting along with co-workers and this disqualified her for promotion to a supervisory position.  AMF 1, 25, 28, 49.

7.   Using UPS email, supervisors in Plaintiff's department exchanged a four-page sexually discriminatory email – entitled "THE MAN RULES" in bold, upper case letters – that is overtly disparaging to and ridicules women and states women need to keep their problems and concerns to themselves; management claimed not to know of this until this case and, then, its only concern was this was personal use of UPS email. AMF 56-58.

8.   Defendant stripped Plaintiff from a position she had successfully held for five years and replaced her with a younger, less qualified male; the only individuals Defendant says are qualified for that position have been male.   AMF 39-47, 107.

9.  Defendant refused to provide Plaintiff with training which was afforded the younger, male who replaced Plaintiff and which training would have given Plaintiff experience UPS says she was lacking.   AMF 48.

10. Plaintiff's former manager, Mic Haynes, stated under oath that he believed Plaintiff was the individual best qualified to hold the position she was removed from and replaced by with a younger, male employee.  AMF 49.

11. Although Plaintiff performed and was responsible for supervisory duties and UPS says her position is managerial, UPS classifies her position and compensates her as a non-supervisory employee.  AMF 11, 12, 29-34, 36-38, 52, 108.

12. Gary Liberti, former Kansas Human Resources District manager, asked Plaintiff why, given her duties and responsibilities, her former position was not classified as supervisory or MIP.   AMF 37.

13. Defendant has given contradictory and inconsistent testimony regarding its knowledge of Plaintiff's EEOC charge and her internal discrimination complaint.  AMF 61, 62, 64, 67, 69, 70, 71, 74-76, 86, 87, 95, 98-102.

14. Contrary to its written policies, Defendant failed to investigate Plaintiff's internal discrimination complaint or even recognize it as such.  AMF 61, 62, 64, 74-76, 87, 89, 94, 95, 98.

15. There are an overwhelmingly greater number of men than women in supervisory and managerial positions at UPS; there are no female supervisors or managers in the department Plaintiff worked in.  AMF 7-11.

16. UPS aggressively tries to force women and men over the age of 40 out of the workplace.  AMF 14, 15.

17. Defendant's motion relies heavily on declarations from two of its managers who had previously given individual and corporate depositions in this case, with each of them submitting over 50 substantive errata changes; in so doing, these managers have provided <u>four</u> (4) different versions of sworn testimony addressing the same substantive issues.[3]  AMF 99-102.

---

[3] In *Burns v. Board of County Commissioners of Jackson County*, 330 F.3d 1275 (10th Cir.2003), the Tenth Circuit Court of Appeals noted the Tenth Circuit's conservative approach to deposition changes. "In the recent case of *Garcia v. Pueblo Country Club*, 299 F.3d 1233 (10th Cir. 2002), this court discussed the purpose of Rule 30(e). Quoting *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D.La.1992), we noted that "[t]he Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." *Garcia*, 299 F.3d at 1242 n. 5 (quotation omitted). We stated that "[w]e do not condone counsel's allowing for material changes to deposition testimony and certainly do not approve of

18. Jim Grover, a former UPS Kansas District Human Resources Manager, who has provided a declaration in this case, has been found guilty of violating the ADA and New York Human Rights law; yet, he still remains employed with the Company, even though UPS policy states it prohibits and will not tolerate discrimination.  AMF 60, 89-95, 98, 103, 104.

While some of these alone, particularly the brazen admissions, warrant denial of Defendant's motion, the combination render Defendant's posture so unbelievable a rational juror could reasonably find in Plaintiff's favor on <u>all</u> her claims.  This totality of evidence would easily allow a rational jury to infer Defendant's treatment of Plaintiff was because of her sex and/or age and reports and Defendant's asserted reasons for its conduct are unworthy of belief. Plaintiff particularly challenges Defendant's post-hoc, unsubstantiated articulation of its motive and intent; consequently, the issue of pretext turns on Defendant's credibility and is not appropriate for resolution of a summary judgment motion.  In short, based on this and the other record evidence of pretext herein, Plaintiff more than satisfies the respective burdens for her discrimination and retaliation claims; accordingly, Defendant's motion must be denied.

## C.  <u>Plaintiff's Claims, Which Defendant Inaccurately Characterizes, Are Timely</u>

Defendant's assertion that certain of Plaintiff's claims, which Defendant refers to as failure to promote and denial of training claims, are time barred is without merit.  Further, Defendant misrepresents the true nature of these, as well as other of, Plaintiff's claims.[4]  As discussed below, all of Plaintiff's claims are timely.

---

the use of such altered testimony that is controverted by the original testimony." *Id*. In *Whitaker v. Trans Union Corp.*, 2004 WL 1982527 *1,2  (D.Kan. 2004), Judge VanBebber followed the approach of Judge Crow, approved by the Tenth Circuit in *Burns*, and decided that, in resolving the summary judgment motions therein, any substantive changes in the deposition testimony through errata would be disregarded. Accordingly, Plaintiff submits Mr. Liberti's and Mr. Dooley's declarations should be ignored, as they are effectively a second set of errata changes, if not "sham affidavits."

[4] Defendant's argument that Plaintiff has not alleged discriminatory pay in violation of Title VII and the KAAD in her Complaint is not true.  Plaintiff repeatedly states and alleges she was discriminated against

In *Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1009-1010 (10th Cir. 2002), it was held that discriminatory salary payments constituted fresh violations of Title VII, and each action of pay-based discrimination was independent for purposes of statutory time limitations.  *See also Tomita v. University of Kansas Medical Center*, 227 F. Supp. 2d 1171, 1179-80 (D.Kan. 2002) ("to the extent that plaintiff claims lingering effects of discriminatory pay, his claim constitutes "a continually recurring series of violations, each of which is separately actionable under Title VII."") (*citing Goodwin*).   Further, relying on *Goodwin*, in *Plotke v. White*, 405 F. 3d 1092, 1106-07 (10th Cir. 2005), the Tenth Circuit found that, "[p]laintiffs are not precluded from introducing "quite probative evidence of earlier acts of discrimination to support a claim of current discriminatory intent," even if prior events are beyond the limitations period."  *Id.* at 1106-07 (*citing Goodwin, supra*, at 1012-13; *Bazemore v. Friday*, 478 U.S. 385, 402 n. 13, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) ("evidence of pre-act discrimination is quite probative"); *Noland v. McAdoo*, 39 F.3d 269, 271-72 (10th Cir.1994) (prior events not actionable may provide relevant circumstantial evidence to explain later, actionable events)).

As Plaintiff earlier brought to the Court's attention in this case, the combination of the *Goodwin* decision, the Lilly Ledbetter Fair Pay Act of 2009 (the "Act")[5], and related case law[6]

---

based on the manner in which her job or position was classified, this resulted in her being unlawfully denied greater pay and benefits, the negative effects of this are continuous and ongoing and realized each time she received a discriminatory paycheck and was denied related benefits, and this is a violation of Title VII and the KAAD.  *See* Complaint, ¶¶ 2, 35, 51, 66, 67, 68, 80, 81.  *Compare* ¶¶ 3, 92 EPA claim language.  Plaintiff also specifically included language in the Pretrial Order which expressly states her job or position was classified in a discriminatory fashion in violation of Title VII and the KAAD.  Pretr. Ord., Pltf. Fact. Alleg.  This is also demonstrated by Plaintiff separately alleging and distinguishing between her allegation and claim of discriminatory compensation or pay in violation of Title VII and the KAAD and that in violation of the EPA in both her Complaint and the Pretrial Order language.  Interestingly, Defendant acknowledges this claim in the Pretrial Order in its response to Plaintiff's claim elements.

[5] The Act, codified at 42 U.S.C. § 2000e-5(e)(3)(A), was signed into law on January 29, 2009 and made retroactive to May 28, 2007.

[6] *See, e.g., Bush v. Orange County Corrections Department*, 597 F. Supp. 2d 1293, 1296 (MD Fla., Orlando Div. 2009) (held that plaintiffs could timely challenge demotions, which resulted in reductions in pay, that occurred 16 years before earlier than their EEOC charges); *Gilmore v. Macy's Retail Holdings*,

all undercut Defendant's posture on this and related issues.  Further support comes from a recent decision by this Court finding that the Act is "predominantly concerned with protecting the rights of employees to challenge compensation discrimination that is difficult to detect or concealed by the employer."  *Almond v. Unified School Dist. No. 501*, No. 07-4064-JAR, 2010 WL 4384206 * 11 (D.Kan. Oct. 28, 2010).   Unlike *Almond*, circumstances surrounding the discrimination Plaintiff has suffered herein were previously concealed from or unknown to her.  *Id.* at *14.  This Court in *Almond* also spoke of adverse actions that were "explained," of which the plaintiffs "were fully aware of the consequences," "fully communicated discreet acts," and, the plaintiffs "choosing" to accept "offers" or transfers to lower paying positions.  <u>None of that is present in this case</u>.  *Id.* at *13, 14.  Likewise, the recent Third Circuit decision of *Mikula v. Allegheny County of Pa.*, 583 F. 3d 181, 186 (3rd Cir. 2009), held that, under the Act, a failure to answer a request for a raise qualifies as a compensation decision because the result is the same as if the request had been explicitly denied.

Among other things, the Act restores the commonly used "paycheck accrual rule."[7]   As Congress explained in the Act, the "Ledbetter decision undermines . . . [statutory protections against discrimination] by unduly restricting the time period in which victims of discrimination can challenge and recover for discriminatory compensation decisions *or other practices*, contrary to the intent of Congress." 123 Stat 5 (emphasis added).  The Act amends Title VII's provisions

---

2009 WL 305045 (D.N.J. 2009) (held that the Ledbetter Act applies to a discriminatory promotion that would have been to a higher paying job).

[7] Before the Ledbetter Supreme Court decision, if an employee brought a claim for disparate pay on the basis of race, color, religion, sex, national origin, age, or disability, both the EEOC and nine of the ten federal courts of appeal (Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth and DC Circuits) that had considered the issue held that each new discriminatory paycheck was considered a separate act of discrimination, triggering a new 180/300-day charge filing period with the EEOC.  In fact, the EEOC's view is memorialized in its Compliance Manual (§2-IVC(1)(a)), where the agency states that "[r]epeated occurrences of the same discriminatory employment action, such as discriminatory paychecks, can be challenged as long as one discriminatory act occurred within the charge filing period."

in Section 706(e) (42 U.S.C. § 2000e-5(e)) regarding the statutory charging period.  The key

section of the Act provides as follows:

> For purposes of this section, an unlawful employment practice occurs, with
> respect to discrimination in compensation in violation of this title, when a
> discriminatory compensation decision *or other practice* is adopted, when an
> individual becomes subject to a discriminatory compensation decision *or other
> practice*, or when an individual is affected by application of a discriminatory
> compensation decision or *other practice*, including each time wages, benefits, or
> other compensation is paid, resulting in whole *or in part* from such a decision or
> other practice.

(emphasis added).

The record evidence in this case amply demonstrates deliberate concealment by

Defendant of compensation, classification, promotion, training, transfer and other decisions – all

of which unquestionably have an impact on compensation and other economic benefits.

Defendant cannot seek refuge behind its surreptitious and covert practices and then argue one

challenging its acts and practices resulting in discriminatory compensation have failed to assert a

timely claim.  This is precisely one of the things the Act was intended to address.

### Plaintiff's Promotion and Classification Claims Are Timely.

The record evidence makes it clear that, contrary to written UPS policy, no one from UPS

ever followed up with Plaintiff regarding the status of her 2005 and 2006 promotion applications;

and, in fact, as UPS openly admits, Defendant failed altogether to process or even consider her

applications.[8]   AMF 3-5.   However, on July 31, 2008, Plaintiff was told by Kansas District

Human Resources Manager Gary Liberti that promotion applications had not been processed

properly and there were managers who had not returned the required paperwork to Human

---

[8] Plaintiff's claim of discrimination in connection with promotion is not limited to discriminatory denial
of promotion, but, also, the failure or refusal of UPS to process or even consider her promotion
application.  The latter is a separate and distinct form of discrimination; as with other adverse actions
Plaintiff was subjected to, that is a quintessential term, condition, or privilege of employment.   An
employer cannot trump or defeat such a claim by asserting as a defense the very conduct which is alleged
as discriminatory.

Resources. AMF 63.  Further, at that same time, Plaintiff was asked by Mr. Liberti why, given her job duties, her position was not classified as supervisory.  AMF 37.  That triggered Plaintiff's classification and promotion claims herein.  Indeed, the very next month, after not hearing anything back from Mr. Liberti regarding these promotion and classification issues discussed at that time, as well as other issues, Plaintiff filed an intake questionnaire with the EEOC.  AMF 65.  Then, based on and consistent with her questionnaire, she filed a charge of discrimination on November 21, 2009, drafted by the EEOC, - which expressly stated she had been denied promotion opportunities based on her age and sex, in violation of Title VII and the ADEA.  AMF 65, 68, 69. Given such, Plaintiff's promotion claims are timely.  Further, given Mr. Liberti's denial that he ever discussed the promotion process or the classification of Plaintiff's job with Plaintiff during the July 2008 meeting, there is clearly a disputed issue of material fact about when Plaintiff was first informed by UPS about the status of her promotion applications or her classification.

### Plaintiff's Denial of Training Claim is Timely.

After placing Plaintiff in the cover dispatch position, UPS started to provide her training for the twilight window.  AMF 44, 48.  However, Plaintiff was not allowed to complete that training, after management decided that only full-time or MIP feeder supervisors (who are all male) could perform the twilight window work she started training on.  AMF 45.  Then, in July of 2008, Plaintiff was removed from her cover position and replaced by a younger male, who, although not a full-time supervisor, had been provided with twilight window training and experience Plaintiff was denied.   AMF 39-47. Obviously, if UPS is saying Plaintiff lacked experience because of training she was denied, and she is removed from her cover position because of this in July of 2008, that certainly constitutes an adverse action *at that time* (i.e., July,

2008) with respect to the training. That is, Plaintiff did not feel or realize that particular discriminatory impact of her earlier denial of training until she was removed from her position and replaced by a younger, male who had been provided training and experience she was denied. Thus, she did not feel or realize the particular effects of the denial of training until she was actually stripped from her position in July of 2008, prior to which, she had never been made aware that she would be removed from her cover position based on the training she was denied (or otherwise). Plaintiff's intake questionnaire she submitted in August of 2008 specifically addresses this; likewise, her November 21, 2009 charge expressly identifies her being removed from her cover position. AMF 61, 62, 65, 69. Accordingly, again, Plaintiff's charge is timely. It was clearly filed within 300 days of the event in which she first felt the impact of this discrimination – when she was removed from her cover position in July of 2008, something which Plaintiff had no advance notice of and did not learn of until that time.

Additional support as to the timeliness of Plaintiff's claims comes from another recent decision by the Third Circuit Court of Appeals, *Noel v. The Boeing Co.*, 622 F.3d 266 (3rd Cir. 2010), discussed by this Court in *Almond*, *supra*, affirming the dismissal of an untimely promotion claim, but, distinguishing the plaintiff's claim therein from a promotion claim alleging unequal pay, which had not been alleged. In this case, Plaintiff has clearly alleged unequal pay. *Noel*, like *Almond*, is also distinguishable from this case, in that the plaintiff therein was fully aware of the adverse action and why it occurred at the time it occurred.

Again, it is important to realize that Plaintiff is also alleging discriminatory classification which has resulted in <u>continuous</u> discriminatory compensation; altogether different from a failure to promote claim. Further, as discussed *infra*, Plaintiff has expressly and properly asserted from the beginning of this litigation that the futile gesture doctrine is applicable to her promotion

claims; a more than reasonable posture fully supported by Defendant's express and open admissions that it did not process or consider her promotion applications.  Finally, Plaintiff has also maintained since the start of this case that the discriminatory conduct which her pay, classification, and training claims are based on is continuous and ongoing.

Thus, - unquestionably - Plaintiff's claims are timely.  The events upon which her promotion, classification, and training claims are based took place in July of 2008, when Plaintiff was removed from her cover position and during her meeting with Gary Liberti when she was told of the improper processing of promotion applications and asked why her position was not classified as supervisory.  Simply because there may have been past acts of discrimination for which Plaintiff may have filed a charge of discrimination and brought like or similar claims, that does not forever foreclose her ability to bring other claims, as in this lawsuit, based upon later acts of discrimination.  At the very least, Defendant has failed to show that there are no disputed issues of material fact regarding the timeliness of Plaintiff's claims considering the totality of the circumstances.  Accordingly, Defendant's motion regarding the timeliness of Plaintiff's claims must be denied.

D. **Plaintiff Has Been Subjected to a Number of Adverse Employment Actions Based on Her Age and/or Sex.**

The record evidence in this case allows a rational juror to draw the more than reasonable inference that Plaintiff's job classification, removal and transfer, and denial of promotional and training opportunities were based on or motivated by her sex and/or age.  This Court, applying the proper summary judgment standards, cannot conclude as a matter of law that these are not "adverse employment actions."  There are numerous disputed issues of material fact surrounding such a determination which must be evaluated and decided by a jury.  This is particularly so, given the substantial pretext evidence which allows one to rationally infer Defendant's did not

act for the asserted reasons, but, rather, because of Plaintiff's age and/or sex. Accordingly, Defendant's motion as to Plaintiff's claims of age and sex discrimination in violation of the Title VII, the KAAD, the ADEA, and the KADEA must be denied.

To prove a prima facie case of age or sex discrimination, Plaintiff must show: 1) she is a member of the protected class; 2) she suffered an adverse employment action; and, 3) such occurred under circumstances giving rise to an inference of discrimination. *Ammon v. Baron Auto. Group*, 270 F. Supp.2d 1293, 1310 (D. Kan. 2003) (*citing Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002)). Plaintiff is **not** required to show that age was the sole motivating factor in the employment decision. *Jones v. Oklahoma City Public Schools*, 617 F. 3d 1273, 1277-78 (10th Cir. 2010). "Adverse employment action" is liberally defined and must be examined looking at "the unique factors relevant to the situation at hand." *Id*. at 1279. Although "mere inconvenience or an alteration of job responsibilities" do not amount to amount to actionable conduct, failing to promote and reassignment with significantly different responsibilities will satisfy this prong. *Id*. A plaintiff has no obligation to provide additional evidence of discrimination beyond showing the reasons for her treatment to be pretextual. *Id*. at 1281. As made clear in *Jones*:

> Consistent with *Reeves*, the Tenth Circuit has "definitively rejected a `pretext plus' standard." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir.2007). Consequently, "once a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for a discriminatory reason and **must deny summary judgment**." *Bryant*, 432 F.3d at 1125. A plaintiff produces sufficient evidence of pretext when she shows "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005).

> *Id*. at 1280. (emphasis added).

Finding the district court in *Jones* had improperly failed to view the facts in the light most favorable to the plaintiff, including discrediting evidence from the plaintiff, the Tenth Circuit reversed a grant of summary judgment to the employer therein, determining that the plaintiff had satisfied her burden with evidence that the reasons asserted by the employer for her reassignment were pretextual.  *Id*. at 1281.

Defendant misstates what Plaintiff must establish for a prima facie case of sex or age discrimination.  Contrary to Defendant's assertions, Plaintiff is not required to show that she was treated differently from other similarly situated employees to survive summary judgment. *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1137 (10th Cir. 2003) (finding district court so ruling erroneous).  Likewise, a plaintiff may not be forced to pursue any particular means of demonstrating that a defendant's stated reasons are pretextual.  *Id*. Defendant also misrepresents the law regarding an adverse employment action which may give rise to an inference of discrimination.  In so doing, Defendant also insultingly minimizes the significance of the various ways in which it has discriminated against Plaintiff and other females at UPS.

Plaintiff's prima facie burden is not great; it is easily met in this case.  *See Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005).  There is simply no question that, evaluated under the proper standards, the record evidence would allow a reasonable jury to find that Defendant's admitted refusal to consider Plaintiff for promotion, improper classification, refusal to train, and transferring Plaintiff to a much less favorable position - all amount to significant adverse employment actions.  These adverse actions go to the essence of the terms, conditions, and privileges of employment.  This Court has found that adverse actions far less severe than those Plaintiff has experienced do constitute an adverse employment action.  *See, e.g., Ammon v.*

*Baron Automotive Group*, 270 F. Supp. 2d 1293, 1310-11 (D.Kan. 2003) ("a reasonable jury could find that defendant's failure to correct plaintiff's telephone problems constituted adverse employment action.").

**Defendant Removing Plaintiff From Her Cover Position is An Adverse Employment Action Which Occurred Under Circumstances That Give Rise to An Inference of Discrimination.**

This Court cannot conclude, as a matter of law, that there were no serious or legitimate negative or adverse effects associated with Plaintiff's removal from the cover position she held. Plaintiff has provided ample evidence demonstrating why – from the perspective of one in her place – her being transferred from the cover dispatch position to the full-time night window was particularly detrimental and adverse.  AMF 11, 39, 40, 42, 50, 53.  Yet, Defendant's analysis discounts Plaintiff's perspective in its entirety, and provides an inaccurate and defendant-favorable version of events.

Regardless of how this employment action is characterized -- as a transfer, job reassignment, shift change, or whatever -- removing Plaintiff from the position she held and placing her in another role with different duties and a number of detrimental attributes and features -- from both a business and personal standpoint -- made it much less favorable to her and is more than adequate to present a triable question of whether an adverse employment action occurred.  Plaintiff has clearly raised a genuine issue as to whether the "reassignment" left her with "significantly different" – and diminished – responsibilities.  That is a disputed factual and credibility laden determination that must be made by a jury.  Whether a particular reassignment of duties constitutes an adverse action for purposes of Title VII is generally a jury question. *See Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2417 (2006). The Court may not take that question away from the jury if a reasonable juror could find that the removal or

reassignment left Plaintiff with significantly diminished responsibilities.  Viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could find that Plaintiff suffered an adverse action.  Accordingly, summary judgment must be denied as to that claim.

The record evidence surrounding these events – evaluated in its totality and in the light most favorable to the Plaintiff – easily shows Plaintiff's treatment occurred under circumstances which give rise to an inference of discrimination.  Replaced by a younger, less experienced male, Plaintiff was stripped or removed – while she was on vacation and with no announcement or explanation given to her – from a position she had more than satisfactorily performed for roughly five years, which she had repeatedly and clearly expressed a preference for, and which was much more advantageous and favorable to her than that to which she was transferred.  AMF 1, 25, 28, 39-47, 49, 107.  Tellingly, Plaintiff was denied training afforded to the individual who replaced her and which very training UPS claims made her younger, male replacement better qualified for the respective position.  Further, the record evidence shows this involved removing Plaintiff from a position which her former manager, Mic Haynes, stated under oath she was best qualified to perform.  AMF 49.

Plaintiff was also asked – uninvited – by her manager, Joe Dooley, just prior to his deceptively removing and transferring her, what her plans were for retirement.  Pl. Ex. 27, Intake Quest., at PLT 113.  This becomes even more damning to UPS when looked at with the other record evidence showing UPS management, Gary Liberti, in particular, aggressively pressures female employees – single ones at that – to retire as soon as possible.  AMF 14, 15.  There are clearly numerous disputed facts surrounding Plaintiff's removal from her cover position; the record evidence, viewed in the light most favorable to Plaintiff, would allow one to find this to

be an adverse action which was based on or motivated by Plaintiff's sex and/or age. Accordingly, Defendant's motion must be denied as to this claim.

### Plaintiff's Job Classification and Compensation Were Discriminatory.

The record evidence makes it abundantly clear Plaintiff was performing and responsible for supervisory duties. AMF 11, 12, 29-34. In fact, Gary Liberti asked Plaintiff why her job was not classified as management or MIP. AMF 37. Likewise, Plaintiff's former manager and others have stated that Plaintiff and other dispatchers were performing supervisory duties and were, effectively, supervisors. AMF 30, 32, 36-38. Yet, the only ones within Plaintiff's department whose positions were classified as supervisory or managerial were all male; consistent with that going on throughout UPS. AMF 7, 12, 34, 47, 108. It is not disputed that full-time supervisors receive greater compensation and other economic benefits than a specialist – the position Plaintiff held. The record evidence also shows there to be a significantly greater number of men than women in supervisory positions and a much greater number of women than men in specialist positions. There is more than sufficient evidence to allow a rational juror to reasonable conclude that the classification of Plaintiff's position was based on her sex. This classification has occurred under circumstances which give rise to an inference of discrimination. Accordingly, Defendant's motion must be denied.

### Plaintiff's Denial of Promotional Opportunities Constitute Adverse Employment Actions Occurring Under Circumstances Which Give Rise to An Inference of Discrimination.

It is simply indisputable Plaintiff was denied promotional opportunities – Defendant admits it did not comply with or apply its written promotional policies and it did not properly process or even consider Plaintiff's applications. AMF 3-5, 16-20, 22, 27, 43, 63. Because of this, obviously, Plaintiff was not promoted. It cannot legitimately be disputed these multiple

adverse actions do not rise to the level of an adverse employment action.  Further, it is not disputed that Defendant has admitted it was accepting and placing applicants for full-time supervisor positions during the relevant is period.  AMF 23.  The record evidence demonstrates Plaintiff was qualified for and, in fact, was performing the duties of a supervisor.[9]  That is all Plaintiff is required to show to establish her prima facie case.  When, combined with the abundant evidence of pretext, particularly given the admittedly surreptitious fashion in which Defendant conducts its affairs, a reasonable jury could find Plaintiff was denied these promotional opportunities based on her age and/or sex.  Accordingly, Defendant's motion must be denied as to Plaintiff's promotion claims.

Defendant's explanations for it treatment of Plaintiff are loaded with pretext evidence, from subjective decision making, failure to in any way follow required promotion policies and procedures, to incredibly belated "explanations."  These and other forms of pretext are precisely what courts have repeatedly viewed with skepticism, recognized as providing a work environment rife with opportunity for discrimination, and found sufficient to raise a genuine doubt about a defendant's motivation, and, thus, requiring denial of summary judgment.  *See, e.g., Plotke*, *supra*, at 1103-05.  Given such, in order to find for Defendant on Plaintiff's sex and age discrimination claims, the Court would have to impermissibly discount Plaintiff's version of events and supporting evidence and give wholesale acceptance to Defendant's biased, contradictory, unsubstantiated, post-hoc explanations for its conduct and treatment of Plaintiff,

---

[9] In *Burrus v. United Tele. Co. of Kan.*, 683 F.2d 339, 341-42 (10th Cir.1982), the Tenth Circuit addressed promotion qualification issues similar to that in this case.  In *Burrus*, the defendant alleged that the plaintiff lacked interpersonal skills and, thus, was not qualified for the position she sought. *Id*. at 342. However, the Court concluded that allowing a defendant to rely on subjective qualifications to defeat a plaintiff's prima facie case would deny the plaintiff the opportunity to demonstrate that those subjective criteria were a means to effect a discriminatory action. *Id*. Accordingly, the Court held that an employer may not defeat a plaintiff's prima facie case by asserting that the plaintiff failed to satisfy subjective qualifications. *Id*.

resolve numerous disputed issues of fact, including, but, not limited to, the actual job duties at issue and the actual impact of Defendant's treatment on Plaintiff, and ignore the pretextual reasons Defendant has put forth for its conduct.   Yet, a jury is not required to believe Defendant's evidence.   Rather, the finder of fact must be allowed to hear all of the relevant evidence in its totality, viewed in context, and judge for itself which version to believe.

In this case, the question left for the jury will not require second guessing of the Defendant's personnel decisions.   Rather, it will require an evaluation of the credibility of the Defendant's testimony about the reasons for the respective decisions – not weighing and evaluating unsubstantiated, contradictory, post-hoc declarations from the very managers and employees accused of discrimination and submitted in support of a motion for summary.   Thus, the trier of fact will evaluate truthfulness, not Plaintiff's interpersonal skills.   *See, e.g., Lindsey v. Privey Corp.*, 987 F.2d 324 (5th Cir. 1993).   Further, while establishing qualifications is an employer's prerogative, an employer may not utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its evaluation criteria is challenged as discriminatory.[10]   *Id.*   Particularly so, when, as in this case, the subjective decisionmaking – all carried out by males – is ubiquitous.

In any event, it is rudimentary that subjective assessments of a plaintiff's performance cannot be used to defeat her prima facie case.   *See EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192 (10th Cir.2000) ("[A]n employer may not defeat a plaintiff's *prima facie* case by

---

[10] The mere existence of a non-discriminatory motive that would justify an employee's treatment does not absolve an employer of liability for a discriminatory employment decision; rather, the employer must actually rely on that non-discriminatory reason as the sufficient, motivating reason for the employment decision.   As the Supreme Court has stated, "proving that the same decision would have been justified ... is not the same as proving that the same decision would have been made." *McKennon v. Nashville Banner Pub. Co.*, 115 S.Ct. 879, 885 (1995) (omission in original) (quotation omitted).   In other words, an employer may not prevail "by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision." *Price Waterhouse v. Hopkins*, 109 S.Ct. 1775, 1791 (1989).

asserting that the plaintiff failed to satisfy subjective qualifications.").[11]   Moreover, a plaintiff's burden of showing job qualification is not onerous.  She may satisfy this prong of her *prima facie* case merely "by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time." *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (10th Cir.1992).   In this case, Ms. Daniels worked in the Feeder Department for well over a decade and more than effectively performed the cover dispatch position she was removed from for almost five years (and, during which time, she was performing twilight window duties).  AMF 1, 39, 44, 52.  Further, contrary to Defendant's claims regarding Plaintiff's interpersonal skills, the evidence shows she consistently received very favorable reviews during her employment with UPS.   AMF 25. Likewise, contrary to Defendant's allegations, Plaintiff was very well liked by her colleagues. AMF 25, 49; Pl. Ex. 15, Carpenter Declar., at ¶ 14.  To top it off, her former manager said she demonstrated good interpersonal skills and should have been made a supervisor.[12]   AMF 49. Thus, Plaintiff has more than adequately established her qualifications for the positions she held and desired.

---

[11] Likewise, "[w]hen an employee's failure to meet objective, employer-imposed criteria is one of the legitimate, non-discriminatory reasons advanced by an employer to dispel the inference of discrimination raised by an employee at the prima facie stage, it cannot also be used to defeat the employee's prima facie case. To hold otherwise would be tantamount to collapsing the first and second stages of the McDonnell Douglas analysis and would deny a plaintiff the opportunity to demonstrate that the defendant's explanation for the adverse employment action is pretextual." *Id.* at 1193.

[12] Pretext is readily evident in Defendant's unimaginative, exaggerated, and negative post-hoc "fails to work and play well with others" critique of Plaintiff, put forth by the same individuals who are accused of discriminating against Plaintiff.  These belated criticisms stand in stark contrast to the historically consistent positive reviews Plaintiff received.  Truly, these flimsy, subjective, and undocumented attacks on Plaintiff, regarding an employee who had worked at UPS for a quarter of a century, are highly suspect at best and further evidence of pretext.

Defendant's motion unabashedly seeks to have the Court accept its purely subjective, post-hoc, undocumented version of events and completely disavow the evidence favorable to Plaintiff.  Of course, UPS tries to appeal to this Court not to act as a "super personnel" board and second guess Defendant as to its alleged decisionmaking.   Yet, quite simply, contrary to Defendant's assertions, an employer's decisions regarding and opinions about its employees are not entitled to wholesale, unfettered deference.  *See, e.g., Justice v. Crown Cork and Seal Co., Inc.*, 527 F.3d 1080 (10th Cir. 2008) (rejecting employer's argument that its so-called business decisions based on alleged evidence could not be second-guessed); *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000) ("Congress refuses to afford an employer at any time - economically fortuitous or economically disastrous - the right to discriminate on the basis of sex, which is the question at the heart of this complaint.").   Viewed properly in the light most favorable to the Plaintiff, sufficient evidence has been presented for jury to conclude UPS's proffered reasons for removing Plaintiff from the position she held and UPS's other adverse treatment of Plaintiff are a pretext for sex and/or age discrimination.  Plaintiff has adduced more than sufficient pretext evidence showing numerous inconsistencies, contradictions, and implausibilities to reasonably call into question the legitimacy or truthfulness of Defendant's explanations for its conduct and Plaintiff's treatment.  Where a plaintiff introduces contradictory evidence from which a reasonable jury could conclude an employer's explanations were pretextual, questions as whether an employer's reasons for its conduct are pretext for discrimination are for jury.  See, e.g., *Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498, 1507 (10th Cir. 1996).   Accordingly, Defendant's motion as to Plaintiff's sex and age discrimination claims must be denied.

Defendant's notion that it might have fumbled its promotion practices with unidentified men and those under the age of 40 - with no proof of this other than because UPS says so – and, therefore, is relieved of liability is absurd.  Plaintiff has alleged (and brought forth proof) that she was treated differently because of her status as an older woman, not age or gender acting as independent factors.  A plaintiff's discrimination claims may not be defeated on a motion for summary judgment based merely on the fact that some members of a protected class were not subject to discrimination, while another subset is discriminated against based on a protected characteristic shared by both.[13]  *Gorzynski v. Jetblue Airways Corp.*, 596 F. 3d 93, 109, 110 (2nd Cir. 2010) (*citing Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971)).  *See, e.g., also Amro v. Boeing Co.*, 232 F.3d 790, 796 & n. 2 (10th Cir.2000) (clarifying that the fourth prong of failure to promote claim does not require a showing that the position "was filled by someone outside the plaintiff's protected class.").

Whatever "explanation" UPS has, it can tell that to a jury; such credibility decisions and weighing of evidence cannot be decided at summary judgment.  What UPS can also try and explain is how its story can be reconciled with the gross disparity between men and women in supervisory and management jobs, and the testimony from current and former UPS employees describing the overtly sexist and biased fashion in which women are made to feel as if they are second-hand citizens.  AMF 7-11, 106, 108.  Defendant's unsubstantiated, post-hoc "beliefs" regarding the alleged reasons for Plaintiff's treatment and which contradict sworn corporate and individual deposition testimony must be evaluated by a jury, not by this Court on a motion for summary judgment.

---

[13] As the Supreme Court has explained: "Congress never intended to give an employer license to discriminate against some employees ... merely because he favorably treats other members of the employees' group." *Connecticut v. Teal*, 57 U.S. 440, 455, 102 S.Ct. 2525, 2535 (1982).

Defendant also falsely argues Plaintiff's claims must fail because she did not submit promotional paperwork after 2006. However, Plaintiff is not required to formally apply for a position which UPS is fully aware she is interested in.[14] Further, given Defendant's failure to adhere to its promotional policies or conduct any type of required follow-up with Plaintiff – regardless of whether or not it believed she was a viable candidate – Plaintiff more than reasonably believed any further formal efforts in submitting promotional paperwork would have been a futile gesture. In fact, given Defendant's admissions it refused and failed to comply with its own written promotional procedures, Plaintiff's belief of futility was more than reasonable – she was absolutely right.

Stunningly, UPS actually tries to assert that its written promotional policies and procedures – expressly designed to avoid subjective and discriminatory decisionmaking – not being followed shows it did not discriminate against Plaintiff. That is truly unbelievable. An employer's admitted failure to a follow a written promotional policy is overt evidence of pretext. *See, e.g., Plotke, supra*, at 1102-03. Likewise, an employer claiming it cannot even find promotional paperwork submitted by an employee, as UPS has done in this case, is dubious at best.[15] Further still, UPS then offers up post-hoc affidavits contradicting sworn deposition testimony to the effect that, had it actually considered Plaintiff for a promotion, it would have

---

[14] The "law does not require that a plaintiff formally apply for the job in question;" only that the employer be on specific notice that the plaintiff seeks employment or, where informal hiring procedures are used – which was exactly the case herein, given Defendant was admittedly not following its formal procedures - that the plaintiff be in the group of people who might reasonably be interested in the particular job. *Klindt v. Honeywell Intern. Inc.*, 303 F. Supp. 2d 1206, 1216 (D.Kan. 2004)(*citing Bennett v. Quark, Inc.*, 258 F.3d 1220, 1228 (10th Cir.2001) ("To establish a prima facie case for failure to promote, plaintiff must show, among other things, that she applied for-or at least sought-the position at issue.").

[15] One hopes the ability of UPS to track the packages it delivers is better than its sad performance in this case with regard to its employees' internal promotion application materials. Perhaps Defendant should try the GPS devices used with its delivery operations for paperwork within the human resources department. Then again, maybe it does not want to track or know of all that information. In short, the allegations of UPS in this case are even more fantastical when one considers the business UPS is in and the claims it publicly makes as to its abilities.

rejected her, "primarily" because of her alleged inability to get along with female colleagues. This "the women are always fighting" allegation by Defendant is also telling, as it is an overtly gender based stereotype.  Likewise, Defendant's argument regarding Plaintiff's willingness to travel or transfer is also suspect and contradicted by testimony from Plaintiff and her former manager.  AMF 26, 27.  In any event, UPS failed to comply with its procedures wherein it would have been and was required to address her willingness to travel or relocate – one more procedural requirement Defendant failed to comply with.   In short, by UPS making these arguments, it has delivered front and center classic pretext evidence that would easily allow a rational juror to more than reasonably infer Plaintiff was denied promotional and other opportunities and the terms, conditions, and privileges of her employment were adversely affected due to decisions of UPS based on Plaintiff's sex and/or age.  Defendant's motion must, therefore, be denied as to Plaintiff's age and gender discrimination claims; there is an abundance of pretext evidence and UPS has failed to show there are no disputed issues of material fact and it is entitled to judgment as a matter of law.

**E. Plaintiff Was Retaliated Against Because of Her Complaint and Charge of Discrimination.**

The record evidence leaves no question that Plaintiff engaged in protected conduct by making an internal report or complaint of discrimination and, also, filing an EEOC charge.  AMF 61, 62, 65, 70, 71.  Then, shortly her charge was filed, Plaintiff was falsely accused of improper conduct and experienced a decrease in business communications from her manager.   AMF 68, 77, 78.  Further, the failure to investigate her complaint is not just retaliatory, it is more evidence of pretext.  Plaintiff's treatment is entirely consistent with the record evidence showing UPS has a long standing history of retaliating against employees engaging in any type of protected conduct.

Federal and State law make it unlawful for an employer to retaliate against an employee who complains of or reports age or sex discrimination.  *See, e.g.*, 42 U.S.C. § 2000e-3(a).  A prima facie case of retaliation requires a plaintiff to show (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse - that is, the action might "dissuade a reasonable worker from making or supporting a charge of discrimination," *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414-15 (2006); and (3) that a causal connection exists between the protected activity and the materially adverse action.  *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).  The Tenth Circuit has long recognized and repeatedly emphasized that a "case-by-case" approach must be used to determine whether a given action is "adverse."[16] Further, it is axiomatic that a plaintiff may maintain an action for retaliation based on a complaint or charge of discrimination regardless of whether the conduct forming the basis of her underlying complaint is found to be a violation of Title VII.  *Jeffries v. State of Kan.*, 147 F. 3d 1220, 1231 (10th Cir. 1998).

Defendant's assertion that Plaintiff made no internal report of age and gender discrimination to Gary Liberti in July of 2008 is unquestionably contradicted by the record evidence.  AMF 61, 62.  Plaintiff testifies she did – and her testimony is binding.  Further, Mr. Liberti's highly suspect, biased, and self-serving testimony in this regard raises serious pretext issues for the jury.  That is, Defendant puts forth grandiose proclamations and representations regarding its ability, training, and desire to respond to complaints or reports of discrimination

---

[16] *See, e.g., Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498, 1507 (10th Cir.1996) (showing of adverse employment action where employee required to "go through several hoops" in order to obtain severance benefits); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986-87 (10th Cir.1996) (showing of adverse employment action where employer reported plaintiff of suspected crime thereby creating risk of humiliation and damage to reputation); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993) (showing of adverse employment action where plaintiff was reassigned against her wishes).

and, yet, in this case, it purports not to understand Plaintiff to have made any such complaint.

Likewise, UPS failed to investigate Plaintiff's internal complaint; this in and of itself allows for

an inference of retaliation, as well as the underlying discrimination.   UPS cannot prevail on

Plaintiff's retaliation claim simply by claiming ignorance or unilaterally pronouncing she made

no report or complaint. Further, Defendant offers inconsistent, ever-changing, contradictory, and

implausible assertions regarding its knowledge of Plaintiff's EEOC charge.   AMF 61, 62, 64, 67,

69-71, 74-76, 95, 98-102.   Clearly, there are a number of disputed issues of material fact.

There is simply no question that, within three months after filing her first charge of

discrimination, in entirely unprecedented fashion, Plaintiff's manager told her she was being

monitored by corporate security for falsifying her start and stop times and, then, she was pulled

into a meeting with two senior human resources managers, with the district HR manager

"reminding" her that she needs to record her time, including her lunch and breaks, "properly."

This is particularly outlandish given the unlawful fashion in which Defendant provides no break

and lunch coverage for Plaintiff and other employees, gives them contradictory instructions, tells

them to falsify their time, and, then, fails to compensate them for all time worked.   Contrary to

Defendant's assertion, the manner and fashion in which Defendant confronted Plaintiff with this

accusation was unprecedented and pretextual and more than allows for the inference this was

brought about because of Plaintiff's internal complaint and charge of discrimination; and, it

could well dissuade any reasonable person in Plaintiff's place from pursuing a charge.

A causal connection between protected activity and an adverse employment action is

established where the plaintiff presents "evidence of circumstances that justify an inference of

retaliatory motive."   *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir.1999).

*See also Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498, 1507 (10th Cir. 1996)("A causal

connection is established where the plaintiff presents evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action.").  Further, a plaintiff need only establish a circumstantial case "that justif[ies] an inference of retaliatory motive." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982).

A causal connection based on temporal proximity alone is patently clear in this case.  Ms. Daniels filed her charge with the EEOC on November 21, 2008 and the meetings with UPS management wherein she was accused of improper conduct occurred in February of 2009.  AMF 65-68, 72.  The record evidence demonstrates UPS was fully aware of Plaintiff's charge at the time of these meetings, in that, among other things, Mr. Liberti angrily asked Plaintiff, while slapping her intake questionnaire, "Do you want me to get the EEOC down here?"  AMF 71. Further, the investigation into Plaintiff's time recordation occurred just prior to that, but, after her internal complaint to Mr. Liberti.  The close temporal proximity of these events allows for an inference of causation.  Yet, while the Tenth Circuit has recognized that protected conduct followed by an adverse action may justify an inference of retaliatory motive, it has also pointed out that the phrase "closely followed" must not be read too restrictively where a pattern of retaliatory conduct begins soon after the protected action and only later results in an adverse action.  *Piercy v. Maketa*, 480 F.3d 1192, 1199 (10th Cir. 2007).

> [T]he passage of time does not necessarily bar a plaintiff's retaliation claim if additional evidence establishes the retaliatory motive. Other evidence in the record could establish an adverse employment action taken after a lengthy period of time was still in response to the earlier, protected activity -- temporal remoteness is not necessarily dispositive. *Id.*

Thus, given the combination of close temporal proximity, the nature of the retaliatory conduct, the evidence of a policy of retaliatory animus, and the abundant evidence of pretext, including the failure of UPS to recognize or investigate Ms. Daniels' complaint, a more than

rational inference can reasonably be drawn that there is a causal connection between Plaintiff engaging in protected conduct and her retaliatory treatment.

Plaintiff's diminished business communications from Joe Dooley is also clearly a material adverse action and occurred within close proximity of her complaint and charge. AMF 77, 78. Here too, Defendant incorrectly states the law and offers further pretext evidence. That is, first, the conduct must be viewed from Plaintiff's perspective. Defendant's or Mr. Dooley's contrary view does not count. Also, while Defendant, when convenient, asks that great deference be given to its unsubstantiated requirements and demands of particular jobs, when Plaintiff describes the difficulty of performing her job without proper communication (a common retaliatory tactic the perpetrator knows is difficult to prove), Defendant says that is trivial; and, further, because Plaintiff overcame that, Defendant deems her accusation suspect. Again, a jury must be allowed to evaluate this conflicting evidence in its totality and in context, and determine its significance.

In addition, Defendant's failure to investigate Plaintiff's initial complaint epitomizes retaliation – it was done for the express purpose to dissuade her. It is also overt evidence of discrimination – a rational juror could reasonably conclude one engaging in discriminatory conduct would avoid investigating that complained of. *See, e.g., DeFreitas v. Horizon Management Corp.*, 577 F. 3d 1151 (10th Cir. 2009) (reversing grant of summary judgment on FMLA interference claim). Indeed, the Tenth Circuit Court of Appeals has found that it would be "eminently reasonable" to find that an employer who was or has claimed to be ignorant of their obligations an employee was complaining of would engage in the very practice that the law at issue was enacted to prevent. *Id.. See, e.g., also Sassaman v. Gamache*, 566 F. 3d 307 (2nd Cir. 2009) (employer's lack of efforts to verify accusations made by employee could be

construed as evidence that plaintiff's forced resignation occurred under circumstances giving rise to an inference of discriminatory intent).  Defendants' are required to know the laws they are subject to and comply with such accordingly.

Likewise, one could reasonably find specious Defendant's assertion that, although Plaintiff complained of specific conduct with all the hallmarks of sex and age discrimination, she did not actually call it that and, therefore, Defendant had no idea she was complaining of discrimination.  Similarly, Defendant's argument that, because Plaintiff actually pursued and filed a charge of discrimination, she was not dissuaded and, thus, there was adverse action is ridiculous.  It is also devoid of logic, in that in order to satisfy such an absurd standard one would actually have to fail to file a charge and, in so doing, thereby be precluded from bring a claim of retaliation.  Such a notion has previously been rejected by this Court.  *See Turrentine v. United Parcel Service, Inc.*, 645 F. Supp. 2d 976, 989 (D.Kan. 2009) ("To suggest, then, that a plaintiff's filing of a charge of discrimination precludes a finding that a reasonable person might be dissuaded from filing a charge of discrimination defies logic.").

The professed pursuit of legitimate business concerns does not give license to an employer to retaliate against an employee engaging in protected conduct; Defendant's tactics are transparent.  That is, the record evidence shows Defendant is the party engaging in unlawful conduct with respect to its employees' work records.  UPS forces its employees to work without taking breaks or lunch and then instructs them to falsify their time sheets to avoid having to incur FLSA liability.  AMF 79-84.  As such, Defendant's posture is rife with credibility challenges that scream out "pretext."  Plaintiff has presented more than sufficient evidence to show she engaged in protected conduct, she was subjected to multiple material adverse employment actions that would easily dissuade one from engaging in further protected conduct or pursuing a charge, there

is a causal connection between such and both her internal report and EEOC charge, and Defendant's asserted reasons for its conduct are pretextual.  Given Defendant's unbelievable contradictory allegations, should the Court find the related evidence of UPS competent, there are obviously a number of disputed factual issues surrounding all of this.  Accordingly, Defendant's motion must be denied with regard to Plaintiff's retaliation claim.

### F. Plaintiff Was Performing Supervisory Duties and Paid Less Than a Comparable Male; Defendant Has Not Satisfied Its Burden to Lawfully Justify this Practice.

Defendant has admitted it improperly failed to apply its promotion policies and refused to process Plaintiff's promotion applications.  AMF 3-5, 16-20, 22, 27, 43, 63.  The record evidence also shows Plaintiff should have been promoted and her position should have been classified as supervisory.  AMF 2, 29, 32, 49.  There is no question that full-time feeder supervisors receive greater compensation and other valuable economic benefits (such as UPS stock) as compared to feeder dispatch specialists, such as Plaintiff.  AMF 33.  The record evidence amply demonstrates that Plaintiff, although classified as an OMS dispatch specialist or non-supervisory, was routinely and regularly performing the duties and had the responsibilities of at least one full-time feeder supervisor.  AMF 2, 29, 32.  It also unquestionable that there are significantly more male employees in full-time supervisory and managerial positions than females.  AMF 7-10.  UPS has no legitimate reason for the discriminatory manner in which it classified and compensated Plaintiff and other like employees.  This has resulted in Plaintiff having substantially the same duties and responsibilities as a supervisor and, yet, receiving significantly less pay and being denied other valuable economic benefits provided a comparable male.  This adversely impacted and affected Plaintiff each time she received a discriminatory paycheck, as well as far into the future, with respect to diminished retirement and other benefits.  Defendant has failed to carry its heavy burden to present evidence of sufficient degree which would convince a jury of the

lawfulness of its conduct.  Accordingly, Defendant's motion as to Plaintiff's EPA claim must be denied.

A plaintiff establishes a prima facie case under the EPA by showing that: (1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; and, (3) the male employees were paid more under such circumstances.  *Klindt v. Honeywell Intern. Inc.,* 303 F. Supp. 2d 1206, 1219 (D.Kan. 2004).  If a prima facie case is made, the burden is upon the defendant to prove the pay disparity was based on one of four permissible reasons: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; (4) a disparity based on any factor other than sex.  *Mickelson v. New York Life Ins. Co*., 460 F.3d 1304 (10th Cir. 2006) (citing 29 U.S.C. § 206(d)(1)).  However, "because the employer's burden in an EPA claim is one of ultimate persuasion, in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary."  *Id*. (citing Stanziale v. Jargowsky, 200 F.3d 101, 107 (3rd Cir. 2000)).  The employer's burden for proving that a factor other than sex is the basis for a wage differential is a heavy one.  *See Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir.1998).  "'Under the EPA, a defendant cannot escape liability merely by articulating a legitimate non-discriminatory reason for the employment action. Rather, the defendant must prove that the pay differential was based on a factor other than sex." *Taylor v. White*, 321 F.3d 710, 716 (8th Cir. 2003).  The inquiry of substantial equality "requires the Court to make a practical judgment based on all facts and circumstance of the case.  <u>The inquiry is a factual determination, and summary judgment will therefore often be inappropriate</u>." *Mehus v. Emporia State Univ.*, 222 F.R.D. 455 (D. Kan. 2004)

(emphasis added).  *See, e.g., also Thomas v. Bd. of Educ.*, 1997 WL 723437, at *9 (D. Kan. Oct. 31, 1997) (accord).

Importantly, Plaintiff need only point to one (1) individual as a comparator.  *Id.*  If she sets forth her prima facie case, the burden shifts to Defendant to show one of the four legitimate reasons for the compensation disparity.   Again, Plaintiff has produced persuasive record evidence − from Plaintiff, from current and former employees, and managers − making it clear that Plaintiff and other female UPS employees have been and are performing the same -- *and additional* -- duties of males in positions who are being paid more and receiving other valuable economic benefits. AMF 2, 11, 29-34.  Additionally, the record evidence shows UPS is simply speculating about the actual duties performed by Plaintiff.   AMF 12, 29, 32, 37, 39, 44, 52. Indeed, Defendant readily admits the duties of the positions at issue are constantly changing. AMF 51.   In addition, the record evidence shows Defendant provides contradictory and inconsistent characterizations and explanations for the titles of these positions and what UPS believes their duties and responsibilities actually involve.  AMF 12, 34, 36; Pl. Ex. 15, Carpenter Declar., at ¶ 7, 8, 10, 11.

Defendant claims it compensates its supervisors according to their classification and within the acceptable ranges set forth within the UPS Salary Administration Guidelines and, therefore, it has a legitimate, recognized basis for this compensation practice.  However, that theory is premised on an employee's job not being classified in a discriminatory fashion.  That is, if you take males and females who are performing the same work and classify them so that males are in positions that are being paid more, regardless of how objective and unbiased your salary administration guidelines are, you still have not done away with the underlying discriminatory classification which results in the males being paid more (and, as in this case, receiving

93

additional, valuable economic benefits). Thus, Defendant's asserted defense fails because of its inaccurate and discriminatory premise. *See, e.g., Richards v. Eldorado National Co.*, 2004 U.S. Dist. LEXIS 21205 (D.Kan. 2004) (based on testimony plaintiff's position classified improperly and she was performing managerial duties and evidence showing all supervisors were male, summary judgment denied on EPA claim).

Defendant's conduct is most certainly willful. The record evidence shows that this discriminatory compensation practice has been brought to Defendant's attention and it refuses to provide a legitimate explanation. AMF 36-38. Defendant's bald assertions and vague references to compensation policies that do not reflect the realities of the nature and duties of the jobs at issue and fail to account for the underlying discriminatory job classification do not provide the required level of proof to withstand summary judgment. Defendant's so-called "beliefs" will not allow it to satisfy the burden placed upon it. There are clearly disputed issues of material fact for jury resolution and Defendant has failed to prove with the required certainty that Plaintiff's disparity in compensation for performing supervisory work is based on a lawful reason. Accordingly, Defendant's motion must be denied as to Plaintiff's Equal Pay Act claim.

### G. Plaintiff Has Established the Prima Facie Elements of Her Breach of Contract/Promissory Estoppel Claim.

Plaintiff has established the prima facie elements of her breach of contract/promissory estoppel claim. There are clearly disputed issues of material fact which must be decided by a jury. Defendant's asserted defenses have no merit, it has mischaracterized Plaintiff's claim, and the law it relies on is inapposite. Defendant's motion on this claim must be denied.[17]

---

[17] Recognizing this type of claim may be asserted as that of promissory estoppel, in *Peters v. Gilead Sciences, Inc.*, 533 F.3d 594 (7th Cir. 2008), the Seventh Circuit Court of Appeals held that employers can be equitably bound, and possibly contractually bound, by the representations they make in their employee handbooks. Under Kansas law, a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which

Contrary to Defendant's argument, a disclaimer does not mandate summary judgment. *Wilkinson v. Shoney's, Inc.*, 4 P.3d 1149 (Kan. 2000); *Brown v. United Methodist Homes*, 815 P.2d 72 (Kan. 1991). In determining the intent of the parties, it is proper for a jury to consider all the factors contained in PIK Civil 3d 124.55. *Wilkinson, supra.* Also, applying Kansas law, the Tenth Circuit has stated that evidence to contradict a disclaimer may preclude summary judgment. *Abbott v. BNSF Railway Co.*, 2010 U.S. App. LEXIS 1218 * 27, 28, 383 Fed. Appx. 703 (10th Cir. 2010). Further, other courts have recognized that a claim of breach of contract based on the non-retaliation and related provisions in an employer's code of conduct may be maintained through evidence demonstrating an employer's retaliating against an employee for reports made pursuant to these materials or otherwise failing to honor its representations and obligations therein and which an employee relied on and/or was induced or required to follow.[18]

UPS has admitted that all UPS employees are required to comply with the UPS Code of Business Conduct. AMF 95. The UPS Code of Business Conduct states that its employees are required to report what they believe in good faith amounts to an unlawful, unethical or other act prohibited by UPS policies or rules and any employee making such a report will not be retaliated against. AMF 95. Further, Defendant has presented Plaintiff with an acknowledgement, which

---

does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. PIK 124.13. Promissory estoppel is properly asserted where the evidence shows: (1) the promisor reasonably expected the promisee to rely on the promise; (2) the promisee acted reasonably in reliance; and, (3) refusal to enforce the promise would result in fraud or injustice. *See Patrons Mutual Ins. Ass'n v. Union Gas System, Inc.*, 250 Kan. 722, 830 P.2d 35 (1992). Again, Plaintiff has clearly shown these elements to be present and/or there are disputed issues of material fact regarding such. Accordingly, again, Defendant's motion as to this claim must be denied.

[18] *See, e.g., Greene v. Quest Diagnostics Clinical Labs., Inc.*, 455 F. Supp.2d 483, 486 (D.S.C. 2006) (finding that a jury must determine whether an anti-retaliation promise was binding because the promise was not accompanied by an at-will disclaimer); *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 125 P.3d 119, 128-30 (Wash. 2005) (finding that at-will disclaimer on employment application did not preclude employee reliance on anti-retaliation promise in employee handbook); *Nichols v. Xerox Corp.*, 825 N.Y.S.2d 847, 848 (N.Y. App. Div. 2006) (holding that Code of Ethics may be enforceable even though a separate employee manual contained an at-will disclaimer because the Code of Ethics itself did not contain a disclaimer).

Plaintiff signed and was kept by UPS, whereby Plaintiff is required, just as set forth in the Code, but, with no contractual disclaimer, to report conduct which she in good faith believes to be improper and UPS has agreed she will not be retaliated against by UPS for making any such reports.   AMF 89-92.   Although Plaintiff has fulfilled her reporting obligation pursuant to the Code and this signed, written agreement, Defendant has retaliated against her.   Plaintiff more than reasonably relied upon Defendant's promises and assurances of non-retaliation and acted on that.  AMF 96, 97.

Defendant's argument that the Code specifically states that it does not create an enforceable contract is misguided. The provision Defendant relies on addresses the nature of plaintiff's at-will employment relationship with UPS, not the Code in its entirety.   Indeed, the Code repeatedly states and UPS has repeatedly admitted that UPS and all of its employees are required to comply with the discrimination, harassment, reporting, and non-retaliation provisions and requirements in the Code.   AMF 93, 95, 104.   This stands in stark contrast to the position now asserted by UPS.   Any ambiguity created by this should be resolved against UPS.

Defendant also argues the promises and representations it has made in the Code do not form a contract because this is not supported by adequate consideration.   Defendant's argument fails because its premise is mistaken.   Here the agreement to be bound by the retaliation and non-reporting obligations was a mutual one. The agreement or contract to comply with these obligations was proffered by the employer.   Such a proffer clearly implies that both the employer and the employee would be bound by the obligations set forth in the Code.   If Defendant asks an employee to comply with and agree to be bound by the discrimination and harassment prohibitions and reporting obligations set forth in the Code, it cannot then turn around and slip out of the non-retaliation obligations and promises itself. *See, e.g., O'Neil v. Hilton Head Hosp.*,

115 F. 3d 272, 274 (4th Cir. 1997) (employer cannot require employee to be bound by arbitration process set forth in its handbook and then refuse to take part in that process).

In addition, significantly, Defendant presented Plaintiff with an acknowledgment or agreement containing the same discrimination, harassment, reporting, and non-retaliation promises, representations, and obligations as in the Code – yet, with no contractual disclaimer language. A signed acknowledgment within an employee handbook, but, containing contractual disclaimer language, has been found to constitute a contract. *Patterson v. Tenet Healthcare, Inc.*, 113 F. 3d 832, 835 (8th Cir. 1997) (finding that, despite disclaimer language in employee handbook stating it was not a contract and could be amended or revised at any time, arbitration clause and acknowledgment form, signed by the employee, were separate and distinct from other provisions of employee handbook and that such constitutes an enforceable contract). The language used in the Code and that set forth in the acknowledgment more than sufficiently impart to an employee that the prohibitions against discrimination and harassment and the reporting and non-retaliation obligations stand alone, separate and distinct from the rest of the Code. In short, the reservation of rights and contractual disclaimer language refer to the Code provisions relating to employment, not to the separate provisions prohibiting discrimination and harassment and the reporting and non-retaliation promises, obligations, and representations.[19]

Defendant's preemption argument has no merit. First, Plaintiff has asserted her breach of contract/promissory estoppel claim independent of and separately from her other claims. Also, it

---

[19] Defendant's efforts to disavow its obligations and avoid liability by placing overtly contradictory disclaimers within its Code are illusory. Further, this provides additional evidence of pretext, highlighting the disingenuous nature of Defendant's conduct. That is, Defendant says these obligations must be adhered to by its employees and, yet, the Company turns around and openly ignores its respective obligations. Further, while Defendant may have the ability to disavow other written representations within its Code of Conduct, quite simply, it has no lawful authority to do so with respect to the reporting and non-retaliation obligations therein it has agreed to in writing with Plaintiff and, also, are required by SEC and NYSE mandate. *See* NYSE Listing Manual, § 303A.10 (requiring exchange listed companies to provide reporting and non-retaliation provisions within publicly published Code of Conduct).

is premised on altogether different obligations and duties.  Further, under Kansas law, Plaintiff

may assert a retaliation claim based on conduct like or similar to that addressed by Federal law,

if the remedies afforded Plaintiff under her state law claim are not provided for or as great as that

under the respective Federal or State law.  *See, e.g., Flenker v. Willamette Industries, Inc.*, 266

Kan. 198, 199, 210, 967 P.2d 295 (1998) (plaintiff could maintain a state-law tort claim for

retaliatory discharge because the federal OSHA remedy was inadequate).  Clearly, Plaintiff may

be entitled to remedies under her breach of contract claim not available under her other Federal

law claims - particularly so, if she does not prevail on those other claims.  Given such,

Defendant's preemption argument and its assertion that its arguments as to Plaintiff's retaliation

claims apply here have no merit.

  In short, there are clearly disputed issues of material fact regarding the nature and scope

of the written promises and obligations that have been made between Plaintiff and UPS and

whether or not they are contractually or otherwise obligated to honor these.  Plaintiff's claims are

not based on a promise of continued employment *and* Defendant's obligations forming the basis

of Plaintiff's breach of contract/promissory estoppel claim do not arise pursuant to an employee

handbook.  Also, Plaintiff and UPS management have entered into signed agreements with like

requirements and promises and integrating the obligations of the Code, but which, unlike the

Code, contain no contractual disclaimer.  Further, as noted, UPS is required by law to have the

reporting mechanisms and non-retaliation provisions publicly set forth in a Code of Conduct.

Defendant's pretextual statements to the contrary amount to nothing more than a brazen

admission it will not honor its non-retaliation obligations to its employees or those to the

respective agencies, stock exchanges, and investors.  Evaluation of these issues is not a question

of law; rather, it involves factual disputes and related credibility decisions which must be made by a jury.  Given such, Defendant's motion must be denied with respect to this claim.

## IV. <u>CONCLUSION</u>

Defendant cannot demonstrate there are <u>no</u> disputed issues of <u>any</u> material fact as to Plaintiff's claims and that it is entitled to judgment as a matter of law.  On the contrary, Plaintiff has come forward with and adduced more than sufficient evidence to either establish the elements of all her claims or create a genuine issue of material fact on each.  Likewise, there is an abundance of pretext evidence which allows for a more than reasonable inference that the reasons alleged by Defendant for its treatment of Ms. Daniels are a pretextual cover-up that a jury may reject as not worthy of belief.

The record evidence makes it abundantly clear the terms, conditions, and privileges of Ms. Daniels' employment were less favorable than others because of her age and sex; she has sustained multiple adverse employment actions.  Plaintiff was denied promotional opportunities and her position was classified as non-management because of her gender.  Plaintiff was also stripped from the position she had successfully held for five years and replaced by a younger, less qualified male and removed to a much less favorable position she had repeatedly told management she did not want to be placed in full-time.  She was also denied the training UPS claims made her replacement a better candidate, but which training was only provided to this younger male.  Likewise, she was not allowed to gain related experience which was only allowed to be performed by male employees.

However, although she was admittedly improperly denied promotional opportunities, Plaintiff was performing supervisory duties - as acknowledged by UPS and others.   As a result, UPS has paid Plaintiff less than and denied her benefits, including valuable stock, which were

afforded to males performing the same or like jobs with substantially the same duties.  Defendant has not cleared the rigorous burden placed upon it to show the legitimacy of this practice; it cannot rely on salary administration guidelines to justify its conduct, when it is classifying Plaintiff and others in a discriminatory fashion.

The record evidence also shows that within close proximity of Plaintiff making a report or complaint of discrimination she was accused in unprecedented fashion of falsifying her time records, her manager interfered with her job performance by decreasing normal communications with her, and, further, UPS refused to address Plaintiff's discrimination complaint.  This scenario would have easily dissuaded a reasonable person from pursuing a charge of discrimination. Those in Defendant's management engaging in this retaliatory conduct were fully aware of her complaint and charge.

Defendant's discriminatory and retaliatory conduct is also a flagrant breach of the reporting and anti-retaliation obligations, promises, and agreements in Defendant's Code of Business Conduct and a signed agreement with Plaintiff, as well as other writings, which have no contractual disclaimer, and which Plaintiff, to her detriment, more than reasonable relied on and was induced to enter into by Defendant.  In addition, the highly suspect manner in which Defendant has admittedly failed to comply with and openly disregarded its own written policies, procedures, and obligations provides overwhelming and irrefutable evidence of pretext. The record evidence also demonstrates Defendant's discriminatory and retaliatory conduct was not a unique or isolated incident, but, rather, part of a longstanding custom or practice involving key decisionmakers in this case.

Plaintiff need not demonstrate sex or age was the sole reason for Defendant's conduct; rather, she need only adduce sufficient evidence to allow a reasonable inference that her

treatment was based on, motivated by, or due to her sex, age, or reports of unlawful conduct.  In short, the record evidence, viewed in its totality and under the proper summary judgment standards, allows for a more than reasonable inference that Ms. Daniels' treatment by UPS was improperly tainted by discriminatory and retaliatory motives and bias.  This is bolstered by the overwhelming pretext evidence and that showing Plaintiff's unlawful treatment was not a unique or isolated incident, but, rather, a part of UPS practice.  A jury is not required to believe Defendant, and UPS has failed to meet its burden.  UPS has not shown its conduct to be free of discriminatory bias and retaliatory animus and it is entitled to judgment as a matter of law. There are numerous disputed issues of material fact; evaluation and resolution of these disputed, conflicting, and contradictory factual issues involve credibility determinations and the weighing of evidence to be decided by a jury.  Accordingly, Defendant's motion must be denied as to *all* Plaintiff's claims.

**WHEREFORE**, for the above reasons, Plaintiff respectfully submits that Defendant's Motion for Summary Judgment must be denied.

Respectfully submitted,

LAW OFFICES OF FREDRICK D. DEAY, II

By: <u>s/ Fredrick D. Deay, II</u>
Fredrick D. Deay, II    KS Bar No. 15035
7575 W. 106th Street, No. 14
Overland Park, KS 66212
(913) 649-0687
fddpai2@hotmail.com  *email*

POPHAM LAW FIRM
Dennis E. Egan    KS Bar No. 70672
712 Broadway, Suite 100
Kansas City, MO 64105
(816) 399-5202
degan@pophamlaw.com  *email*

***Attorneys for Plaintiff – Regina Daniels***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 26th day of January, 2011, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

ARMSTRONG TEASDALE LLP

Jennifer Arendes
Narcisa P. Symank
7700 Forsyth Blvd., Suite 1800
St. Louis, MO  63105
jarendes@armstrongteasdale.com
nsymank@armstrongteasdale.com

Laurence R. Tucker KS#70074
2345 Grand Boulevard, Suite 2000
Kansas City, Missouri 64108-2617
lrtucker@armstrongteasdale.com

ATTORNEYS FOR DEFENDANT


<u>s/ Fredrick D. Deay, II</u>
***Attorney for Plaintiff***

## PLAINTIFF'S EXHIBIT LIST

**No.**          **Description**

1.      Regina Daniels Deposition

2.      Regina Daniels Notes (July 31, 2008)

3.      Regina Daniels Notes (Feb. 18, 2009)

4.      Regina Daniels Notes (June 29, 2009)

5.      Regina Daniels Notes (July 14, 2009)

6.      Regina Daniels Career Development Planning Guide (2004)

7.      Regina Daniels Career Development Planning Guide (2005)

8.      Regina Daniels Career Development Planning Guide (2007)

9.      R. Daniels Letter (Aug. 9, 2005)

10.     J. Grover Letter (Aug. 19, 2005)

11.     R. Daniels Letter (March 2, 2006)

12.     G. Liberti Letter (March 17, 2006)

13.     PTRS Time Sheets (*Under Seal*)

14.     Maurice "Mic" Haynes Deposition

15.     Kathleen Carpenter Declaration

16.     Def. Supp. Ans. & Obj. to Plaintiff's Third Interrogatories

17.     Full-Time Supervisors and Specialists, James Street, as of July 1, 2008 (*Under Seal*)

18.     Female Employees Interviewed for Promotion to Full-Time Supervisor, 2005- 2009 (*Under Seal*)

19.     UPS James Street EEO-1 Reports: Officials and Managers, 2006-2009 (*Under Seal*)

20.     UPS James Street EE0-1 Reports, 2006-2009 (*Under Seal*)

21.     Def. Second Supp. Ans. & Obj. to Plaintiff's First Request for Admissions

22.	Def. Supp. Ans. & Obj. to Plaintiff's Second Request for Admissions

23.	Defendant's Answer

24.	Email (Aug. 3, 2006)

25.	Email (Dec. 29, 2007)

26.	Email (Jan. 13, 2009) – THE MAN RULES

27.	EEOC Intake Questionnaire (Aug. 25, 2008)

28.	EEOC Charge of Discrimination (Nov. 21, 2008)

29.	EEOC Charge of Discrimination (April 3, 2009)

30.	JBAs - Job Breakdown Analyses (Day, Night & Twilight)

31.	UPS Code of Business Conduct

32.	UPS Policy Book

33.	UPS Guidelines for Investigation of Workplace Issues (*Under Seal*)

34.	UPS Corporate Deposition – Gary Liberti

35.	UPS Corporate Deposition – Joe Dooley

36.	UPS Corporate Deposition – Russell Rymer

37.	Gary Liberti Deposition

38.	Joe Dooley Deposition

39.	Gary Liberti Errata Sheet

40.	Joe Dooley Errata Sheet

41.	MAPP Procedure and Reference Manual Excerpts (*Under Seal*)

42.	Supervisor's/Manager's Guide to the MAPP (*Under Seal*)

43.	MAPP Scoring Sheet (*Under Seal*)

44.	PTRS Memo (PLT 556) (*Under Seal*)

45.     PTRS Memo (PLT551-54) (*Under Seal*)

46.     Email (April 1, 2009) re Recording Time/Breaks

47.     Emails (June 2009) re Recording Time/Breaks

48.     Daniels-UPS Prof. Conduct and Anti-Harassment Policy Agreement

49.     Liberti-UPS Prof. Conduct and Anti-Harassment Policy Agreement (Under Seal)

50.     Dooley-UPS Prof. Conduct and Anti-Harassment Policy Agreement (Under Seal)

51.     Liberti Professional Conduct Agreement (Under Seal)

52.     Dooley Professional Conduct Agreement (Under Seal)

53.     Dooley Notes (Feb. 18, 2009)

54.     William Sifuentes Deposition

55.     Mark Samborski Deposition

56.     Catherine Bleish Deposition